IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | 20 CV 1792 (emergency docket) |
| v. | ) | 02 CR 1050-7 (underlying case) |
| | ) | Judge John Robert Blakey |
| PAUL SCHIRO | ) | Judge Rebecca R. Pallmeyer |
| | ) | (emergency judge) |

**EMERGENCY MOTION TO ADDRESS
MOTION FOR COMPASSIONATE RELEASE**

The defendant, PAUL SCHIRO, by the Federal Defender Program and its attorney, Daniel Hesler, respectfully requests that the emergency judge address the motion for compassionate release that was filed on March 25, 2020. Defendant further states as follows:

1.      On March 25, 2020, Defendant Paul Schiro filed a Motion for Compassionate Release Under 18 U.S.C. §3582(c)(1)(A), in case 02 CR 1050, docket item # 1647. A copy of that motion is attached as Attachment A.

2.      Defense counsel believed that the case was before Judge Leinenweber, based on what the docket showed (and still shows). It has now become apparent that case 02 CR 1050 was reassigned to Judge Blakey by the executive committee in December of 2018, although that order was not actually entered in the docket for that case. *See* docket entry # 77 in case 13 CV 6664. Also, the extension of the Covid-19 situation into April now means that this matter falls

1

under the general order as a matter of timing, which was not necessarily true on March 25.

3.     The gravamen of the attached motion is that Mr. Schiro is 82, in very poor health and deteriorating, has been in custody since 2002, and is unlikely to live to his scheduled release in April of 2024. The present Covid-19 situation is relevant in that it means this case needs to be addressed quickly.

4.     Counsel has conferred with AUSA Amar Bhachu. The government believes it can have a response filed by Tuesday, April 7. The defense believes it can have a reply submitted by the following Monday, April 13, 2020.

5.     The most recent General Order of this Court, Order 20-0012, states that all criminal case proceedings that cannot be continued until May will be addressed by the emergency judge.

6.     The reasons this matter should be considered an "emergency" that cannot wait until May are that Mr. Schiro is the ultimate in being vulnerable to Covid-19. He is almost 83, with COPD, diabetes, a heart arrhythmia, coronary atherosclerosis, a recent history of lung cancer, and part of a lung removed. A facility like FMC Butner, where he is housed, is extraordinarily vulnerable to contagion if the virus gets in. Everything suggests that it will get in, sooner or later, and when it does, it will be too late for Mr. Schiro. It is therefore urged that this matter needs to be addressed as quickly as possible, in April.

Wherefore, it is respectfully requested that an expedited briefing schedule be set (as discussed in paragraph 4 above) and that this matter be addressed as quickly as possible.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: *s/ Daniel J. Hesler*
    Daniel J. Hesler

DANIEL J. HESLER
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8347

## <u>CERTIFICATE OF SERVICE</u>

The undersigned,  Daniel J. Hesler  , an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CIV.P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

### EMERGENCY MOTION TO ADDRESS
### MOTION FOR COMPASSIONATE RELEASE

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>April 1, 2020</u>, to counsel/parties that are non-ECF filers.

By:     */s/Daniel J. Hesler*
          DANIEL J. HESLER
          FEDERAL DEFENDER PROGRAM
          55 E. Monroe St., Suite 2800
          Chicago, Illinois 60603
          (312) 621-8347

4

# ATTACHMENT - A

## MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | 02 CR 1050-7 |
| v. | ) | |
| | ) | Judge Harry D. Leinenweber |
| PAUL SCHIRO | ) | |

## MOTION FOR COMPASSIONATE RELEASE
## UNDER 18 U.S.C. §3582(c)(1)(A)(i)

The defendant, PAUL SCHIRO, by the Federal Defender Program and its
attorney, Daniel Hesler, respectfully submits the following motion requesting that
this Honorable Court modify his sentence of 240 months imprisonment and order
his immediate release. Mr. Schiro has been in custody since July 3, 2002, and has
about four years until his projected release, but he is very old and very sick, and a
newly-enacted portion of 18 U.S.C. §3582(c)(1)(A)(i) now allows a district court
to grant relief under these circumstances. Defendant further states as follows:

I.    **Background**

    A.    **Background of the Case**

This is a little complicated.[1] On August 19, 2000, Paul Schiro was indicted
in this district in case 00 CR 853. He pled guilty in that case and was sentenced to

---

[1]In many cases, one can confidently discern from ECF the procedural and factual
history of the case. This is not such a case. The docket in this case has over 1600 entries,
and many of them are under seal. Also, counsel is working without the benefit of a PSR.

1

65 months custody. He reported for service of his sentence on that case on July 3, 2002. Subsequently, in 2005, but prior to his release on the 2000 case, he was charged in a superceding indictment in the 2002 case. He was charged with conspiring to participate in a racketeering enterprise in violation of 18 U.S.C. §1962(c). He went to trial and was convicted on September 19, 2007 of being part of the conspiracy, although the jury could not come to any agreement as to whether Mr. Schiro was responsible for a murder that occurred in 1986. This was a three month trial involving five defendants, covering what the appellate opinion described as "virtually everything the outfit did or sponsored during a 42-year period." *United States v. Schiro,* 679 F.3d 521, 535 (7th Cir. 2012) (Wood, J. dissenting). It is a reasonable conclusion that between 30 and 60 years ago, Mr. Schiro was not a very good person. On January 26, 2009, he was sentenced by Judge Zagel to 240 months custody of the Bureau of Prisons. According to Bop.gov, his projected release date is April 4, 2024.

Mr. Schiro is now 82 years old. He is in very poor health. He has had lung cancer (now in remission), part of one lung removed, and reportedly had a lung collapse. He currently has COPD, diabetes, a heart arrhythmia, coronary atherosclerosis, cataracts, arthritis, and hemorrhoids. He uses a walker for any distances over 10 feet, and a cane within his cell. Falling is an issue. The limit of

2

his movement is about 50 feet, even with the walker. He reports being in significant pain pretty much all of the time. Also, his vision is deteriorating.

At his age, there is nothing about any of these conditions suggesting that things are going to get better. If released, his daughter is willing to have him live with her, and is willing to care for him.

**B. The newly revised 18 U.S.C. §3582(c)(1)(A) now allows district courts the authority to reduce sentences upon motion of the defendant when extraordinary and compelling reasons warrant such a reduction.**

As this Court knows, sentences are final once imposed except in a limited number of clearly defined circumstances. One of those circumstances is delineated in 18 U.S.C. §3882(c)(1)(A). That provision allows a Court to modify a term of imprisonment where "extraordinary and compelling reasons warrant such a reduction." Courts have always had this authority, sort of. Until recently, courts only had jurisdiction to make such modifications after a motion was filed by the director of the Bureau of Prisons. Despite the existence of that power, the BOP almost never made such motions. *See* Christie Thompson, *Frail, Old and Dying, but Their Only Way Out of Prison Is a Coffin*, N.Y. Times (March 7, 2018), https://www.nytimes.com/2018/03/07/us/prisons-compassionate-release-.html.

As of December 21, 2018, the First Step Act changed things. Now, §3582(c)(1)(A) reads as follows:

… the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that-
-

    **(i)** extraordinary and compelling reasons warrant such a reduction; or
    **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The italicized portion of the statute above is the part that was added by the

First Step Act.

## II.   ARGUMENT

This motion does not attempt to relitigate Mr. Schiro's underlying case. Mr.

Shiro did not live an admirable life, and in 2007 he was convicted of serious

crimes, albeit a long time ago. And a substantial sentence was imposed. He has

served most of that sentence and all of the one that immediately preceded that.[2]

---

[2]Mr. Schiro went from his 2000 sentence directly into his 2002 sentence, and there is no publicly available information about when the first sentence ended and the second

However, Mr. Schiro's quality of life has seriously and irreversibly deteriorated; whatever time he has left is going to be spent in the very small world of the very old and sick. Furthermore, there is now a significant risk that the existing sentence is effectively a life sentence; it is not at all clear that he has four years left. He would like to spend some of his remaining time with his family. It is the defendant's position that his age and health constitute an extraordinary and compelling reason, under the authority of §3582(c)(1)(A) and USSG §1B1.13, for this Court to reduce his sentence to time served at this point.

Looking at 18 U.S.C. §3582(c)(1)(A), one could parse the requirements for a reduction based on a motion by the defendant down to the following four elements:

1) the defendant must first ask the BOP for relief and exhaust any administrative appeals in that process;

2) extraordinary and compelling reasons must warrant a sentence reduction;

3) such a reduction must be consistent with the policy statements issued by the sentencing commission in guideline §1B1.13; and

4) the Court should consider the factors under §3553 in deciding whether to grant the motion.

---

sentence began. But if one does some math with the available information (including his original arrest, bond, and reporting dates, both sentences, the good time ratios, and the BOP's projected release date), it is a reasonable estimate that Mr. Schiro's present sentence began around March 20, 2007, that he has now served the equivalent of 183 months, and that he has therefore served about 76% of his time on the present sentence. Also, the math indicates that Mr. Schiro has behaved perfectly in the last two decades; the April 4, 2024 projected release date coincides with what would result if one served 87% of 65 months and 85% of 240 months. Had he misbehaved and lost any good time, that would be a later date.

Each of these requirements merit discussion.

### A. Mr. Schiro has satisfied the exhaustion of remedies requirement

Before a Court can reduce a sentence under §3582(c)(1)(A), the defendant must make a request of the BOP and exhaust any remedies for the BOP's failure to bring such a motion. The statute outlines two ways this exhaustion can occur. One, the defendant may have their administrative request denied, and then pursue the appeals process. Perhaps recognizing the BOP's reputation for delay and granting these requests only while last rites are being administered,[3] Congress specifically authorized an alternative form of exhaustion; jurisdiction is created upon the lapse of 30 days if the BOP has not answered the administrative request one way or the other. *See* 18 U.S.C. §3582(c)(1)(A).

In this case, Mr. Schiro filed a request for a reduction in his sentence based on his being elderly with medical conditions on May 10, 2019. *See* Exhibit A. He received an email denial on June 27, 2019, and a denial letter date July 1, 2019, both after a lapse of more than 30 days. *See* Exhibits B & C. He also requested a reduction in sentence ("RIS") based on a terminal condition on June 26, 2019 (see Exhibit B) and received a denial letter on August 9, 2019. *See* Exhibit D. That

---

[3]*See* Dept. of Justice, Office of Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program*, Report I-2013-006 at i (April 2013) ("[W]e found that the existing BOP compassionate release program has been poorly managed and implemented inconsistently, likely resulting in eligible inmates not being considered for release and in terminally ill inmates dying before their requests were decided.").

response was also beyond the 30 day threshold. Therefore, under §3582(c)(1)(A), the requirement of administrative exhaustion has been met in this case and this Court has jurisdiction to address this motion.[4]

**B.    Mr. Schiro's circumstances are extraordinary and compelling.**

In order to grant relief, this Court must make a finding that Mr. Schiro's situation is "extraordinary and compelling." The statute does not further define that phrase, and there is not much caselaw yet on the issue.[5] The statute does require that any reduction be consistent with the guidelines' policy statements, and USSG §1B1.13, at application note 1, defines what is extraordinary and compelling as follows:

1.    Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
(A)    Medical Condition of the Defendant.—
(i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

---

[4]Mr. Schiro pursued an appeal on his second RIS request, was denied, and is reportedly still awaiting word on his appeal of that. But that is probably irrelevant; jurisdiction was created when the original 30 days lapsed without a response. See *United States v. Gray,* 2019 WL 4572816 (S.D. Ind. Sept. 20, 2019). In the absence of Covid-19, counsel might have waited for the result of the secondary appeal as a belts-and-suspenders action before filing this motion, but the matter is now more urgent.

[5]The reason there is not much caselaw on this topic probably has to do with the fact that under the law prior to December of 2018, a motion under §3582(c)(1)(A) had to come from the BOP, and they almost never made such motions. As such, there was little occasion for courts to review the question. This may change in the next few years.

      (ii)    The defendant is—
          (I)    suffering from a serious physical or medical condition,
          (II)   suffering from a serious functional or cognitive impairment, or
          (III)  experiencing deteriorating physical or mental health because of the aging process,
          that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)   Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

Mr. Schiro clearly meets all of the criteria under the (A)(ii) and (B) definitions, and probably (A)(i) as well.

The most obvious of these criteria is (A)(2); that the defendant is at least 65 years old and is experiencing a serious deterioration in physical health because of the aging process, and has served at least 10 years or 75% of his sentence, whichever is less. Mr. Schiro passed age 65 in 2002. He is 17 years past that. And there is no doubt that his health is deteriorating, seriously, due to the aging process. He can barely get around even with a walker, and he has trouble breathing. Moreover, he has served over 156 actual months on the present sentence, which is equivalent to around 183 months of sentence. That is a lot more than 10 years.

He is also suffering from a deterioration of his physical health that substantially diminishes his ability to provide self-care where he is, and at his age things are not likely to get better. He reports needing help with tying his shoes,

changing his linen, cleaning his cell, buttoning his shirt, and doing his laundry. At this point, the help is receiving is primarily from other inmates, but it is nevertheless true that he cannot care for himself. He is unsteady all the time and prone to falls and stumbles. He only can talk for short periods of time.

Additionally, Mr. Schiro believes his condition is now terminal. This is a difficult thing to prove, since the only truly definitive proof would also make the motion moot. But despite the fact that his lung cancer is in remission (after removal of half a lung), Mr. Schiro is painfully aware that breathing is becoming increasingly more difficult, and that any sort of movement leaves him out of breath. And this situation is progressively getting worse. He does not know what his life expectancy is, but it is clearly finite at this point. One cannot live without breathing.

Additionally, the present Covid-19 epidemic is a factor to consider. There are not many people more at risk than Mr. Schiro. And as careful as the BOP may try to be, the nature of prisons is such that once that virus is introduced into a population, the chances of it not immediately circulating are remote. There are few places worse to live for social distancing purposes than a prison.[6]

---

[6]This is not, at its core, a Covid-19 based motion, although the epidemic has accelerated the urgency and necessity of this motion. Mr. Schiro was old and sick before Covid-19. All that has changed are timing issues.

Even independent of the guidelines' definitions, Mr. Schiro's condition is compelling and extraordinary. Age has now robbed Mr. Schiro of the ability to move more than a few feet, and even then his breathing issues leave him struggling for breath and needing to sit down. His vision makes reading difficult, his arthritis limits fine motor activities, and talking is laborious. Three purposes of sentencing are punishment, deterrence, and incapacitation, and a court accomplishes those things by taking something away from a defendant that he values; his freedom. Eventually, however, the human condition is such that age and health accomplish the same thing. Right now, Mr. Schiro sits in his cell and has to be helped with tasks as mundane as getting dressed. If released, he will be in more or less the same situation. Freedom for him does not mean what it once did; he is now inescapably imprisoned in a deteriorating body. Anyone who has seen relatives go through this know that it is compelling. And while it may not be extraordinary in the context of the human condition (since most of us will get there eventually), in the context of prisoners serving sentences, it is extraordinary.[7] This is why even the guidelines and the BOP recognize that impending mortality is the quintessential extraordinary and compelling justification for early release. *See, e.g.,* USSG §1B1.13.

---

[7]According to a search of "statistics" in Bop.gov, as of September 7, 2019, 2.7% of federal inmates are over age 65. The number over 80 is undoubtedly a small fraction of that.

**C.** **A reduction in this case would consistent with the applicable policy statements issued by the sentencing commission in §USSG 1B1.13.**

A third requirement under §3582(c)(1)(A) is that such a reduction be consistent with the applicable policy statements issued by the sentencing commission. The Commission has addressed this issue in §1B1.13. In that section, the commission first generally mirrors the requirements of §3582(c)(1)(A), but adds as an additional factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." The application notes then explains (as discussed above) what "extraordinary and compelling" reasons might entail. The guidelines further state that extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction. *See* USSG §1B1.13 Application Note 2.

As discussed above, Mr. Schiro qualifies on every part of this. He is 82, in deteriorating health, and he has served over three quarters of his term of imprisonment. He is also suffering from a deterioration of his physical health that substantially diminishes his ability to provide self-care where he is, and at his age things are not likely to get better. He needs help with almost everything, and that is only going to get worse.

Also, under USSG §1B1.13(2), despite his history, he is not a danger to the community or anyone in it. He is far beyond bearing grudges or resentments to

anyone about anything. He does not do much of anything independently now, so
there would be little ability for him to cause any trouble even if he wanted to. And
he does not want to. His only hope is to simply spend a little time with his family
while he is still here. Finally, while Judge Zagel knew Mr. Schiro's age when he
sentenced him, in 2009 he did not know whether Mr. Schiro would be thriving in
2020, or dying. Mr. Schiro is not thriving.

In short, there is nothing in USSG §1B1.13 which is inconsistent with
granting Mr. Schiro release at this point.

### D.    A reduction in this case would consistent with 18 U.S.C. §3553.

The next requirement for relief under 18 U.S.C. §3582(c)(1)(A) is that the
Court consider the §3553(a) factors. This Court is familiar with §3553. Congress's
purpose in re-referencing §3553(a) would seem to be that a court should not grant
mercy to a defendant if to do so would be inconsistent with society's needs for
punishment, deterrence, rehabilitation, and incapacitation.

Section 3553 encompasses a lot. Counsel will start by addressing the bad
stuff. In this case, Mr. Schiro was convicted of being part of a dangerous criminal
conspiracy. Mr. Schiro and his codefendants were accused of horrific conduct over
decades, including murders. In particular, Mr. Schiro was accused of playing a
role, primarily as a lookout, in the 1986 murder of Emil Vaci. The jury could not
reach a verdict as to whether the government had proved that or not, but Judge

Zagel was convinced, at least by the preponderance of the evidence. *See* ECF #
1188 at pg. 21-22. For any crime other than murder, the passage of 34 years
including nearly 18 years of perfect prison conduct would unquestionably show
that there is no longer any compelling need to incarcerate a sick 82 year old any
further. Where the underlying conduct involves the death of another human being,
it is a closer case. Nevertheless, there are three arguments that suggest that Mr.
Schiro's release would not be inconsistent with the §3553 factors now.

The first is that Mr. Schiro has now served most of his sentence, and his
conduct in the last 18 years should count for something. The Supreme Court has
emphasized that subsequent developments are always relevant in any §3553
analysis. *See Pepper v. United States*, 131 S. Ct. 1229 (2011). In particular, some
newer information includes that Mr. Schiro reports that he has had no disciplinary
problems since being locked up in 2002, and the fact that he appears not to have
lost any good time whatsoever strongly corroborates that. And the fact that Mr.
Schiro is not doing well physically is also relevant to the §3553 analysis; society
has less need to lock up someone for whom freedom offers only limited relief. His
present out date is barely four years from now. One can both accept that Judge
Zagel got it right in 2009, and at the same time accept that subsequent
developments have changed the calculus of what is now necessary for society.

The second idea is that Mr. Schiro is dying, and we as a society should accept that there is less of a point to punishing such people. The defense recognizes that it is not completely clear whether he will be gone in six months or five years. No one is every completely sure of these things. But the confluence of age, cancer, COPD, diabetes, and limited and decreasing lung function does not bode well. And the fact that he is at extraordinarily high risk of death from Covid-19 where he presently in can be taken into account as well. And while there is a retributive utility in punishing wrongdoing, that utility is significantly lessened when the defendant is on their way out on their own.[8]

The third reason why release at this time would not offend §3553 is that the parsimony principle of §3553 requires that punishment must be "necessary." There might have been a time when society was safer with Paul Schiro locked up. That time is long past. He may have done bad things, albeit a long time ago, but his incarceration, as a very old and sick man, is simply no longer necessary.

Thus, release to finish his days at his daughter's house at this point would be consistent with the §3553 factors in this case.

---

[8]There are Supreme Court cases discussing why there is a decreased retributive value in executing the insane. *See, e.g., Panetti v. Quarterman*, 551 U.S. 930, 958 (2007). This is not the present situation, since Mr. Schiro is doing ok mentally, but the reasoning is parallel; there are some human conditions under which a civilized society's interest in punishment decreases.

## CONCLUSION

In light of the First Step Act's amendment to § 3582(c)(1)(A), this Court now has the authority to grant Mr. Schiro's motion to modify his sentence. Mr. Schiro has sufficiently exhausted administrative remedies, and his release to a time-served sentence, after the equivalent of over 15 years, does not place the public in danger and fulfills Congress's directives concerning sentencing. Granting his motion is in accordance with the Sentencing Commission's policy statement and §3582(c) because it is based on extraordinary and compelling reasons that have combined now to make granting the motion to modify and releasing him from prison the just and appropriate resolution.

Therefore, especially in light of the present national health emergency, it is respectfully requested that this Court set an expedited schedule for any response from the government in this matter (and any reply), and then order Mr. Schiro's immediate release.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By: *s/ Daniel J. Hesler*
    Daniel J. Hesler

DANIEL J. HESLER
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8347

## <u>CERTIFICATE OF SERVICE</u>

     The undersigned, <u> Daniel J. Hesler </u>, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CIV.P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

## <u>MOTION FOR COMPASSIONATE RELEASE<br>UNDER 18 U.S.C. §3582(c)(1)(A)(i)</u>

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on <u>March 25, 2020</u>, to counsel/parties that are non-ECF filers.

                By:    */s/Daniel J. Hesler*
                        DANIEL J. HESLER
                        FEDERAL DEFENDER PROGRAM
                        55 E. Monroe St., Suite 2800
                        Chicago, Illinois 60603
                        (312) 621-8347

# EXHIBIT A
# 5/10/2019 request

**TRULINCS 45653008 - SCHIRO, PAUL - Unit: BUH-C-D**

---------------------------------------------------------------------------------

FROM: 45653008
TO: BUH/Social Worker
SUBJECT: ***Request to Staff*** SCHIRO, PAUL, Reg# 45653008, BUH-C-D
DATE: 05/10/2019 08:28:55 AM

To: Request For Reduction in sentence
Inmate Work Assignment: unassigned

I have placed a hard copy request for RIS in the 4th floor mailbox today 5/10/19. The following is the information it contains plus some addition pertinent information:

1. I would like to be considered for a Reduction In sentence(RIS). I meet the qualifications listed under Elderly with Medical conditions because: I am 82 years old and have been incarcerated since 2002 with 6 years remaining on my sentence which is more then 50% of the sentence. Additionally, I have been diagnosed with:
Lung cancer
copd
degenerative cervical spine disease
enlarged prostate
have limited mobility due to arthritis that requires use of walker and cane
I take 10 different medications and require 2 different inhalers
I have no unresolved detainers
different caregiver-Melissa Baughn 

3.I did not suffer from any of these conditions prior to my incarceration and therefore had no need of insurance

4. Continuity of care: Abrazo Arrowhead Campus   #623-561-1000          Banner Del Web Medical Center  # 623-524-4000
                         18701 N. 67th ave                              14502 meeker Blvd
                         Glendale AZ. 85308                             Sun City West AZ. 85375

Can you please confirm receipt of my request in your office? Thank you for your assistance in this matter.

# EXHIBIT B
# 6/27/2019
# denial/request

TRULINCS  45653008 - SCHIRO, PAUL - Unit: BUH-C-D

---------------------------------------------------------------------------------------------

FROM: BUH/Social Worker
TO: 45653008
SUBJECT: RE:***Inmate to Staff Message***
DATE: 06/27/2019 03:27:02 PM

Your request was denied as the providers determined that you do not meet the medical criteria. You will receive the denial memo soon.

>>> ~^!"SCHIRO, ~^!PAUL" <45653008@inmatemessage.com> 6/26/2019 8:48 PM >>>
To: Reduction in Sentence request
Inmate Work Assignment: unassigned

Ms. Wehr,
I have previously (5/10/19) requested RIS under the Elderly with Medical conditions. At around that time I requested medical records to include copies of the records of the previous denials of my requests for RIS in 2016 and 2018. I just received them and after reviewing them I now understand I also meet the criteria for RIS under section 3(a) Terminal Medical condition. Upon careful reading of the relevant Program Statement (5050.50) there is no bar to an applicant in requesting RIS under separate categories when as here, he meets the qualifications under both and that the requests be dealt with as separate issues. Accordingly:
I would like to be considered for a Reduction in Sentence(RIS). I meet the qualifications listed under Terminal because in 2016 a medical survey stated "you have been diagnosed with lung cancer, a condition that could lead to death without proper treatment. Lung cancer with proper and current treatment, your life expectancy is over 2 years..." From that it is clear that I have a disease that has a an end of life trajectory. In addition I am 82 years old, 3 years older now and experiencing complications related to my lung cancer to the extent I was hospitalized for a total of 17 days in the last few months. In addition to the lung cancer, I have other conditions that contribute to the end of life trajectory. These are:
-COPD
-Degenerative cervical spine disease
-enlarged and possibly cancerous prostate
-Take 10 different medications and require to inhalers
-arthritis causes limited mobility and I require a walker and a cane.

-Caregiver-Melissa Baughn

-I did not suffer from any of these conditions prior to incarcerations and had no insurance.

-continuity of care-Abrazo Arrowhead Campus  #623-561-1000    Banner Del Web Medical Center  # 623-524-4000
                                                                          18701 N. 67Th ave
          14502 Meeker Blvd
                                                                    Glendale, AZ. 85308
          Sun City, AZ. 85375
Please confirm receipt of this request and that you have on file the Release of Medical Information form I submitted previously. Thank you for your assistance in this matter.

# EXHIBIT C
# 7/1/2019
# denial/letter



**U.S. Department of Justice**
Federal Bureau of Prisons
*Federal Correctional Complex*
*P. O. Box 1600*
*Butner, North Carolina 27509*

_Office of the Complex Warden_

July 1, 2019

Schiro, Paul
Reg: No: 45653-008
Quarters: 4C-326

Dear Mr. Schiro,

Medical staff reviewed your request for a Reduction in Sentence (RIS) to determine whether you met the RIS guidelines in accordance with Program Statement 5050.50. It has been determined that you do not meet the criteria under Elderly with Medical Conditions at this time.

You have the right to appeal this decision via the Administrative Remedy Process. If you choose to appeal, you do not need to complete the informal review, but you would need to include a copy of this memorandum with your appeal. Any decision regarding appeal will be handled in a manner outlined in policy. Additionally, per policy you have a right to file a request for a reduction in sentence with your sentencing court after receiving a BP-11 response or the lapse of 30 days from the receipt of such a request by the Warden's Office.

We are committed to providing you with the necessary and appropriate care for your medical needs.

T. Scarantino
Complex Warden

# EXHIBIT D
# 8/9/2019
# denial/letter



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Complex*
*P. O. Box 1600*
*Butner, North Carolina 27509*

4C

---

*Office of the Complex Warden*

August 9, 2019

Schiro, Paul
Reg: No: 45653-008
Quarters: 4C-326

Dear Mr. Schiro,

Medical staff reviewed your request for a Reduction in Sentence (RIS) to determine whether you met the RIS guidelines in accordance with Program Statement 5050.50. It has been determined that you do not meet the criteria under Terminal Conditions at this time.

You have the right to appeal this decision via the Administrative Remedy Process. If you choose to appeal, you do not need to complete the informal review, but you would need to include a copy of this memorandum with your appeal. Any decision regarding appeal will be handled in a manner outlined in policy. Additionally, per policy you have a right to file a request for a reduction in sentence with your sentencing court after receiving a BP-11 response or the lapse of 30 days from the receipt of such a request by the Warden's Office.

We are committed to providing you with the necessary and appropriate care for your medical needs.

T. Scaralino
Complex Warden