IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ) | | |
| Plaintiff, ) | | |
| v. ) | No. 20 CV 1792 | |
| ) | 19 CR 00348-1 | |
| JOEL HARRIS ) | | |
| Defendant ) | | |

**EMERGENCY MOTION FOR RELEASE ON BAIL**

**Introduction**

Defendant moves the Court for a bail hearing and an order granting his release. Joel Harris, who is a pre-sentence defendant currently detained at the MCC Chicago, may be within the group of people the Centers for Disease Control and Prevention ("CDC") has categorized as most-at-risk for contracting COVID-19, a dangerous illness spreading rapidly across the world, through Illinois, and within the city of Chicago. The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The health risk to Joel Harris, because of his physical condition and age, given the conditions at the MCC, as described in detail below, necessitates his temporary release on bail until this pandemic has ended. If released, Joel Harris will live with his niece, Lor Lawson. She lives in an apartment located at 545 Gunderson Drive, Apt. 308, Carol Stream, Illinois 60188. He would live there with his niece, who is a nurse, and her 25-year-old son. He can be placed on electronic monitoring and home detention, leaving the residence only to pursue needed medical treatment and to go to court or meet with his attorney once the health crisis has passed.

**Factual Background**

*Changed Circumstances: COVID-19 Outbreak*

As of April 6, 2020, the new strain of coronavirus which causes COVID-19, has infected over 330,891 in the United States, leading to at least 8,910 deaths in this country.[1] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[2] Governor Pritzker declared a State of Emergency on March 9, 2020.[3] Mayor Lightfoot has entered an order requiring all Chicagoans to shelter in place. As of April 6, 2020, there are 11,256 positive cases in Illinois and 274 deaths[4]; as of April 5, 2020, there are 4,680 positive cases in Chicago and 98 deaths.[5] According to news reports from WBEZ radio, 70% of the deaths are African-Americans. Joel Harris is African American.

The CDC has issued guidance that individuals at higher risk of contracting COVID-19—adults over 65 years old and people with chronic medical conditions such as people with chronic kidney disease undergoing dialysis—take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[6] With confirmed cases in Chicago that indicate community spread, we must take every necessary action to protect vulnerable populations and the community at large.

*Conditions of Confinement and Spread of Coronavirus*

Conditions of pretrial confinement create the ideal environment for the transmission of

---

[1] Cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.
[2] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
[3] https://coronarvirus.illinois.gov/s/.
[4] Coronarvirus.illinois.gov/s/(updating regularly).
[5] City of Chicago Coronavirus Response Center, Chicago/gov/city/en/sites/covid-19/home.html (updating regularly).
[6] *People at Risk for Serious Illness from COVID-19*, CDC (April 6, 2020) *at* cdc.gov/coronavirus/2019-ncov/faq.html#high-risk.

contagious disease.[7] Inmates cycle in and out of BOP pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in federal pretrial detention centers.[8] Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[9] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[10] In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[11] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[12] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus

---

[7] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

[8] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[9] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

[10] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

[11] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

[12] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.

across the country.[13]

### *Specific Conditions at the MCC*

The MCC has proven—recently and repeatedly—that they are unable to protect the health and safety of defendants in their custody.  The MCC is a massive pretrial detention facility the MCC houses approximately 650 people.  The majority of the people detained are housed in small two-man cells with a shared toilet and sink and eat meals and have recreation in groups of 70 or more.  Other units are open dormitories that house 70 or more inmates without the ability to separate.  In times of crisis requiring a lockdown, the medical care has halted entirely.

To date, the MCC has not met even the most basic recommendations of the CDC for preventing the spread of the coronavirus.  Because of this, Counsel is barred from visiting his client without the permission of the warden, which will only be granted for people who have hearings imminently.   There are reports that staff are not always wearing face masks or gloves due to shortages.  According to the defendant, hand sanitizer is not available.  Inmates in custody are necessarily kept in close proximity to each other.

As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into the MCC, and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions

The MCC has no provisions for remote access for attorneys and clients.

### *Joel Harris' Evolving Medical Condition*

Like many criminal defendants, Joel Harris was not receiving thorough medical care at the time of his arrest.  Once in the M.C.C., he was placed on medication for hypertension and

---

[13] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.

high blood pressure. He was also diagnosed with a serious kidney disease. Just prior to the Covid-19 quarantine, he met with counsel and a probation officer for a Presentence Report interview. In that interview he explained that he was being examined by physicians outside of the M.C.C. for his kidney problems. He was also told that he would likely have to be placed on dialysis in the future. In addition, according to his niece, Lor Lawson, who is a licensed nurse, his test results indicate that he will need to be placed on dialysis, and that if he is not, he could suffer permanent kidney damage. In addition, the defendant has indicated that he is not receiving dialysis or outside treatment for his kidney issues at this time. However, if he is released, he could obtain his own medical care and isolate himself from potential infection of the Covid-19 virus. If he remains in the M.C.C., he can do neither of these things.

### The Bail Reform Act Requires Joel Harris's Release

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The circumstances that existed when Joel Harris was ordered detained have now changed. There is a pandemic that poses a direct risk to Joel Harris that is far greater if he continues to be detained during this public health crisis.

Joel Harris is vulnerable because he has a serious medical condition and is 50 years old. He is in dire need of treatment for his kidneys and possibly dialysis. He is not receiving that treatment in the M.C.C.

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. As Judge Weinstein held, "We do not punish those who have not been proven guilty. When we do punish, we do not act cruelly. Continued

incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy." *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC"). *See also United States v. Adams*, No. 6:19-mj-00087-MK, 2019 WL 3037042 (D. Or. July 10, 2019) (defendant charged with violation of the Mann Act and possession of child pornography and suffering from diabetes, heart conditions and open sores released on home detention because of his medical conditions); *United States v. Johnston*, No. 17-00046 (RMM) 2017 WL 4277140 (D.D.C. Sept. 27, 2017) (defendant charged with violation of the Mann Act and in need of colon surgery released to custody of his wife for 21 days); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (badly wounded defendant released to custody of his relatives).

This Court should consider the "total harm and benefits to prisoner and society" that continued presentence imprisonment of Joel Harris will yield, relative to the heightened health risks posed to Joel Harris during this rapidly encroaching pandemic. *See United States v. D.W.*, 198 F. Supp. 3d 18, 23 (E.D.N.Y. 2016); *Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case"); *United States v. Francis*, 129 F. Supp. 2d 612, 619-20 (S.D.N.Y. 2001) (reducing sentence in acknowledgment of "the qualitatively different, substandard conditions to which the Defendant was subjected" in pretrial detention).

### **Conditions of Release Are Available That Allow Joel Harris To Be Treated Humanely While Also Ameliorating Any Danger To The Community**

From Joel Harris's perspective his life—not only his liberty—is on the line, creating a powerful incentive to abide by any release conditions the Court may impose and changing the calculus that initially led to the denial of bail in this case. He is charged with perpetrating a fraud on the Government and is not accused of any violent acts.

Critically, during this temporary release, Joel Harris will not be left to his own devices, but will be supported and monitored by Pretrial Services. Since 2009, Pretrial Services' data has found that only 2.9% of defendants in the highest risk category were re-arrested for a violent crime while on release.[14] The elderly and chronically ill, no matter what crime they are accused of, pose a lower risk of violating supervision, particularly during a global pandemic during which even leaving the house will endanger their lives.

In the present case, the defense suggests that Joel Harris be allowed to reside with his niece. He would be ordered to stay at her home 24 hours a day, except to pursue medical treatment. The court can order an electronic monitoring bracelet be attached to Joel Harris so that the court can be assured that these conditions are followed.

## Conclusion

Joel Harris is among the vulnerable population at heightened risk of getting very sick from this illness. For all of the above reasons, Joel Harris should be granted release on bond.

Respectfully submitted,

/s/Steven R. Hunter
Steven R. Hunter
Attorney for Joel Harris
900 West Jackson Blvd., Suite 5-W

---

[14] Thomas H. Cohen, Christopher T. Lowenkamp, and William E. Hicks, *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary* (September 2018) *at* https://www.uscourts.gov/sites/default/files/82_2_3_0.pdf.

                Chicago, IL 60607
                (312) 415-0661
                srhunter@srhunterlaw.com


cc:  AUSA Jared Jodrey