IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 04 CR 888-4 |
| | ) | |
| v. | ) | Judge Charles Norgle |
| | ) | |
| JERRELL BENFORD | ) | Emergency Judge: |
| | ) | Chief Judge Rebecca Pallmeyer |

## MOTION FOR A REDUCED SENTENCE
## UNDER SECTION 404 OF THE FIRST STEP ACT

The defendant, JERRELL BENFORD, by the Federal Defender Program and its attorney, AMANDA G. PENABAD, respectfully requests that this Honorable Court grant him a reduced sentence under Section 404 of the First Step Act. In February 2007, Mr. Benford pled guilty to one count of conspiracy to possess with intent to distribute in excess of 50 grams of crack cocaine. At the time, that charge carried a mandatory minimum sentence of 10 years and a maximum of life. The offense involving in excess of 50 grams of crack cocaine would now carry a lower minimum sentence of 5 years and a maximum sentence of 40 years. Since Mr. Benford's mandatory minimum has changed, the newly enacted First Step Act permits this Court to impose a reduced sentence on Mr. Benford if it wishes to do so. Mr. Benford's growth and conduct in the BOP over the past decade has been exemplary, and Mr. Benford is respectfully requesting a sentence of time served. Mr. Benford is also requesting an expedited briefing schedule, due to his health condition and the current outbreak of coronavirus at FMC Ft. Worth.[1] In further support, he

_____

[1] Defense counsel reached out to the government to learn the government's position on the

states as follows:

BACKGROUND

In December 2006, the grand jury returned a superseding indictment charging Jerrell Benford and others with possession with intent to distribute in excess of 50 grams of crack cocaine (Count One), among other drug-conspiracy related counts. (Dkt. #170) Mr. Benford entered a blind plea of guilty to Count One. (Dkt. #204) On September 12, 2007, this Court sentenced Mr. Benford to a term of 360 months' custody.

At the sentencing hearing, the Court found that Mr. Benford was responsible for at least 1.5 kilograms of crack cocaine, which corresponded to a base offense level of 38. The Court applied a two-level enhancement for Mr. Benford's role in the offense, as well as a two-level reduction for acceptance of responsibility, yielding a final offense level of 38. Combined with a criminal history category of V, the resulting guideline range was 360-life. Sentencing Transcript, Dkt. #290, at 13-17.

On a limited remand in 2009, the Court declined to amend Mr. Benford's sentence in light of Amendment 706, which reduced the base offense level for crack cocaine offenses. The Court found that the evidence established that Mr. Benford was responsible for over 4.5 kilograms of cocaine, and therefore the guideline range had not changed.

In 2017, the parties filed an Agreed Motion for Sentence Reduction, Dkt. #448, pursuant to Amendment 782, which lowered the base offense level for most drug

---

motion. The government indicated that it did not have sufficient information to make its determination, and at this point, opposes the motion.

offenses. The parties agreed that Mr. Benford's new guideline range was 235-293 months. *Id*. at 2. Under USSG § 1B1.10(b)(2)(A), the Court had no discretion to sentence below the guideline range. The Court imposed an amended sentence at the bottom of the new guideline range: 235 months. Dkt. #451.

Mr. Benford, who has been incarcerated since May 24, 2005, currently has a projected release date of March 10, 2022. To date, he has served 14 years and 9 months, or a sentence of approximately 200 months' imprisonment after accounting for good time credit.

## DISCUSSION

The First Step Act, which was signed into law on December 21, 2018, provided in section 404 that "a court that imposed a sentence for a covered offense may, on motion of…the defendant…impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (public law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." First Step Act of 2018, Pub. L. No. 115-391, §404(b). The term "covered offense" is defined as "a violation of a Federal Criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010…that was committed before August 3, 2010." First Step Act of 2018, Pub. L. No. 115-391, § 404(a). Thus, there are two questions relevant in any First Step Act analysis: 1) Is the defendant eligible for relief, and 2) If so, should the Court exercise its discretion to grant relief? In Mr. Benford's case, the answer to both questions is yes.

I. **Mr. Benford is eligible to seek relief under Section 404 of the First Step Act because the penalties associated with his statute of conviction were modified by the Fair Sentencing Act of 2010 and his offense was committed before August 3, 2010.**

At the time of his sentencing hearing in 2007, Mr. Benford was subject to a statutory sentencing range of 10 years' imprisonment to life imprisonment. On August 3, 2010, the Fair Sentencing Act changed the threshold amount of crack needed to trigger that sentencing range from 50 grams to 280 grams. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, §§ 2-3, 124 Stat. 2372. At that point, the "in excess of 50 grams" of crack that Mr. Benford was charged with and pleaded guilty to would have had a statutory term of imprisonment of only 5 to 40 years. However, this change did not apply to Mr. Benford because his conviction was already final and the changes in the Fair Sentencing Act were not retroactive. *See Dorsey v. United States*, 567 U.S. 260, 281 (2012); *United States v. Robinson*, 697 F.3d 443, 444-45 (7th Cir. 2012). As such, Mr. Benford's offense is a "covered offense" under the First Step Act and the Court is now free to "impose…a reduced sentence" in Mr. Benford's case. The Act provides no textual guidance as to what that sentence should be. It also places no limitation on what that sentence can be, other than the 5-year statutory minimum.

II. **The Court should exercise its discretion to reduce Mr. Benford's sentence to time served in light of the new information available.**

Today, more than a decade after Mr. Benford's initial sentencing, there is information available to this Court that was not previously. That information falls primarily into two categories: 1) intervening changes in sentencing policy with regard

to controlled substances in general and crack in particular, and 2) Mr. Benford's rehabilitation during his incarceration. An examination of these factors show that a sentence reduction is appropriate for Mr. Benford.

## A. Changes in the Applicable Law and Guidelines Suggest a Reduced Sentence in Appropriate.

Mr. Benford was initially held accountable for distribution of 1.5 kilograms of crack cocaine. After the 2009 limited remand for the Court to consider re-sentencing, Mr. Benford was found responsible for distribution of 4.5kg of crack cocaine. Such a quantity of cocaine yields a base offense level of 34 when in crack form, but only a level 28 in powder form. The six level-difference may appear small, but the implications for the guideline range here are enormous. Given a base offense level of 34 and a CHC of V, the final guideline range for the crack offense is 235-293. But applying the base offense level of 28 results in a range for a powder offense that starts approximately 100 months lower: 130-162 months. As many courts have concluded, there is simply no basis in science or equity to justify the disparity based on the form of cocaine. In determining the appropriate sentence for this drug crime, the Court can consider that the penalties for crack were and still are based on some irrational and potentially discriminatory ideas.

At the time of Mr. Benford's original sentencing in 2007 and the resentencing in 2009, the Court was without the benefit of the scientific studies and policy developments that have taken place in the past decade. Although sentencing courts routinely declined to administer a 1:1 ratio for crack cocaine cases in 2009, there is now a general recognition that the disparity between sentences for crack and powder

cocaine are without basis. The Court can appropriately consider the evolution of the criminal justice bar's understanding of crack and powder sentencing in evaluation the appropriate sentence for Mr. Benford.[2]

The initial, disparate penalties for powder and crack cocaine were based upon a number of false assumptions concerning the relative harmfulness of each.[3] A tectonic shift in federal cocaine sentencing policy occurred in 2010. The Sentencing Commission and the House of Representatives came to the conclusion that previous conceptions about the lack of meaningful chemical difference between crack and powder cocaine. As Representative Keith Ellison put it "the chemical difference between crack and [powder] cocaine is the difference[ ] between water and ice." Rep. Keith Ellison (D–Minn.), 156 Cong. Rec. H6196–01, H6202, 2010 WL 2942883 (daily ed. July 28, 2010). After this monumental political effort to reform cocaine sentencing, the disparity was reduced from 100:1 to 18:1.

Although the 18:1 ratio was some movement toward fairness in cocaine sentencing policy, it remains a formulaic mechanism that this Court is free to reject as inadequate under §3553(a). *See Kimbrough v. United States*, 552 U.S. 85 (2007). Indeed, many judges in this district have regularly done so. For example, in *United States v. Lewis*, Case No. 10 CR 798-1, Doc. No. 77 (N.D. Ill Oct. 16, 2012), Judge

---

[2] The Court was also without discretion to consider this argument in 2017, as USSG § 1B1.10(b)(2)(A) did not allow the Court discretion to sentence below the new crack cocaine guideline range.

[3] *See* United States Sentencing Commission, *Report to Congress, Cocaine and Federal Sentencing Policy* (May 2002) ("The 100-to-1 drug quantity was established based on a number of beliefs about the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution that more recent research and data no longer support.")

Darrah concluded that "[w]hile the new 18:1 ratio does seek to ameliorate some of the problems caused by the 100:1 ratio, several factors require a rejection of the 18:1 in favor of a 1:1 ratio." The Court noted that the adoption of the 18:1 ratio was "the result of a political compromise, rather than being grounded in empirical support," that the beliefs about the relative harmfulness of crack as compared to powder are unsupported by research and data, that the 18:1 ratio does not advance the goal of Congress to restore "fairness" to federal cocaine sentencing, and that the 18:1 ratio continues to have an unfair and disproportionate effect on black offenders. *Id.* (citing *United States v. Williams*, 788 F. Supp. 2d 847, 886 (N.D. Iowa 2011)). As a result, Judge Darrah elected to exercise his discretion under §3553(a) to apply a 1:1 ratio. Numerous courts in the district have followed. *See, e.g., United States v. G. Johnson*, No. 08 CR 223 (January 19, 2010, J. Kendall); *United States v. Trimble*, No. 08 CR 706 (April 6, 2010, J. Gottschall); *United States v. Ross*, 99 CR 469, Doc. No. 1301 (J. Gettleman); *United States v. Battie*, Case No. 14 CR 436 (N.D. Ill. May 27, 2015, J. Ellis); *U.S. v. Joseph Myatt*, Case No. 11 CR 503 (N.D. Ill. August 11, 2015, J. Castillo) (finding the disparity unwarranted and, combined with other mitigation, justified a sentence of time served and supervised release).

Indeed, the Department of Justice itself advocated for a move to the 1:1 ratio in the lead up to the Fair Sentencing Act. In a Senate hearing on proposed legislation that later became the 2010 FSA, Lanny A. Breuer, Assistant Attorney General, Criminal Division, indicated the Department of Justice's intention to "focus on formulating a new federal cocaine sentencing policy" that "*completely eliminates* the

sentencing disparity between crack and powder cocaine." Statement of Lanny A. Breuer, Assistant Attorney General, Criminal Division, United States Department of Justice, Before the United States Senate Committee on the Judiciary, Subcommittee on Crime and Drugs, Hearing Entitled "Restoring Fairness to Federal Sentencing: Addressing the Crack–Powder Disparity," 10–11 (April 29, 2009) (April 29, 2009, Statement of AAG Breuer) (emphasis added). When he was asked specifically whether the Department of Justice supported the enactment of a 1 to 1 ratio, he clearly stated "yes." Hearing before the Subcommittee on Crime and Drugs, S. Hrg. 111-559, April 29, 2009, available at: https://www.govinfo.gov/content/pkg/CHRG-111shrg57626/html/CHRG-111shrg57626.htm.

Many stakeholders advocated for sentencing equivalence between the two drugs because no reliable empirical evidence supports the distinction in the guidelines between crack and powder cocaine. As a result, this Court can acknowledge that the 3553(a) factors suggest that the appropriate guideline range for Mr. Benford's conduct is closer to the 130-162 months recommended by the powder cocaine guidelines. Mr. Benford has served a sentence well over that range.

Mr. Benford has also served much longer than the presently-applicable mandatory minimum. As noted above, due to the First Step Act, the applicable mandatory minimum is five years. Mr. Benford has served nearly triple that time.

This information about the unnecessarily severe punishment for crack cocaine offenses along with the reduction in the mandatory minimum are important reference points for the Court. Mr. Benford submits that, had the Court been properly informed

about the baseless disparity in crack sentencing the time of sentencing, and had Mr. Benford been subject to the lower mandatory minimum, the Court would have considered imposing a lesser sentence.

**B. When Viewed Through the Lens of Current Law, Mr. Benford's Criminal History is Overstated.**

At the time of sentencing, the Court found Mr. Benford had a total of 12 criminal history points and was in Criminal History Category V. Viewed in terms of today's law, this category overstates Mr. Benford's dangerousness and the need for deterrence.

One of Mr. Benford's criminal history points came from a conviction for possession of marijuana. PSR at 226-236. Based on the quantity, counsel infers that Mr. Benford was charged with a Class A misdemeanor, which indicates a violation of 720 ILCS 550/4(c) and a quantity of less than 30 grams. Today, a similar quantity would not qualify as a misdemeanor offense. *See* 410 ILCS 705/10-10.

Illinois recently passed the Cannabis Regulation and Tax Act (hereinafter "Act"), Public Act 101-0027 (effective June 25, 2019; available at http://ilga.gov/legislation/publicacts/fulltext.asp?Name=101-0027), which amends the expungement provision of the Illinois Code by providing that any individual may file with the circuit court a "motion to vacate and expunge a conviction for a misdemeanor or Class 4 felony violation of Section 4 or Section 5 of the Cannabis Control Act." In considering an expungement motion, Illinois courts are directed to evaluate: a) the reasons to retain the records by law enforcement; b) the petitioner's age; c) the petitioner's age at the time of offense; d) the time since the conviction; and

e) the specific adverse consequences if denied. These considerations all favor expungement in Mr. Benford's case.

Under USSG §4A1.2(j), convictions that are expunged are not counted for criminal history points. Given that Mr. Benford's prior misdemeanor marijuana conviction would not qualify for points today and is expungable, the Court can, in its discretion, find that application of that criminal history point is not appropriate.

Further, Mr. Benford received a significant number of criminal history points for relatively minor offenses. He received three points for a *misdemeanor* theft conviction, two points for simple possession of cocaine, and three points for distribution of less than one gram of cocaine. Together with the expungable marijuana possession point, this Court can consider whether Mr. Benford's criminal history category overstates his true measure of dangerousness and the resulting degree of deterrence required.

**C. Mr. Benford is unlikely to recidivate in light of his current age.**

The Court should also consider Mr. Benford's current age. At 46 years old, Mr. Benford is statistically unlikely to recidivate. *See, e.g., United States v. Tucker*, No. 3-cr-246-02, 2019 WL 324423, *2 (S.D. Iowa Jan. 23, 2019) (granting relief under the First Step Act and noting that "defendant turned fifty last year, an age at which the Sentencing Commission has found that recidivism rate begins to decline substantially" and rejecting the government's concerns because a sentence reduction is "in the interests of justice and furthers the purposes set forth in 18 U.S.C. 3553(a)" (citation omitted)). Many courts have relied upon recidivism statistics from the

United States Sentencing Commission in deciding to impose a below- or non-Guidelines sentence. Relying on statistical analyses in numerous categories over a fifteen-year period, the Sentencing Commission has found that recidivism rates are strongly correlated with various factors, including age. U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004). The Sentencing Commission's report found that "[r]ecidivism rates decline relatively consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates." *Id.* at 12. Offenders aged 41-50 have a recidivism rate of 12.7 percent, while offenders under age 21 have a recidivism rate of 35.5 percent. *Id.* at 28.

### D. Mr. Benford's post-sentencing rehabilitation also demonstrates that his sentence should be reduced.

Further, the First Step Act places no limitation on the type of information the Court may consider when reducing Mr. Benford's sentence, so the Court may consider his post-sentencing conduct when determining the amount of his sentence reduction. This is an unremarkable proposition and consistent with resentencing procedures in other contexts. For example, the Supreme Court in *Pepper v. United States*, 562 U.S. 476 (2011), held that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's post-sentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range." *Pepper*, 562 U.S. at 481. Similarly, in the context of retroactive guidelines amendments, the Sentencing Commission encourages courts to look to a defendant's

post-sentence conduct when determining whether to provide a sentencing reduction. *See* U.S.S.G. §1B1.10 app. n. 1(B)(iii).

Mr. Benford's actions and growth while in custody merit a sentence reduction. He submits with this motion a copy of his most recent BOP Progress Report, along with letters from BOP staff members attesting to his good conduct and rehabilitation. *See* Exhibit A. His Progress Report demonstrates that Mr. Benford has taken advantage of the programming available to him, completing numerous educational classes that will prepare him for re-entry to the community. In particular, Mr. Benford earned his GED and acquired certifications in HVAC, Major Appliance repair, OSHA certification, and the Electrical Technician Certificate. He also completed the Industrial Housekeeper Apprenticeship program through the Department of Labor. In addition to his own educational attainment, Mr. Benford has worked diligently to aid others in their studies as well. The letters from his supervisors in the BOP note that Mr. Benford has worked overtime to motivate and help other students achieve their GEDs. *See* Exhibit B. It is clear that Mr. Benford has built community within the BOP, and that he will be able to successfully translate those skills when he is released from custody.

The letters submitted on Mr. Benford's behalf also demonstrate that he has received outstanding work performance reviews while in custody. His supervisors note that he is diligent and respectful. At sentencing, the Court commented on Mr. Benford's lack of a work history. Mr. Benford has now built that work history, and pursued programming that will allow him to obtain productive employment when he

is released from custody.

Mr. Benford's Progress Report reflects an excellent set of accomplishments, particularly Mr. Benford's lack of *any* disciplinary record in the past decade. It is not always easy for even well-meaning inmates to maintain a clear discipline record while incarcerated. Mr. Benford has done so and is committed to continue down this productive path.

Upon release, Mr. Benford's plan is to live in Chicago with his sister, Petrina Benford. Ms. Benford has confirmed to counsel that her brother is welcome in her home. Mr. Benford also looks forward to his reentry into the community in large part to reunite with his three children, all of whom he has excellent relationships with. His oldest daughter, Marquita Eastman, has submitted a letter of support for her father, detailing her positive relationship with her father and her observation of his character curing the course of his confinement. *See* Exhibit C. His son Shun'treal currently serves in the Air Force, and his youngest daughter, Daidrianna, serves in the Army. All three have stayed in close contact with their father and would welcome his physical presence back in their lives.

In summary, Mr. Benford has done exactly what we ask of incarcerated individuals. He has used his time in prison to take stock of his life and examine the decisions that led to his incarceration. He has reflected on changes he can make in his life and taken concrete steps to manifest those changes. After nearly 15 years, his incarceration has more than served its intended purpose. More specifically, it shows that, when reducing Mr. Benford's sentence, the Court need not put as much

emphasis on deterring him from future criminal conduct, 18 U.S.C. § 3553(a)(2)(B), or protecting the public from him upon his release, *id*. § 3553(a)(2)(C).

## REQUEST FOR EXPEDITED BRIEFING

Mr. Benford is currently incarcerated at FMC Fort Worth, which is a medical facility. He has been placed there due to his ill health; as documented in the PSR, Mr. Benford suffers from chronic bronchitis. PSR at 350-352. Because of this respiratory illness, Mr. Benford is more at risk for complications from COVID-19, were he to contract the virus.[4] As of April 13, 2020, FMC Fort Worth has reported four positive inmate case of coronavirus.[5] If the spread of the virus at other facilities is a guide, an explosion of cases is imminent.[6]  Mr. Benford requests expedited briefing of his request for immediate release in light of the serious health threat that he faces.

Further, if Mr. Benford were released, his sister has confirmed that he can self-quarantine at her home for the recommended 14 days. He therefore has a viable release plan in place.

---

[4] Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html
[5] *See* Federal Bureau of Prisons, COVID-19 Coronavirus Resource Page (updated April 13, 2020) https://www.bop.gov/coronavirus/. The first positive case at FMC Fort Worth was reported Friday, April 10, 2020.
[6] *See, e.g,,* Kimberly Kindy, *Inside the deadliest federal prison, the seeping coronavirus creates fear and danger,* Washington Post (April 9, 2020) available at: https://www.washingtonpost.com/national/inside-the-deadliest-federal-prison-the-seeping-coronavirus-creates-fear-and-danger/2020/04/09/deeceb6e-75b4-11ea-a9bd-9f8b593300d0_story.html; *See also* Federal Defenders of New York, *BOP-Reported Positive Tests for COVID-19 Nationwide,* (April 10, 2020) (using BOP-published information to graphically demonstrate exponential rise of BOP cases and enormous percentage increases in infection) available at https://federaldefendersny.org/

## CONCLUSION

Mr. Benford recognizes that his case was a serious case. None of the arguments presented here are meant to imply anything different. However, a reduction to time served represents an actual sentence of approximately 14 years and 9 months, or a sentence of approximately 200 months' imprisonment after accounting for good time credit. That is a serious sentence, which represents a period that was sufficient to meet the objectives of sentencing policy. In the words of the sentencing statute, any further incarceration would be "greater than necessary" to meet the goals of sentencing. 18 U.S.C. § 3553(a).

Wherefore, defendant Jerrell Benford respectfully requests that this Court exercise its power under the First Step Act and impose a sentence of time considered served on Mr. Benford.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
John F. Murphy
Executive Director

By:    _/s/ Amanda G. Penabad_
      Amanda G. Penabad


AMANDA G. PENABAD
FEDERAL DEFENDER PROGRAM
55 E. Monroe, Suite 2800
Chicago, IL 60603
(312) 621-8340

# EXHIBIT A



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: BENFORD, JERRELL 17891-424

| | | | |
|---|---|---|---|
| Facility: | FTW  FORT WORTH | Custody Level: | IN |
| Name: | BENFORD, JERRELL | Security Level: | LOW |
| Register No.: | **17891-424** | Proj. Rel Date: | 03-10-2022 |
| Quarters: | F05-131U | Release Method: | GCT REL |
| Age: | 46 | DNA Status: | GIL03140 / 06-07-2011 |
| Date of Birth: | ▬▬▬ | | |

## Contact Information
**Release contact & address**

▬▬▬▬▬ , MOTHER

▬▬▬▬▬▬▬▬ , CHICAGO, IL 60628

US

phone (home) : ▬▬▬▬

## Offenses and Sentences Imposed

| Charge | Terms In Effect |
|---|---|
| 21:846,841(A)(1)-CPWITD A CONTROLLED SUBSTANCE; CT. 1S | 235 MONTHS |

Date Sentence Computation Began:      09-12-2007

Sentencing District:    ILLINOIS, NORTHERN DISTRICT

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit  - InOp Time |
|---|---|---|---|
| 0 /    0 /   40 | 716 | Years: 14 Months: 5 Days: | + 841    JC - 0    InOp |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| *NO DETAINER* | |

## Program Plans

| |
|---|
| Inmate Benford transferred to FMC Fort Worth to participate in the Residential Drug Abuse Program (RDAP). |

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| FTW | ORD FTO | FORT WORTH UNIT ORDERLY | 09-11-2019 |

## Work Assignment Summary

| |
|---|
| He has maintained a job for most of his incarceration. He currently works as a unit orderly. |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| FTW | ESL HAS | ENGLISH PROFICIENT | 01-25-2008 |
| FTW | GED EARNED | GED EARNED IN BOP | 11-20-2009 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| FTW | C | RELEASE PREP - NARCOTICS ANON | 08-28-2019 | 10-09-2019 |
| FTW | C | BIGGEST LOOSER "AT RISK" | 09-12-2019 | 09-12-2019 |
| FTW | C | NUTR./EXER. CLASS "AT RISK" | 09-10-2019 | 09-10-2019 |
| FTW | C | INTRO TO EXERCISE HEALTH EDUCA | 09-12-2019 | 09-12-2019 |
| FTW | C | YOGA HEALTH EDUCATION COURSE | 09-11-2019 | 09-11-2019 |
| FTW | C | MEDITATION HEALTH EDUCATION | 09-10-2019 | 09-10-2019 |
| FTW | C | SPORTS AND HEALTH NUTRITION | 09-13-2019 | 09-13-2019 |
| FTW | C | HUMAN ANATOMY HEALTH | 09-13-2019 | 09-13-2019 |
| MCK | C | NCCER CARPENTRY LEVEL 1 | 02-02-2018 | 02-21-2019 |
| MCK | C | ONE HOUR NUTRITION  CLASS | 01-15-2019 | 01-17-2019 |


| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| MCK | C | ACE-BASIC STOCK | 10-30-2018 | 01-07-2019 |
| MCK | C | BASKETBALL OFFICIATING CLASS | 10-24-2018 | 12-19-2018 |
| MCK | C | FCI TUTOR TRAINING | 12-13-2018 | 12-13-2018 |
| MCK | C | INTENSITY TRG.M-W-F10:30-11:30 | 08-07-2018 | 10-05-2018 |
| MCK | C | RPP1 CIRCUIT TR T&T10:30-11:15 | 08-07-2018 | 10-05-2018 |
| MCK | C | RPP(1) FOAM ROLLER CLASS | 08-07-2018 | 10-05-2018 |
| MCK | C | RPP(2)JOB FAIR CLASS/PARTIC | 09-27-2018 | 09-27-2018 |
| MCK | C | RPP(6)FRESH START 1 | 04-12-2018 | 06-14-2018 |
| MCK | C | INTENSITY TRG.M-W-F10:30-11:30 | 04-09-2018 | 06-12-2018 |
| MCK | C | RPP1 CIRCUIT TR T&T10:30-11:15 | 04-09-2018 | 06-12-2018 |
| MCK | C | RPP(1) FOAM ROLLER CLASS | 04-09-2018 | 06-12-2018 |
| MCK | C | RPP1 CIRCUIT TR T&T10:30-11:15 | 01-12-2018 | 04-01-2018 |
| MCK | C | INTENSITY TRG.M-W-F10:30-11:30 | 01-12-2018 | 04-01-2018 |
| MCK | C | FCI TUTOR TRAINING | 03-21-2018 | 03-21-2018 |
| MCK | C | RPP (6) CRIMINAL THINKING | 10-03-2017 | 02-15-2018 |
| MCK | C | SEEKING SAFETY (PSYCHOLOGY) | 10-27-2017 | 02-15-2018 |
| MCK | C | 0800 NCCER CORE CERTIFICATION | 09-14-2017 | 01-30-2018 |
| MCK | C | RPP (2)ACE-WORK SKILLS MATH | 10-05-2017 | 02-01-2018 |
| MCK | C | REC.ASST.SAT.1:30-3:30 | 11-21-2017 | 01-04-2018 |
| MCK | C | RPP1 CIRCUIT TR T&T10:30-11:15 | 10-11-2017 | 12-28-2017 |
| MCK | C | INTENSITY TRG.M-W-F10:30-11:30 | 10-10-2017 | 12-28-2017 |
| MCK | C | RPP(3) CREDIT REPORT WORKSHOP | 10-24-2017 | 10-24-2017 |
| MCK | C | RPP(3) AVOIDMONEYTRAP | 10-24-2017 | 10-24-2017 |
| MCK | C | RPP(2)JOB FAIR CLASS/PARTIC | 09-28-2017 | 09-28-2017 |
| MCK | C | RPP(2)-ULTIMATE JOB SEARCH | 08-18-2017 | 09-28-2017 |
| MCK | C | RPP(5) FAIR SHAKE | 10-23-2017 | 10-23-2017 |
| MCK | C | RPP(1) HEALTH CARE ISSUES | 09-13-2017 | 09-13-2017 |
| MCK | C | RPP(1) HEALTH CARE ISSUES | 07-06-2017 | 07-06-2017 |
| MCK | C | ACE NONPROFIT ORGANIZATIONS | 07-17-2017 | 09-15-2017 |
| MCK | C | RPP(1) WELLNESS | 09-03-2017 | 09-06-2017 |
| MCK | C | RPP(3) CREDIT REPORT WORKSHOP | 08-08-2017 | 08-08-2017 |
| MCK | C | RPP(5)TRANSITION/REENTRY WKSHP | 07-14-2017 | 07-14-2017 |
| MCK | C | RPP(3) AVOIDMONEYTRAP | 07-14-2017 | 07-14-2017 |
| MCK | C | RPP(6) POINT OF VIEW | 07-20-2017 | 07-20-2017 |
| MCK | C | RPP(4)PASSING WRITTEN DRV TEST | 07-21-2017 | 08-04-2017 |
| MCK | C | RPP(4)PASSING WRITTEN DRV TEST | 07-12-2017 | 08-04-2017 |
| MCK | C | RPP(2)CAREER RESOURCE CENTER | 07-27-2017 | 07-27-2017 |
| MCK | C | RPP(5)RELEASE REQUIRMNTS/PROC | 07-13-2017 | 07-13-2017 |
| MCK | C | RPP(6) GET SMART 1 | 06-07-2017 | 07-12-2017 |
| MCK | C | RPP(6) TRUE COLORS | 04-05-2017 | 07-05-2017 |
| MCK | C | RPP(5)TRANSITION/REENTRY WKSHP | 06-30-2017 | 06-30-2017 |
| MCK | C | INTENSITY TRG.M-W-F10:30-11:30 | 05-22-2017 | 06-29-2017 |
| MCK | C | RPP(3) AVOIDMONEYTRAP | 06-16-2017 | 06-16-2017 |
| MCK | C | RPP(3) IRS-TAX CLASS-QTR.-1HR. | 06-16-2017 | 06-16-2017 |
| MCK | C | RPP(1) FOAM ROLLER CLASS | 03-10-2017 | 05-19-2017 |
| MCK | C | RPP(4) SOCIAL SECURITY | 05-11-2017 | 05-11-2017 |
| MCK | C | RPP(4)-COMMUNITY CORRECTIONS | 05-10-2017 | 05-10-2017 |
| MCK | C | RPP1 CIRCUIT TR T&T10:30-11:15 | 03-14-2017 | 04-19-2017 |
| MCK | C | INTENSITY TRG.M-W-F10:30-11:30 | 03-13-2017 | 04-18-2017 |
| MCK | C | FREE YOUR CAPTIVE SELF HELP | 01-09-2017 | 03-29-2017 |
| MCK | C | INTENSITY TRG.M-W-F10:30-11:30 | 01-07-2017 | 02-18-2017 |
| MCK | C | RPP1 CIRCUIT TR T&T10:30-11:15 | 01-07-2017 | 02-18-2017 |
| MCK | C | RPP(3) AVOIDMONEYTRAP | 01-18-2017 | 01-18-2017 |
| GIL | C | STOPPING CRIMINAL ACTIVITY | 04-26-2016 | 09-01-2016 |
| GIL | P | ELECTRICAL APPRENTICESHIP | 04-26-2013 | 08-30-2016 |
| GIL | C | IMPACT ON FAMILIES | 05-17-2016 | 05-24-2016 |
| GIL | C | FACTORS OF CRIMINAL ACTIVITY | 04-12-2016 | 04-26-2016 |

**Summary Reentry Plan - Progress Report**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: BENFORD, JERRELL  17891-424

SEQUENCE: 00140347
Report Date: 10-30-2019



| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| GIL | C | REC AIDE CLASS:1800-2000 | 02-25-2016 | 02-26-2016 |
| GIL | C | NUTRITION: M/W/F 12:30PM | 11-04-2015 | 12-02-2015 |
| GIL | C | FL.FOOTBALL OFFCL: FRI,SAT,SUN | 09-01-2015 | 09-11-2015 |
| GIL | C | JOB FAIR-INFORMATION SESSIONS | 09-02-2015 | 09-02-2015 |
| GIL | C | COMIC BOOK CHARACTERS1800- | 07-26-2015 | 09-02-2015 |
| GIL | C | CUTTING THE FAT FROM YOUR DIET | 02-27-2015 | 02-28-2015 |
| GIL | C | REC AIDE CLASS TUE 1230 | 02-10-2015 | 02-17-2015 |
| GIL | C | REC AIDE CLASS TUE 1230 | 09-10-2014 | 09-16-2014 |
| GIL | C | JOB FAIR-INFORMATION SESSIONS | 08-27-2014 | 08-27-2014 |
| GIL | C | REC AIDE CLASS TUE 1230 | 01-25-2014 | 03-20-2014 |
| GIL | C | MOCK-JOB FAIR INFOR SESSION | 07-18-2013 | 07-18-2013 |
| GIL | C | CBT - ABC I | 11-01-2012 | 12-06-2012 |
| GIL | C | VT:DEPT LABOR CUSTODIAL MAINT | 01-06-2012 | 10-06-2012 |
| GIL | C | CORE CONDIT. ADVAN. T/TH  PM | 05-05-2012 | 06-25-2012 |
| GIL | C | BASIC      WALK/RUN MWF 1830 | 05-13-2012 | 06-25-2012 |
| GIL | C | ADV. STEP AEROBICS M,W,F;1400 | 05-01-2012 | 06-25-2012 |
| GIL | C | MOCK-JOB FAIR INFOR SESSION | 06-21-2012 | 06-21-2012 |
| GIL | C | VT:ADV-COMP. APPLICATIONS | 01-13-2012 | 04-16-2012 |
| GIL | C | GRN FAC MAINT TU-FR;0730-1030 | 08-30-2011 | 02-10-2012 |
| GIL | C | ADV.CARDIO M,W,T 2:00-3:30 PM | 11-16-2011 | 01-06-2012 |
| GIL | C | ADV JUMP ROPE:T/TH;1400 | 11-11-2011 | 01-06-2012 |
| GIL | C | VT:BASIC COMPUTER APPLICATIONS | 04-26-2011 | 09-10-2011 |
| GIL | C | REC AIDE 2:00-3:30 | 12-27-2010 | 01-02-2011 |
| GIL | W | VT:ELECT PROG M,W-F 730-1030AM | 04-19-2010 | 09-01-2010 |
| GIL | C | JUMP ROPE CLASS T & TH 5-6:30 | 06-14-2010 | 08-11-2010 |
| GIL | C | ACE:OSHA 10-HR GEN INDUS SAFET | 12-04-2009 | 12-14-2009 |
| GIL | C | VT HVAC M,W,F 1230-330PM | 10-13-2009 | 02-25-2010 |
| GIL | C | ADV GED:1230-2 R5 (T,W,TH,F) | 09-08-2009 | 11-09-2009 |
| GIL | C | MAJOR APPL.REPAIR M-W 730-1030 | 03-16-2009 | 07-24-2009 |
| GIL | C | INTERMEDIATE SPIN 2:00  M,W,F | 07-01-2009 | 08-27-2009 |
| GIL | C | ABS CLASS M,W,F FCI 2PM | 07-08-2009 | 08-20-2009 |
| GIL | W | ADV GED:1230-2 R5 (T,W,TH,F) | 04-07-2009 | 08-03-2009 |
| GIL | C | ACE:FOREIGN EXCH;RM4,W,630-830 | 03-18-2009 | 06-08-2009 |
| GIL | C | ABS CLASS M,T,TH,F FCI 9-1030 | 02-03-2009 | 03-27-2009 |
| GIL | C | ACE:EPA EXAM FRI 5-7P | 01-29-2009 | 03-24-2009 |
| GIL | W | ADV GED:1230-2 R5 (T,W,TH,F) | 01-20-2009 | 02-04-2009 |
| GIL | W | PRE-GED:1230-2P RM5(M,TU,W,F) | 12-15-2008 | 01-20-2009 |
| GIL | C | CAL. RECREATION 2:00-3:30 | 10-28-2008 | 12-23-2008 |
| GIL | W | PRE-GED:1230-2P RM5(M,TU,W,F) | 04-02-2008 | 11-14-2008 |
| GIL | C | WALK/RUN PROGRAM 1800-1900 | 07-21-2008 | 09-10-2008 |
| GIL | C | ACE:MONEY SMART R4:TU 630-830P | 07-02-2008 | 09-02-2008 |
| GIL | C | TRAING4INSTRUCT M-TU-TH 6-730P | 06-09-2008 | 07-30-2008 |
| GIL | W | ACE:KEYBOARDNG LAB:TU630-830P | 04-29-2008 | 07-01-2008 |
| GIL | C | BASIC SPINNING 1230-1330 | 03-18-2008 | 05-21-2008 |
| GIL | C | ACE:REAL ESTATE RM5:M 730-830P | 04-07-2008 | 05-12-2008 |
| GIL | W | PREGED:900-1030A CLASSROOM 5 | 02-04-2008 | 04-02-2008 |
| GIL | C | CALISTHENICS 1430-1530 | 01-01-2008 | 02-29-2008 |

**Education Information Summary**

| |
|---|
| He earned his GED while in custody. He has completed multiple classes during his incarceration. |

**Discipline Reports**

| Hearing Date | Prohibited Acts |
|---|---|
| 09-01-2010 | 312 : BEING INSOLENT TO STAFF MEMBER |
| 03-10-2010 | 104 : POSSESSING A DANGEROUS WEAPON |
| 10-07-2005 | 297 : PHONE ABUSE-DISRUPT MONITORING |



**Summary Reentry Plan - Progress Report**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: BENFORD, JERRELL  17891-424

SEQUENCE: 00140347
Report Date: 10-30-2019

## Discipline Summary

He has received 3 incident reports during his incarceration. He has maintained clear conduct since 8/10/2010.

## ARS Assignments

| Facl | Assignment | Reason | Start | Stop |
|------|-----------|--------|-------|------|
| FTW DRUG | A-DES | TRANSFER RECEIVED | 07-26-2019 | CURRENT |
| MCK | A-DES | OTHER AUTH ABSENCE RETURN | 05-30-2018 | 07-03-2019 |
| MCK | A-DES | OTHER AUTH ABSENCE RETURN | 03-13-2017 | 05-30-2018 |
| MCK | A-DES | TRANSFER RECEIVED | 11-10-2016 | 03-13-2017 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 11-12-2014 | 10-18-2016 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 10-15-2014 | 11-12-2014 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 05-01-2014 | 10-15-2014 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 10-24-2013 | 05-01-2014 |
| GIL | A-DES | OTHER AUTH ABSENCE RETURN | 07-19-2008 | 10-24-2013 |
| GIL | A-DES | US DISTRICT COURT COMMITMENT | 12-04-2007 | 07-12-2008 |

## Current Care Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| CARE1-MH | CARE1-MENTAL HEALTH | 06-25-2010 |
| CARE2 | STABLE, CHRONIC CARE | 07-29-2019 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| NO PAPER | NO PAPER MEDICAL RECORD | 07-26-2019 |
| PAPER | LEGACY PAPER MEDICAL RECORD | 06-28-2019 |
| REG DUTY W | REGULAR DUTY W/MED RESTRICTION | 11-14-2018 |
| SOFT SHOES | SOFT SHOES ONLY | 11-14-2018 |
| YES F/S | CLEARED FOR FOOD SERVICE | 11-14-2018 |

## Current PTP Assignments

| Assignment | Description | Start |
|------------|-------------|-------|

*NO ASSIGNMENTS*

## Current Drug Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| DAP FAIL E | RESIDENT DRUG TRMT FAIL-EXPEL | 11-04-2019 |
| ED COMP | DRUG EDUCATION COMPLETE | 09-02-2011 |
| INELIGIBLE | 18 USC 3621 RELEASE INELIGIBLE | 07-26-2018 |
| NR COMP | NRES DRUG TMT/COMPLETE | 04-27-2017 |

## Physical and Mental Health Summary

He is a care level 1 mental health and 2 medical inmate. He completed the Non-Residential Drug Abuse Program on 4/27/2017, Drug Education on 9/2/2011, and he is currently participating in RDAP.

## FRP Details

Most Recent Payment Plan

**FRP Assignment:** **COMPLT** **FINANC RESP-COMPLETED** **Start: 10-08-2008**

Inmate Decision: **AGREED** **$25.00** Frequency: **SINGLE**

Payments past 6 months: **$0.00** Obligation Balance: **$0.00**

### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|-----|------|--------|---------|---------|--------|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

*** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ***

## Financial Responsibility Summary

He completed his FRP.


## Release Planning

He was sentenced in the Northern District of Illinois. He plans on releasing to this district.

## General Comments

** No notes entered **



**Summary Reentry Plan - Progress Report**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: BENFORD, JERRELL 17891-424

SEQUENCE: 00140347
Report Date: 10-30-2019

Name: BENFORD, JERRELL
Register Num: 17891-424
Age: 46
Date of Birth: ▓▓▓▓▓▓
DNA Status: GIL03140 / 06-07-2011

_Jerrell M Benford_
Inmate    (BENFORD, JERRELL, Register Num: 17891-424)

10-30-2019
Date

Chairperson

10-30-2019
Date

B. Harris
Case Manager

10-30-2019
Date

# EXHIBIT B



**U.S. Department of Justice**

Federal Bureau of Prisons

*Mid-Atlantic Regional Office*

---

*302 Sentinel Drive, Suite 200*
*Annapolis Junction, MD 20701*

November 15, 2012

**MEMORANDUM FOR UNIT MANAGEMENT**

**FROM:**       R.A. Clem, Reentry Affairs Coordinator

**SUBJECT:**    Benford, Jerrell #17891-424

Inmate Benford, Jerrell began taking classes at FCI Gilmer in January of 2009. Since that time he has taken a number of programs and earned various certifications and licenses; to include: HVAC, Major Appliance Repair and OSHA Certification. He has also obtained the Electrical Technician Certificate, and completed the Basic and Advance Computer Application programs. In addition, he has successfully completed the Industrial Housekeeper Apprenticeship program through the United States Department of Labor (DOL) on October 6, 2012.

Inmate Benford has maintained "Outstanding" work performance reviews since beginning his detail assignment in Vocational Training in March 2009. Since then, he has continued to be an asset to the department and has been a diligent and respectful worker. He is currently assigned as the tutor for the Vocational Training programs.



U.S. Department of Justice
Federal Bureau of Prisons
Federal Correctional Institution — Gilmer
Glenville, West Virginia 26351

June 21, 2016

MEMORANDUM FOR TO WHOM IT MAY CONCERN

**FROM:**       W. Creasey, C-3 Correctional Counselor

**SUBJECT:**    Verification of Incarceration
                Inmate Name: BENFORD, Jerrell
                Register Number: 17891-424

The purpose of this memorandum is to advise you that inmate Benford, Jerrell #17891-424 has been incarcerated at the Federal Correctional Institution — Gilmer, located in Glenville, West Virginia, since 12/04/2007.  He has been in Federal custody since 11/28/2007.  His projected release date from the Federal Bureau of Prisons is on 08/17/2031.

Currently inmate Benford is enrolled in an inmate program at FCI Gilmer titled "Going Home to Stay".  This group of about 60 inmates will discuss factors that have led to their incarceration and criminal behavior, impact their crime has had on their victims and the impact on the inmate families.   Also this group will discuss avenues to change criminal thinking patterns, job interviews, and other ways to lead a productive life once they are released.   This inmate group lasts approximately six months.

Current Address:
Inmate Benford, Jerrell #17891-424
Federal Correctional Institution — Gilmer
P.O. Box 6000
Glenville, WV, 26351

If you require any further information please feel free to contact me at:

W. Creasey C-3 Counselor
Federal Correctional Institution — Gilmer
P.O. Box 5000
Glenville, WV, 26351
304-626-2500

May 30th, 2019

To Your Honor Judge Charles R. Norgle Senior:

This letter is my character reference for Mr. Jerrell Benford. He has worked in the Education Department over 2 years. I found him to be consistently pleasant, tackling all assignments with dedication and an eagerness to take on new challenges.

Mr. Benford is a take-charge person who is able to present creative ideas and communicate the benefits. He has successfully assisted in the success of several students earning their GED. During his tenure, we saw an increase in test scores and participation. These outcomes were a direct result of the hard work and leadership implemented by Mr. Benford.

Though he was an asset to our educational efforts, Mr. Benford was also extraordinarily helpful in other areas of the Education Department. In addition to his normal work hours, Mr. Benford put in extra time inspiring and motivating other students. He has an active role in our institutions Re-Entry Department and is currently a participant in our Life Coaching Program.

It has been a pleasure working with Mr. Benford these past years. He is very active in educational and re-entry programming in an effort to successfully transition back to society. I truly believe once given the chance he will become a successful and contributing member of society.

Sincerely,

Chad Vinelli, Teacher FCI McKean



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Institution, McKean*

P.O. Box 5000
Bradford, PA 16701

To whom it may concern:

Mr. Benford, 17891-424 has served in the inmate re-entry cohort for several years. His work dedication to the program has been outstanding and he takes pride in his work. Additionally, he personal supports his faith community, by being a positive influence and directing them in how to have long lasting spiritual growth. He is not subject to only his faith community, but also encourages other faith communities. Mr. Benford is an asset to the spiritual growth programs offered at this institution.

Sincerely,

Chaplain Rich Glogau
Supervisory Chaplain
FCI McKean



Sterling Lewis, Jr.
State Fire Marshal

## The Department of Military Affairs and Public Safety

Phone: (304) 558-2191
Fax:   (304) 558-2537

### STATE FIRE MARSHAL'S OFFICE
1207 Quarrier St, 2nd Floor
Charleston, WV 25301

**TO:**   JERRELL M. BENFORD

**FROM:**   Anthony W. Carrico, Deputy State Fire Marshal

**RE:**   Electrician Examination Results

### *Congratulations !*

It is our pleasure to inform you that you have passed the West Virginia State Electrical Examination for the APPRENTICE level administered to you 4/8/2011 at our FCI GILMER location. A minimum score of 80 out of 100 possible points is required to pass the exam. Your final test score was: 96

You are now able to obtain a West Virginia Electrical License for the level of competency tested. Please be aware that even though you passed the examination, you need to obtain your actual license in order to perform work legally.

All licenses shall expire on June 30th of each year and the annual renewal fee is $ 50.00. A courtesy renewal notice shall be mailed to the last address on file no later than May of each year, however, it is the *licensee's responsibility* to keep his / her license current.

An exception is made for all incarcerated applicants that pass the exam. You do not need to obtain your license until you are released from the correctional facility. You will be allowed 90 days from your release date to obtain your actual license, by returning this form along with a copy of your release paper and the $ 50.00 annual license fee. Please make sure to include the address that you wish your license to be mailed to.

Please make any necessary changes below:

Name:   BENFORD , JERRELL M.

S.S.No.:   xxx -_____-_____   or  Drivers License No.: _____

Address:   _____

_____



(/)

**Proctor Login (https://www.escotesting.com/) | Test Results and Replacement Cards (/Student/Default.aspx)**

Viewing > Home (/Default.aspx) > **Certification Status**

# Certifications for JERRELL BENFORD

Please Note:
If you have passed an examination in the last 7-10 days your credentials are on the way in the mail.

| Log Out / Change Technician |
|---|

## EPA Section 608

View EPA Section 608 Results (CertificationResult.aspx?etc=608)

**Certified UNIVERSAL**

608 Replacement Wallet Card (ReplacementCart.aspx?ciid=525&eid=21)

Wall Certificate for Type I, Type II, Type II, and Universal (ReplacementCart.aspx?ciid=3076&eid=21)

Wall Certificate with Custom Wood Plaque (ReplacementCart.aspx?ciid=3077&eid=21)

EPA Certified Technician Shoulder Patch 3-Pack (ReplacementCart.aspx?ciid=3079&eid=21)

| Section | Status | Date Achieved |
|---|---|---|
| Core * | Passed | Jul 28, 2010 |
| Type I | Passed | Jul 28, 2010 |
| Type II | Passed | Jul 28, 2010 |
| Type III | Passed | Jul 28, 2010 |

*\* Core plus any combination of Type I, Type II, or Type III required for certification*

Click here for complete details about EPA Section 608 certification. (/Training/Epa608.aspx)

## EPA Section 609

View EPA Section 609 Results (CertificationResult.aspx?etc=609)

**Certified Jul 16, 2009**

Buy Replacement Card / Certificate (ReplacementCart.aspx?ciid=524&eid=7)

Click here for complete details about EPA Section 609 certification. (/Training/Epa609.aspx)

## R-410A

View R-410A Results (CertificationResult.aspx?etc=410)

**Certified Jul 28, 2010**

Buy Replacement Card / Certificate (ReplacementCart.aspx?ciid=526&eid=37)

Click here for complete details about R-410A certification. (/Training/R410A.aspx)

## Educator Credentialing ( CMHE / CSME )

View CMHE/CSME Results (CertificationResult.aspx?etc=CMH)

**Not Certified**

| Certification | Status | Date Achieved |
|---|---|---|
| Technical Educator (Capstone) | Incomplete | |
| Electrical Educator | Incomplete | |
| Air Conditioning Educator | Incomplete | |
| Light Commercial Air Conditioning Educator | Incomplete | |
| Commercial Refrigeration Educator | Incomplete | |
| Electric Heat Educator | Incomplete | |
| Gas Heat Educator | Incomplete | |
| Oil Heat Educator | Incomplete | |
| Heat Pump Educator | Incomplete | |

Click here for complete details about Educator Credentialing certifications. (http://www.hvacexcellence.org/Credentialing.aspx)

## Green Awareness

View Green Awareness Results (CertificationResult.aspx?etc=GMCM)

**Not Certified**

| Section | Status | Date Achieved |
|---|---|---|
| Core * | Incomplete | |

| | |
|---|---|
| HVACR | Incomplete |
| Electrical | Incomplete |
| Plumbing | Incomplete |

*\* Core plus any combination of HVACR, Electrical or Plumbing required for certification*

Click here for complete details about Green Awareness certifications. (/Training/GreenAwareness.aspx)

---

## Green Mechanical Council

View GreenMech Results (CertificationResult.aspx?etc=GMC)

| Certification | Status | Date Achieved |
|---|---|---|

---

## HVAC Excellence, Employment Ready

View Employment Ready Results (CertificationResult.aspx?etc=HVC)

| Certification | Status | Test Date | |
|---|---|---|---|
| Air Conditioning | Passed | Jun 23, 2010 | Buy Replacement Certificate (ReplacementCart.aspx? ciid=496 &eid=2) |
| Electrical | Passed | Jun 22, 2010 | Buy Replacement Certificate (ReplacementCart.aspx? ciid=495 &eid=1) |
| Heat Pump | Passed | Sep 07, 2011 | Buy Replacement Certificate (ReplacementCart.aspx? ciid=497 &eid=3) |

Click here for complete details about HVAC Excellence, Employment Ready certifications. (http://www.hvacexcellence.org/EmploymentReady.aspx)

---

## HVAC Excellence, Professional Level

View Professional Level Results (CertificationResult.aspx?etc=HX)

| Certification | Status | Test Date |
|---|---|---|

Click here for complete details about HVAC Excellence, Professional Level certifications.
(http://www.hvacexcellence.org/ProfessionalLevel.aspx)

---

## RSES

View RSES Results (CertificationResult.aspx?etc=RSE)

| Certification | Status | Test Date |
|---|---|---|

---

## System Performance Verification

View System Performance Results (CertificationResult.aspx?etc=SPV)

**Not Certified**

| Section | Status | Date Achieved |
|---|---|---|
| Airflow | Incomplete | |
| Critical Charging | Incomplete | |
| Psychrometrics | Incomplete | |
| Combustion | Incomplete | |

Try a Free Practice Exam (/Practice/Default.aspx)

View Open Book Exams (/OpenBook/OpenBookExamList.aspx)

Change Student Information (StudentInfo.aspx)

Purchase Study Resources (https://www.escoinst.com/Shop/Purchase.aspx)

---

© ESCO Group 2019 All rights reserved
Telephone: (800) 726-9696 • Fax: (800) 546-3726

**Registry System**

Try Another

**Online Verification**

# Jerrell Benford,

### Card Number: 20428507

☐ I hereby authorize the Accredited Training Sponsor and/or Accredited Assessment Center to release my training and/or Assesssment record to NCCER. Further,I hereby authorize NCCER to rely upon this information to maintain my training/assessment records in its Automated National Registry. I hereby release and hold harmless NCCER from any and all liability resulting from its reliance on such information provided by the Accredited Training Sponsor and/or Accredited Assesssment center.

☐ I understand and accept all conditions outlined in Responsibilities & Liabilities.

| Certifications | Completed Training | Knowledge Verified | Performance Verified |
| --- | --- | --- | --- |

Completed PV Tasks

**Crafts**

| Craft Title | Date Completed |
| --- | --- |
| Core Curriculum | 04/23/2019 |

| 1 | | 10 | items per page | 1 - 1 of 1 items |
| --- | --- | --- | --- | --- |

**Levels**

| Level Title | Date Completed |
| --- | --- |
| Core Curriculum | 04/23/2019 |
| Carpentry Level One | 04/23/2019 |

| 1 | | 10 | items per page | 1 - 2 of 2 items |
| --- | --- | --- | --- | --- |

## Modules

| Module ID | Module Title | Date Completed |
|-----------|-------------|----------------|
| 00101-09 | Basic Safety | 04/23/2019 |
| 00102-09 | Introduction to Construction Math | 04/23/2019 |
| 00103-09 | Introduction to Hand Tools | 04/23/2019 |
| 00104-09 | Introduction to Power Tools | 04/23/2019 |
| 00105-09 | Introduction to Construction Drawings | 04/23/2019 |
| 00107-09 | Basic Communication Skills | 04/23/2019 |
| 00108-09 | Basic Employability Skills | 04/23/2019 |
| 00109-09 | Introduction to Materials Handling | 04/23/2019 |
| 27101-13 | Orientation to the Trade | 04/23/2019 |
| 27102-13 | Building Materials, Fasteners and Adhesives | 04/23/2019 |

1  2          10      items per page

1 - 10 of 17 items

© 2016 NCCER. All Rights Reserved.

Registry System



Try Another

**Online Verification**

# Jerrell Benford,

### Card Number: 20428507

☐ I hereby authorize the Accredited Training Sponsor and/or Accredited Assessment Center to release my training and/or Assesssment record to NCCER. Further,I hereby authorize NCCER to rely upon this information to maintain my training/assessment records in its Automated National Registry. I hereby release and hold harmless NCCER from any and all liability resulting from its reliance on such information provided by the Accredited Training Sponsor and/or Accredited Assesssment center.

☐ I understand and accept all conditions outlined in Responsibilities & Liabilities.

Certifications | Completed Training | Knowledge Verified | Performance Verified

Completed PV Tasks

**Crafts**

| Craft Title | Date Completed |
|---|---|
| Core Curriculum | 04/23/2019 |

☐ 1    10    items per page    1 - 1 of 1 items

**Levels**

| Level Title | Date Completed |
|---|---|
| Core Curriculum | 04/23/2019 |
| Carpentry Level One | 04/23/2019 |

☐ 1    10    items per page    1 - 2 of 2 items

**Modules**

| Module ID | Module Title | Date Completed |
|-----------|--------------|----------------|
| 27103-13 | Hand and Power Tools | 04/23/201! |
| 27104-13 | Introduction to Construction Drawings, Specifications, and Layout | 04/23/201! |
| 27105-13 | Floor Systems | 04/23/201! |
| 27109-13 | Introduction to Building Envelope Systems | 04/23/201! |
| 27110-13 | Basic Stair Layout | 04/23/201! |
| 27111-13 | Wall Systems | 04/23/201! |
| 27112-13 | Ceiling Joist and Roof Framing | 04/23/201! |

1 ( 2 )    10    items per page    11 - 17 of 17 items

❮    ❯

© 2016 NCCER. All Rights Reserved.

# EXHIBIT C

# Amanda Penabad

To whom it may concern,

My dad Jerrell Benford has always been a great dad. Although he has been incarcerated majority of my life, as hard as it was for him, he has always made it his top priority to stay in contact with my siblings and I over the years. I don't have much memories with my dad because I was still a little girl at the time. The ones I do have are still very clear as if it just happened. I can recall this one time we went into a store to get me a big barbie house, after checking out he let me keep his change. I felt like I was the richest person ever that day. I'm sure I talked about that for at least the next month. I could also remember when he would tickle me so much to where I was almost out of breath.  I enjoyed every moment with my dad every chance I got. I would never want to go back home when that time came. My dad is a responsible and dependable person. My mom and grandma have told me several times how he always got me anything I needed or wanted and was always there.  In my adult life, he has taught me so much from the guys I date to tips with potty training my 2-year-old baby girl. Because of my dad, I've learned about stocks and plan on learning real estate. I never would've thought I could learn so much in 15 minutes from a phone conversation, but I have. My dad is very smart, in his spare time he loves to read which has contributed to his knowledge and ability to teach me. My dad is also very patient, it has been times when I have promised to send him pictures and would forget but he never got upset with me. Although my dad made a mistake, he has become a man of integrity during his incarceration. He has always told me to do the right thing no matter how difficult some things may be.  I am more than positive after my dads release that is something he will continue to live by. I truly believe he has learned from his mistakes he has made in life. I hope something in this letter bring him home a lot sooner than expected and change the way he may be viewed. If you need any additional information, feel free to contact me at ███████████ or █████████████████████ .

Sincerely,

Marquita Eastman