IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 19 CR 635 |
| v. | ) | Judge Gary S. Feinerman |
| | ) | |
| RAFAEL RODRIGUEZ | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR REVIEW OF THE
MAGISTRATE'S DETENTION ORDER AND PRETRIAL RELEASE**

Defendant, **Rafael Rodriguez**, by and through his attorneys, **the Law Office of Damon M. Cheronis**, pursuant to 18 U.S.C. §§ 3142 and 3145(b), as well as the Due Process and Effective Assistance of Counsel clauses of the Fifth and Sixth Amendment to the Constitution of the United States, respectfully moves this Court to authorize his pretrial release subject to the least restrictive conditions necessary to ensure his appearance at future court proceedings and the safety of the community. As will be discussed, since Magistrate Judge Valdez issued a detention order on August 28, 2019 (Dkt. # 17), the world at large has been stricken with a dangerous pandemic, COVID-19, which assuages the risk of flight the Court previously found to exist, and constitutes its own "compelling reason" under § 3142(i) requiring pretrial release.

In support of this motion, Mr. Rodriguez, through counsel, states the following:

I.  **Background**

1.  On August 8, 2019, a criminal complaint was filed in this matter charging Mr. Rodriguez with possessing with the intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1). Dkt. # 1.

2. On August 27, 2019, the grand jury returned an indictment charging Mr. Rodriguez with possessing with the intent to distribute 100 grams or more of heroin, 40 grams of fentanyl, and a quantity of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Dkt. # 12. The government set forth in the indictment and since filed a notice to seek an enhanced sentence pursuant to 21 U.S.C. § 851. Dkt. # 19.

3. On August 28, 2019, a detention hearing was held. A copy of the transcript is attached hereto as Exhibit A. At the conclusion of the hearing, Magistrate Judge Valdez ordered Mr. Rodriguez detained as both a danger and a flight risk. *Id*. at p. 15. The Court noted that this case "is a bit of a close call, but it turns out it's not that close . . . because of the rebuttable presumption." *Id*.

4. Given the unforeseen and drastic changes that have occurred worldwide in response to the COVID-19 emergency, the considerations underlying the detention hearing have likewise shifted; that is, counsel and Mr. Rodriguez ask the Court to reconsider and ultimately authorize his pretrial release, as there are reasonable assurances of his appearance at future court dates, and further "compelling reasons" exist under § 3142(i).

II. **Discussion**

5. In our society, liberty is the norm and pretrial detention is the carefully limited exception. *United States v. Salerno*, 481 U.S. 739, 755 (1987). Thus, judicial officers must bear in mind that the "'passage of the pretrial detention provision of the [Bail Reform Act] did not . . . signal a congressional intent to incarcerate wholesale the category of accused persons awaiting trial.' Rather, Congress was demonstrating its concern about a small but identifiable group of individuals as to whom pretrial release is inappropriate." *United States v. Westbrook*, 780 F.2d 1185, 1189 (5th Cir. 1986) (quoting *United States v. Orta*, 760 F.2d at 890). Any doubts therefore regarding the

propriety of issuing bond should always be resolved in favor of the defendant. *United States v. Herzog*, 75 S. Ct. 349, 351 (1955) ("[b]ail is basic to our system . . . . Doubts whether it should be granted or denied should always be resolved in favor of the defendants") (citing *United States v. Motlow*, 10 F.2d 657 (7th Cir. 1926)).

6.   Where, as here, a defendant is charged with an offense contemplated by 21 U.S.C. § 841(a)(1), there arises a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C § 3142(e)(3). When evaluating whether or not a defendant has successfully rebutted this presumption, the Court must consider the following:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a [f]ederal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g)(1-4). Among these factors, the "weight of the evidence" is considered the least important, since it risks detention based on a premature evaluation of guilt. *See, e.g., United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985); *United States v. Edson*, 487 F.2d 370, 372 (1st Cir. 1973); *United States v. Alston*, 420 F.2d 176, 179 (D.C. Cir. 1969).

7. To be clear, the Bail Reform Act does not require defendants to make any *guarantees* in order to justify pretrial release; rather, only the *reasonable assurance* that the defendant is not a flight risk or danger to the community is sufficient. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985) (en banc) ("[t]he legal standard required by the Act is one of reasonable assurances, not absolute guarantees"). Where a rebuttable presumption is present under § 3142(e), the burden of producing rebuttable evidence—but not the burden of persuasion—shifts to the defendant. *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). The Seventh Circuit has noted that this is not a heavy burden. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

8. Since the Court issued its detention order on March 5, 2020 (Dkt. # 30), the world at large has been stricken with a dangerous pandemic, COVID-19, which assuages the risk of flight the Court previously found to exist, and constitutes its own "compelling reason" under § 3142(i) requiring pretrial release. COVID-19 is incredibly dangerous and infectious. With an incubation period as long as 14 days, it is known to produce fever, cough, fatigue, anorexia, shortness of breath, sputum production, and myalgias.[1] 20% of those infected are believed to experience severe symptoms, and the disease carries a mortality rate of approximately 2%--much higher than common influenza. *Id*. While some are more at risk than others, the entire population is vulnerable, and

---

[1] *See* Center for Disease Control, Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19), *available at* (https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html#foot09) (last accessed March 31, 2020).

4

certainly capable of spreading the disease to others. In fact, tragically, an infant of nine-months-old succumbed to the illness in Chicago just this past week.[2]

9. As of Wednesday, April 15, 2020, there are currently 2,016,020 cases confirmed globally, 613,187 in the United States, and many more likely already due to lack of testing in many areas and the manifestation of only mild symptoms in some individuals. *See* Johns Hopkins University & Medicine, Johns Hopkins Coronavirus Resource Center, *available at* https://coronavirus.jhu.edu/map.html (last accessed April 15, 2020). The death toll has risen to 76,507, *Id*. In Cook County itself, there have already been 16,323 confirmed cases and 577 deaths. *Id*.

10. As a result, on March 28, 2020, Governor Pritzker passed Executive Order 2020-16.[3] This order effectively shut down all non-essential services in the State of Illinois, requiring residents to stay at home, practice social distancing (maintaining at least six feet of distance from others), and countless other measures. That order is likely to be extended until the end of April.[4]

11. In an effort to combat the spread of the disease, our court system itself has by and large shut down as well. Most recently, on March 30, 2020, Chief Judge Pallmeyer issued a second amended general order, 20-0012, effectively striking all trial dates prior to June of 2020, continuing any sentencing and plea hearings scheduled before the end of May 2020, continuing other matters,

---

[2] *See* St. Clair, Stacy & Reyes, Cecilia, Illinois Gov. J.B. Pritzker announces 13 more deaths linked to the coronavirus, including the stunning loss of an infant, Chicago Tribune, *available at* https://www.chicagotribune.com/coronavirus/ct-coronavirus-pritzker-presser-saturday-20200328-lgz3i2aoljgnvmu62yiamfjtje-story.html (last accessed March 31, 2020).
[3] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-16.aspx
[4] Sfondelas, Tina, Gov. Pritzker to extend stay-at-home order through April with schools to remain shuttered, Chicago Sun Times, *available at* (https://chicago.suntimes.com/coronavirus/2020/3/31/21201671/stay-at-home-order-extended-april-30-illinois-pritzker) (last accessed March 31, 2020).

expanding the use of videoconferencing, and globally excluding time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), until May 18, 2020 in the interests of justice.

12. Our correctional facilities have become exceptionally dangerous places in light of this pandemic, and the MCC Chicago is no exception. The nearby Cook County Jail has already begun to see the disease rip through its facilities. As of March 31, 2020, the Cook County Sheriff's Office reports 141 detainees have tested positive, in addition to 25 staff members.[5] These self-reports, however, appear to grossly underestimate the actual number of cases. As the New York Times reports, Cook County Jail, with closer to approximately 355 cases, constitutes the single largest localized outbreak in the entire United States.[6] The Chicago Tribune reported on April 12, 2020 that a third inmate has passed away as a result of contracting the virus, and at least 254 detainees may have been infected.[7] As of April 7, 2020, dozens and dozens of staff members inmates in BOP facilities across the country have already tested positive, including 352 inmates, and 189 staff members. two of which were located in Chicago.[8] Counsel also understands from communications with the Federal Defender's Office, that as of April 15, 2020, six inmates at the MCC Chicago have tested positive for COVID-19. Those individuals were previously housed on three separate floors of the facility.

---

[5] *See* Update on COVID-19 Cases at Cook County Jail, Cook County Sheriff's Office, *available at* https://www.cookcountysheriff.org/update-on-covid-19-cases-at-cook-county-jail-4/ (last accessed April 7, 2020).
[6] *See* Coronavirus in the U.S.: Latest Map and Case Count, New York Times, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last accessed April 7, 2020).
[7] Fry, Page, Third inmate with COVID-19 at Cook County Jail Dies, Chicago Tribune, *available at* https://www.chicagotribune.com/news/breaking/ct-covid-jail-death-third-20200413-ob7u5h7ccfg4zo6fgy46p2zpqi-story.html (last accessed April 13, 2020).
[8] *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed April 7, 2020).

13. The virus is likely to continue to spread, continuing to change life as we know it for not only the next few weeks, but months to come, in both jails and society at large. Conditions of pretrial confinement create the ideal environment for the transmission of contagious diseases.[9] "Jails and prisons often lack sufficient hand washing areas, isolation rooms, and personal protective equipment." *Id*. For society at large, the disease is likely to continue to pose a public health emergency for months to come—with some estimates putting the total death toll in the millions.[10]

14. The foregoing is simply a brief overview of the current state of this pandemic. The Court is certainly aware of the grave health risks it poses to all of society, and the risk to Mr. Rodriguez as well. As noted in the pretrial services report, while he is otherwise in good health, Mr. Rodriguez is now 56-years-old, and has a long history of alcoholism—three decades worth. While older and more severe health problems carry graver risk, the CDC has recognized that older individuals and individuals with liver disease are at greater risk from COVID-19.[11]

15. In passing the Bail Review Act, Congress recognized that, notwithstanding its other provisions, a judicial officer may order the release of a defendant for "another compelling reason." 18 U.S.C. § 3142(i). Courts have granted temporary release under Section 3142(i) when medical conditions so warrant. *See, e.g., United States v. Scarpa*, 815 F. Supp. 88, 89 (E.D.N.Y. 1993) (releasing defendant on house arrest after concluding the detention facility was unable to meet the defendant's medical needs); *United States v. Cordero Caraballo,* 185 F. Supp. 2d 143, 146 (D.P.R. 2002) (holding

---

[9] Bick, Joseph, Infection Control in Jails and Prisons. Clinical Infectious Diseases, 45 (8): 1047-1055, available at: https://doi.org/10.1086/521910 (last accessed March 30, 2020)

[10] *See* Yong, Ed, How the Pandemic Will End, The Atlantic, https://www.theatlantic.com/health/archive/2020/03/how-will-coronavirus-end/608719/ (last accessed March 31, 2020).

[11] *See* Groups at Higher Risk for Severe Illness, Center for Disease Control, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed April 9, 2020).

that the release of a partially paraplegic defendant to be treated by family members did not pose any threat to the community).

16. And more to the point, many courts across the country have already recognized that the dangers posed by COVID-19 constitute a "compelling reason" justifying release under § 3142. *See, e.g., United States v. Tovar*, 19 CR 341, Dkt. # 42 (D. Idaho Apr. 2, 2020) (releasing defendant previously detained in presumption case after finding COVID-19 a compelling basis for release under § 3142(i)); *United States v. Meekins*, 18 CR 222, Dkt. # 75 (D.D.C. Mar. 31, 2020) (post-plea, pre-sentence release order releasing defendant with three pending assault charges due to extraordinary danger COVID-19 poses to detainees); *United States v. Davis*, 20 CR 09, Dkt. # 21 (D. Md. Mar. 30, 2020) (releasing defendant, *inter alia*, due to the "urgent priority" of protecting both the defendant and the community); *United States v. Hector*, 18 CR 002, Dkt. # 748 (W.D. Va. Mar. 27, 2020) (granting release pending sentencing after Fourth Circuit remanded detention decision requiring court to specifically consider extraordinary danger posed by COVID-19); *United States v. Kennedy*, 18 CR 20315, Dkt. # 77 (E.D. Mich. Mar. 27, 2020) (post-plea, presentence release of defendant whose pretrial release was revoked because "the COVID-19 pandemic constitutes an independent compelling reason" for temporary release and "is necessary for Defendant to prepare his pre-sentence defense"); *United States v. Mclean*, 19 CR 380, Dkt. # 21 (D.D.C. Mar. 28, 2020) ("[a]s counsel for the Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed – with one exception. That one exception – COVID-19 – however, not only rebuts the statutory presumption of dangerousness . . . but tilts the balance in favor of release"); *United States v. Michaels*, 16 CR 76, Dkt. # 1061 (C.D. Cal. Mar. 26, 2020) ("Michaels has demonstrated that the Covid-19

virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i)); *United States v. Jaffee*, 19 CR 88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun and drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement"); *United States v. Harris*, 19 CR 356 (D.D.C. Mar. 26, 2020) ("[t]he Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions"); *United States v. Perez*, 2020 WL 1329225, *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"); *United States v. Stephens*, 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("[t]he risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail").

17. Thus, counsel and Mr. Rodriguez submit that upon reconsideration, this Court should now find that a combination of conditions exist to reasonably assure his appearance at future court proceedings and the safety of the community, and further, "compelling reasons" exist under § 3142(i), and thus authorize Mr. Rodriguez's pretrial release.

## III. Conclusion

18. For the reasons set forth herein, Mr. Rodriguez has proffered sufficient evidence to not only rebut the presumption created by 18 U.S.C. § 3142(e)(3) that he poses a flight risk and

danger to the community in the event that he is released on bond while awaiting trial, and further, that compelling reasons exist justifying his release under § 3142(i). Therefore, counsel urges this Court to exercise its discretion pursuant to 18 U.S.C. § 3142 and order Mr. Rodriguez's pretrial release in accordance with the least restrictive conditions that this Court deems necessary to ensure his appearance and the safety of the community.

Respectfully submitted,

/s/ Damon M. Cheronis
**Damon M. Cheronis**

/s/Ryan J. Levitt
**Ryan J. Levitt,**
Attorneys for Defendant.

**Law Office of Damon M. Cheronis**
140 S. Dearborn Street Suite 411
Chicago, IL 60603
(312) 663-4644
damon@cheronislaw.com
ryan@cheronislaw.com

## CERTIFICATE OF SERVICE

I, Damon M. Cheronis, hereby certify that on April 15, 2020, I electronically filed the foregoing **Defendant's Motion for Review of the Magistrate's Detention Order and for Pretrial Release** with the Clerk of the U.S. District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                        s/ Damon M. Cheronis
                                        Damon M. Cheronis
                                        Law Office of Damon M. Cheronis
                                        140 S. Dearborn Street Suite 411
                                        Chicago, Illinois 60603
                                        (312) 663-4644
                                        damon@cheronislaw.com