# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) No.: 19 CR 862-1 |
| | ) Judge Robert W. Gettleman |
| TRISTAN CLANTON, | ) |
| Defendant. | ) |

## DEFENDANT CLANTON'S MOTION FOR REVOCATION OF DETENTION ORDER

**NOW COMES** the defendant, **TRISTAN CLANTON**, by and through his attorney, **ROBERT L. RASCIA**, and moves this Honorable Court, pursuant to Title 18 U.S.C. §3145(b) to enter an order revoking the order of detention entered by the Magistrate Judge Sunil R. Harjani on November 20, 2019, and to enter an order granting his release on a secured bond with conditions. In support thereof the defendant states as follows:

### I. CHARGES.

Tristan Clanton is one of five defendants charged in an eleven count indictment alleging a drug distribution conspiracy beginning no later than March 2018 and continuing until December 2018. The activity allegedly took place in Bellwood and on the Near West Side of Chicago. The investigation involved the use of confidential sources of information, surveillance by law-enforcement officers, video and audio recordings, and the execution of a search warrant which resulted in the recovery of controlled substances.

The search warrant issued by a judge of the Circuit Court of Cook County, was executed on December 7, 2018 at 924 N. Hamlin, Chicago Illinois. The search warrant commanded the search of the following:

>Male Black aka "Blue" appx 30-35 years old, 5'03" - 5'06". 160 lbs., short black hair, brown eyes.

And the premises:

>924 N. Hamlin, 3rd Fl, a brick multi-unit residence, Chicago, Cook County, Illinois 60651.

The defendant does not match this physical description, and, although he was present in the third floor unit on the date and time of the execution of the warrant along with several other individuals. He does not reside at that address. No proof of residency documents were recovered during the search indicating that the defendant was a resident of this unit.

Count One of the indictment alleges an offense which carries a mandatory minimum sentence of 10 years, and carries a minimum of 15 years as pled in Count One paragraph 4, based upon a prior felony drug conviction for Clanton. In Counts Two, Three, Five, and Six, Clanton is charged along with Randall Langston with distribution offenses in 2018, allegedly occurring on March 18, April 5, and June 6 in Bellwood, and on July 12 in Chicago. In Count Eight the defendant is charged, along with Langston, Wyatt, and Mohammed-Curtis, with possessing an unspecified amount of heroin on October 16, 2018 in Chicago. Count Eleven charges defendant, along with Wyatt, with possession with the intent to distribute the controlled substances seized as the result of the execution of a search warrant on December 7, 2018 at 924 North Hamlin, third-floor apartment, Chicago, Illinois. The search of the apartment resulted in a seizure of heroin, the laboratory test indicated a positive test for 23.3 grams of heroin and 20.3 grams of U-47700. These items were not in the actual or constructive possession of the defendant at the time of the law enforcement seizure. The indictment does not allege any acts of violence, or that a firearm was used by the defendant.

## II. PROCEEDINGS BEFORE THE HONORABLE SUNIL R. HARJANI, MAGISTRATE JUDGE.

Tristan Clanton was arrested on November 14, 2019, and he had his initial appearance before the Court that same day. A detention hearing was held on November 20, 2019 (Report of Proceeding, Exhibit 1). No live witnesses were called by either party. The government moved for detention on both 'risk of flight' and 'danger to the community'. In support of that request the government argued, in summary, that the defendant was basically overseeing a heroin distribution organization operating from at least two locations on the West Side of Chicago, deliveries of wholesale quantities of heroin in Bellwood, and that he had personally participated in the delivery of over 100 grams of fentanyl-laced heroin. The government further argued that the defendant's international travel established that he was a flight risk. The government highlighted the defendant's prior drug convictions, and a photograph of the defendant holding a firearm to establish that he is a danger to the community.

The defendant sought to rebut the presumption of detention, offering his mother's residence as security for his release, and further arguing against detention by referencing his lifelong ties to the community, his family ties, and his lack of prior violent conduct. The court granted the government's request for detention, finding that the government met its burden of proof by a preponderance of the evidence, and clear and convincing evidence, on both risk of flight and danger to the community. (Exhibit 1, Pages 23 to 30).

Defendants Wyatt, Brandon Langston, and Mohammed-Curtis were each released on recognizance bonds. Randall Langston is the subject of an outstanding arrest warrant. The defendant seeks revocation of the November 20, 2019 detention order, for the reasons outlined below.

### III. ARGUMENT IN SUPPORT OF RELEASE

Under the Bail Reform Act a Court shall order a defendant detained pending trial if no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person in the community. 18 U.S.C. §3142(e)(1). Under The Bail Reform Act ("Act") courts shall hold detention hearings in two instances: (i) when the case involves any one of the enumerated serious offenses outlined in §3142(f)(1); and (ii) when there is a serious risk that the person will flee. The charged offense here triggers application of §3142(f)(1). During the pre-trial phase the burden of proof is with the government to establish by clear and convincing evidence that there are no conditions of release that would reasonably ensure the safety of any other person or the community, and by a preponderance of the evidence as to flight, that there are no conditions that would reasonably assure the appearance of the defendant as required. §3141(f) of the act carefully limits the circumstances under which detention may be sought to the most serious of crimes. United States v. Salerno, 481 U. S. 739, 747 (1987). Stated another way, pretrial detention is "an exceptional step." United States v. Torres, 929 F. 2d 291, 292 (7th Cir. 1991)(citing Salerno, 481 U.S. at 749). Thus, under the Act pretrial release is mandated unless the court finds that regardless of any conditions or any combination of conditions, "such release will not reasonably assure the appearance of the defendant as requested or will endanger any person or the community". 18 USC §3142(b) See also §3142(e). The Act creates several evidentiary presumptions to be employed in particular circumstances in determining whether any release conditions are appropriate. The Act specifies that: subject to rebuttal by the defendant, it shall be presumed that no condition or combination of conditions will reasonably ensure the appearance of the person as required and the safety of the community if the judicial officer finds that is there is probable cause to believe

that the person committed an offense for which a minimum term of imprisonment of 10 years or more is prescribed in the controlled substance act 21 U.SC. §801 et seq. The defendant recognizes that this is now a presumption case. In making the determination as to whether the defendant is a danger to the community and/or a flight risk, the court must take into account the available information concerning the following major factors, which are specifically set forth in §3142(g) of the Act.

### A. §3142(g)(3) CLANTON HISTORY AND CHARACTERISTICS

§3142(g)(3) instructs the court to consider the defendant's character, physical and mental condition, family ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether he was subject to any other criminal justice supervision at the time of the charged offense. Tristan Clanton is 34 years old, a United States citizen, born in Melrose Park, Illinois raised in Bellwood, Illinois. Clanton lived with his mother, Angela Clanton, and her husband in a single-family residence owned by Angela Clanton. The defendant's mother is employed full time by Com Ed, her husband is employed as a truck driver. The defendant and his mother have resided at the Bellwood home for approximately 25 years. The defendant's brother lives in Naperville, Illinois. The defendant has no family members that reside outside the jurisdiction of the court. The defendant's daughter lives with her mother in Villa Park Illinois. All of the defendant's family members are United States citizens.

The defendant does not have a history of alcohol abuse, but has repeatedly used marijuana in the past. The defendant has not used any other drugs. The defendant does not have a history of mental health issues, but his current confinement and health concerns have brought on bouts of depression.

The defendant resides in the Chicagoland area, for the past 25 years in Bellwood. The defendant attended his community High School, Proviso West. The defendant's full-time residence since the age of 9 has been in Bellwood. The defendant has traveled abroad, legally, in the last 3 years for religious and social purposes only. The defendant announced to the Court at his November 20 detention hearing that his passport was "lost", but the passport is now in counsel's possession and ready to be surrendered when required. The defendant financially supports his daughter, contributing financially for her essential needs and private school tuition. The defendant maintains a committed relationship with the child's mother, but they do not reside together. The defendant maintained daily contact with his daughter and her mother prior to his incarceration in this matter.

The defendant has been employed in construction, home rehabilitation, and remodeling, obtaining job opportunities through Horton Construction, operated by a family member. The defendant has also worked independently doing residential remodeling and home rehab projects. Verification of this activity is established through receipts for the materials used in these projects. Although the defendant has earned legitimate income in the past, if he is released in this matter he will be financially supported by his mother, and will have cost free accommodations available to him. Neither Angela Clanton or her husband have any prior convictions. The defendant will have a stable home environment and family support available to him if released. The defendant's own ties to the community, family ties, and past lawful employment in the community, weigh in favor of his release on conditions. United States v. Dominguez, 783 F. 2d 702 (7th Cir. 1986).

## B. §3142(a)(4). DANGER TO COMMUNITY AND RISK OF FLIGHT

The defendant acknowledges that he is charged with a serious offense, but notes the transactions alleged are gram quantity distribution amounts, not kilogram quantities. The transactions charged involved payments in amounts, at their highest, of a few thousand dollars. The defendant was not observed to be armed with a weapon during any of the surveilled transactions, and he was not armed with a weapon at the time of his November 14, 2019 arrest. Of particular note, during the search warrant execution by law enforcement officers of the Chicago Police Department on December 7, 2018 at the claimed "drug house", 924 N. Hamlin Avenue, Chicago, Illinois, no firearms or dangerous weapons were recovered (Count Eleven). The single count of the indictment relating to firearms (Count Nine) names only Randall Langston and Muhammad-Curtis, relating to an incident which occurred on October 16, 2018, outside 920 N. Hamlin, and into 924 N. Hamlin. Multiple firearms were recovered, leading to State charges initially, and now a Count in this indictment, neither of which charged Clanton. Muhammad-Curtis, was observed running from law enforcement officers that day with a firearm, and he has been released on a recognizance bond in this case.

The charges at this stage are an accusation, 18 U.S.C. §3142(j). Additionally, the weight of the evidence against the defendant is the "least important of the various factors." United States v. Hammond, 204 F. Supp. 2d 1157, 1165 (E.D. Wis. 2002), citing United States v. Chen, 820 F. Supp. 1205 (N.D. Cal. 1992)(quoting United States v. Motamedi, 767 F. 2d 1403, 1408 (9th Cir. 1985).

A defendant cannot be detained as dangerous under §3142(e) unless a finding is made that no release conditions "will reasonably assure... the safety of the community..."

Dominguez, 783 F. 2d at 706-707 (internal quotation omitted). The nature and seriousness of the charge is only one factor to be considered under the Act. 18 U.S.C. §3142(a)(1). Here, as Magistrate Judge Harjani has ordered the release of the other defendants, the nature and seriousness of the charge clearly should not serve as the basis for the detention of Clanton.

On the issue of dangerousness, the government must point to more than the charges to justify detention. The statute requires the Government to prove by clear and convincing evidence that no condition or set of conditions will ensure the safety of the community. United States v. Chimurenga, 760 F. 2d 400 (2nd Cir. 1985); United States v. Portes, 786 F. 2d 758 (7th Cir. 1985).

The defendant acknowledges that he has a significant number of arrests in his background. A high number of the arrests, 28, are for misdemeanor offenses, 10 of which are for gram amounts of cannabis, 9 of which occurred when the defendant was 17 to 19 years old. Clanton's arrest history includes misdemeanor arrests for disorderly conduct, minor possession of alcohol, shoplifting, driving offenses, trespass, and domestic battery. The defendant has no convictions relating to an act of violence. The defendant does have two felony drug convictions, each involving a very small amount of a controlled substance. The October 21, 2009 arrest by the Chicago Police Department, 09 CR 211134, in the Circuit Court of Cook County, involved less than one gram of cocaine. The defendant was sentenced to three years in the Illinois Department of Corrections, but satisfied the sentence by participating in the Impact Incarceration Program (730 ILCS 5/5-8-1.1) based upon the recommendation of the sentencing judge. The defendant successfully completed the 120 day program.

The second drug conviction, 2013 CF 42, in Will County, involved $900 worth of a drug commonly referred to as "Molly". (Exhibits 2 & 3). The defendant was sentenced to

37 months on a Class 3 felony. Pursuant to the statutory rules for sentencing credit, 730 ILCS 5/3-6-3, the defendant was required to serve half of that sentence in custody. The 2004 arrest for a felony driving offense resulted in a sentence of 30 months probation which the defendant successfully completed. The 2008, 2009, and 2012 domestic battery charges were dismissed. (Exhibit 4).

The single arrest relating to a firearm, a 2008 arrest by the Chicago Police Department, was dismissed at the first court appearance, three weeks after the defendant's arrest. The defendant has three bond forfeiture warrants listed in his pretrial services report: 2002 (age 17); 2003 (age 18); and 2013 (age 27). In both the 2002 and 2003 matters the defendant promptly returned to the court that issued the warrant and resolved the misdemeanor cannabis cases. The defendant was sentenced to supervision for these matters, which under current Illinois law would be petty offense citations. In 12 DV 1799, a bond forfeiture warrant was issued due to the defendant's failure to appear in court on January 28, 2013. The defendant did not appear in the Du Page County court because he was in the Illinois Department of Corrections at that time serving the sentence imposed in Will County in 2013 CF 42. As referenced above, Exhibit 4 shows that this charge was dismissed.

The allegations in this indictment and counsel's review of the evidence to date do not include any acts of violence in relation to the charged conspiracy. No threats were made to collect debts and no acts of violence occurred to protect so-called "drug spots". The recorded statement of Clanton, a claimed threat to kill someone presented at the November 20, 2019 detention hearing, is nothing more than a rambling rant, made by Clanton in response to a perceived threat to his own life. The statement by Clanton occurred about 16 months before his arrest in this matter. Clanton took no action in relation to this rant and he has no reason to do so

-9-

now. The defendant was arrested by law enforcement officers of the Chicago Police Department during the search warrant execution on December 7, 2018. This arrest led to the filing of charges in the Circuit Court of Cook County under 19 CR 1399. The defendant was released on a recognizance bond in that matter and complied with all of the conditions of his release, up to his November 14, 2019 arrest in this matter. The facts underlying the charge in 19 CR 1399 are the same facts alleged in Count Eleven of this indictment. Counsel has been advised by the Assistant Cook County State's Attorney assigned to that matter (19 CR 1399), that it will be dismissed. There is no evidence to support an assertion that the defendant has continued to engage in drug trafficking after that December 2018 arrest. The defendant acknowledges that during the time period between December 2018 and November 2019 he had continued to associate with codefendant Randall Langston, but that contact was social in nature and not for the purpose of planning, promoting, or engaging in criminal activity. Additionally, the conditions of release the defendant proposes herein would not allow any contact with Langston or any defendant.

The risk of flight issue is not a basis for detention here for several reasons. The defendant has lifelong ties to this community, and no other. The defendant has a stable place to reside locally with his mother, Angela Clanton. The defendant, given his path in this case, has no reason to flee. The defendant's prior travel abroad for innocent social purposes creates no reasonable belief that he would leave this jurisdiction and not return. Living as a fugitive is an expensive and dangerous ordeal. The defendant's passport will be turned over to pretrial services by counsel, and given the current circumstances created by the COVID 19 pandemic international travel is not available to the defendant. The three prior bond forfeitures are not supportive of a claim that the defendant will not appear in this matter. In each instance the

matter was properly concluded in court. These failures to appear occurred 18 years ago, 17 years ago, and while the defendant was serving a prison sentence. Any concern raised by these missteps are far outweighed by the substantial economic loss that would be suffered if the defendant failed to appear here -- the loss of his mother's home.

The ultimate standard for the Court in a case like this remains one of "reasonable assurance" that the defendant will appear for trial and will not endanger the community. Reasonable assurance, however should not be mistaken for absolute assurance. Detention cannot be ordered merely because there are no conditions that would guarantee the defendant's appearance at trial. Portes, 786 F. 2d at 764 n.7 (7th Cir. 1985) ("The conditions need not guarantee appearance but must reasonably assure appearance.") (citing United States v. Orta, 760 F.2d 887, 891-892 (8th Cir. 1985). The mere opportunity to flee is not enough to justify detention. Chen, 820 F. Supp. at 1208. Clanton does not have the resources to live as a fugitive, and he has no ties to another place outside the jurisdiction of this Court. The possible loss of his mother's residence, and her equity of $250,000 in the property weigh heavily against flight by the defendant. The additional proposed conditions, home confinement and location monitoring are available to essentially eliminate an opportunity to flee. The current health crisis makes travel to a place outside the jurisdiction of the Court nearly impossible. Flight is just not an option available to Clanton.

### IV. PROPOSED CONDITIONS OF RELEASE

Clanton proposes the following conditions of release:

a. Secured bond in the amount of $300,000.00 secured by the residence of Angela Clanton, located in Bellwood, Illinois;

b. Forfeiture agreement executed by the defendant and surety;

c. The defendant to be placed in the custody of Angela Clanton acting as a third party custodian;

d. The defendant to reside at Angela Clanton's residence only;

e. No non-immediate family members to reside or visit the Clanton Bellwood residence.

f. Defendant to submit to supervision by pretrial services as directed;

g. Surrender passport to pretrial services;

h. Not obtain a passport or other intentional travel document;

i. Travel, only with Court approval, only within the Northern District of Illinois;

j. No contact, directly or indirectly, with any codefendant named in 19 CR 862, or any person who is or may be a victim or witness in the investigation or prosecution of this matter, by any method;

l. Not use or possess an electronic device capable of accessing the internet;

m. Not possess a firearm, destructive device, or other weapon;

n. Not use or unlawfully possess a narcotic drug or other controlled substance defined in 21 U.S.C. §802, unless prescribed by a licensed medical practitioner;

o. Not use alcohol at all;

p. Submit to testing for a prohibited substance if required by the pretrial services office or supervising officer, under any method chosen by the pretrial services office. The defendant shall not obstruct attempt to obstruct or tamper with the efficiency and accuracy of prohibited substance screening or testing;

q. Home Incarceration 24 hours a day lock-down at the Bellwood residence of Angela Clanton, except to fulfill Court ordered obligations;

r. Submit to location monitoring, with the use of an electronic device, and comply with all of the program requirements and the instructions provided.

### VII. THE COVID-19 PANDEMIC

The defendant asserts that due to the quick, widespread, and devastating effects of COVID-19 every possible consideration in favor of release should be given here. The safest place health wise for Clanton now is in his own residence where he can control the

environment, and follow the appropriate social distancing guidelines. Incarceration in any situation is a difficult mental strain weighing on the defendant. The constant fear of being in close quarters with inmates and staff is exponentially difficult. Quarantine in the jail will not stop the spread of this deadly virus.

To this point, on March 31, 2020, the White house announced that early mitigation efforts will make the difference between a minimum 100,000 to 240,000 deaths in this country and a sobering 1.5 to 2.2 million. Aamer Madhani et al, White House Projects 100,000 to 240,000 Deaths from Coronavirus, TIME (March 31, 2020), https://time.com/5813489/white-house-projects-100k-240kdeaths-coronavirus/. Since the publication of that article the situation appears more grave by the day. Dealing with a health crisis is extremely challenging for any free member of the community. Being incarcerated when a reasonable alternative is available is the only appropriate solution.

The defendant is unaware of a specific reported case at the Kendall County Jail where he is currently housed. The virus has spread in larger numbers daily in Illinois. While Kendall County is able to quarantine inmates, on a daily basis staff members, from Sheriff's officers to food service workers to maintenance staff, to name a few, will enter the jail every day after spending most of their time in a public place. The spreading of a virus in a jail environment is rapid, as has recently occurred at the Cook County Jail. According to news reports, prior to an inmate at the Cook County Jail being diagnosed with the virus, two sheriff's employees tested positive for the virus. In less than four weeks the number of positive cases at the Cook County Jail has skyrocketed, according to Sheriff Dart's latest press release, as of 5 p.m. on April 12, 2020, 306 detainees have tested positive, and 218 sheriff's office staff tested positive. (Exhibit 5).

The current health crisis has created fear and panic in the world. This fear and panic is greater when you are in jail fearing for your life. There is a safe and reasonable alternative for Clanton here, confinement at his mother's residence. As outlined above the defendant asserts that release is appropriate here, even without consideration of the COVID-19 situation. The fact that there is not currently a reported case known to counsel at Kendall County is of no consequence in deciding if release is appropriate here. Historically courts have recognized a duty to act in a health risk situation, as states in Helling v. McKinney, 509 U.S. 25, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993).

> We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year. In Hutto v. Finney, 437 U.S. 678, 682 (1978), we noted that inmates in punitive isolation were crowded into cells and that some of them had infectious maladies such as hepatitis and venereal disease. This was one of the prison conditions for which the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed. We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery. Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms.

Waiting for the defendant or any inmate to be stricken with this deadly virus is not necessary, certainly when release on conditions is available. To be clear this motion is not brought in an effort to take tactical advantage of a health crisis. The virus is only a factor to be considered. The interruption in the progress of this defendant's case, caused by Coronavirus, affected the timing of the motion, not the basis of the motion.

For the reasons stated herein the defendant respectfully requests this Honorable Court to revoke the detention order entered by Magistrate Judge Harjani on November 20, 2019, and thereafter order his release on appropriate conditions.

>Respectfully Submitted,
>
>S/Robert L. Rascia/April 4, 2019
>**ROBERT L. RASCIA, ARDC No. 6184470**
>Attorney for the Defendant
>The Law Offices of
>Robert Louis Rascia, Ltd
>650 N. Dearborn/Suite 700
>Chicago, IL 60654
>312-994-9100 Office
>312-994-9105 Fax
>rrascia@rasciadefense.com; Email