UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 18 CR 783-2 |
| | ) | |
| AHMAD NAZER, | ) | The Honorable Andrea R. Wood |

## DEFENDANT'S MOTION FOR REDUCTION OF
## SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Defendant Mr. Ahmad Nazer, through his attorney, Purav Bhatt, respectfully moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for a reduction of sentence to time served, with additional supervised release of two and one-half years, with the first six months to be served on home confinement, as that term is defined in 34 U.S.C. § 60541(g)(5)(B).

1. ***Procedural History***: At sentencing on March 9, 2020, this Court ordered Defendant to serve a sentence of six months, followed by two years of supervised release. *Judgment,* R.35, entered March 30, 2020. As of the date of this filing, Defendant has not been designated to a facility by the Bureau of Prisons.

2. ***Summary:*** Defendant asks the Court to sentence him to time served, but to increase his supervised release term by six months, those six months to be served on home confinement. This structure is the necessary route to what Defendant seeks: that he be sentenced to home confinement instead of imprisonment. The basis for Defendant's request is the exceptional circumstances that have arisen from the coronavirus pandemic, and the need for him to provide care for his children while his wife – the children's mother – is called upon as a frontline healthcare worker to render extraordinary service over the coming months to fight the pandemic.

1

3. *Facts:* Defendant's wife of 16 years, Noor Nazer, is a computer network engineer at AMITA Health. As such, she provides critical network support for medical information systems used in all aspects of AMITA's healthcare services. She in not able to work from home for most of her employment functions, and she is on call to respond to network emergencies. Such emergencies can cripple hospital functions, including those in the intensive care units and emergency rooms.

4. To be sure, there was growing concern about the coronavirus in this country as of March 9, the day Defendant was sentenced. No one involved in this proceeding foresaw, however, that two days later, the World Health Organization would declare the coronavirus outbreak a global pandemic,[1] and two days after that – on March 13, 2020 – the President would declare a national emergency pursuant to the *National Emergencies Act*, Pub.L. 94-412, 90 Stat. 1255 (Sept. 14, 1976) because of the spread of COVID-19.[2] A week after that, the President issued an executive order imposing the Defense Production Act of 1950, Pub.L. 81-774, 64 Stat. 798 (Sept. 8, 1950), which permits the federal government to impose control over private-sector industry to ensure the production of material that is deemed necessary for national defense, public health or safety. *See* Savage, *How the Defense Production Act Could Yield More Masks, Ventilators and Tests* (New York Times, Mar. 20, 2020).[3] As of the date of Defendant's sentencing, the United States had 213

---

[1] Time, *World Health Organization Declares COVID-19 a 'Pandemic.' Here's What That Means* (March 11, 2020). At https://time.com/5791661/who-coronavirus-pandemic-declaration/ (last visited April 3, 2020).

[2] CNN, *Trump declares national emergency -- and denies responsibility for coronavirus testing failures* (Mar. 13, 2020). At https://www.cnn.com/2020/03/13/politics/donald-trump-emergency/index.html (last visited April 3, 2020).

COVID-19 cases. A week later (March 16), the number had jumped to 1,700. A week after that (March 23), the number was 31,600. On March 30, the number stood at 122,700. On April 14, it had climbed to 554,849.[4] In other words, more new COVID-19 cases are currently being reported *every 15 minutes* than existed in the United States on the day of Defendant's sentencing. *Id.* Estimates place the ultimate number of U.S. cases in the "millions."[5]

5. As of April 2, 2020, the Chicago area reported 3,427 COVID-19 cases, with 43 deaths.[6] By April 13, that number had just about tripled to 9,113. In fact, the number of new cases reported in Illinois on April 12 was the largest one-day increase since the pandemic began.[7] Some experts are warning that the pandemic will last much longer than is anticipated, at least through the end of May and probably into the summer.[8] Once the state hits peak, another month or more will be required to drop to the levels extant when the stay-at-home orders were issued.[9] Ms. Nazer

---

[3] Found at https://www.nytimes.com/2020/03/20/us/politics/defense-production-act-virus.html (last visited April 3, 2020).

[4] Statisca, *Cumulative cases of COVID-19 in the U.S. from January 22 to April 2, 2020, by day* (April 14, 2020). At https://www.statista.com/statistics/1103185/cumulative-coronavirus-covid19-cases-number-us-by-day/ (last visited April 14, 2020)

[5] The MITRE Corporation, Stopping Covid-19: Short-Term Actions for Long-Term Impact (Mar. 2020). Found at https://www.mitre.org/sites/default/files/publications/COVID-19_MITRE_Action_Paper_March-2020.pdf (last visited April 3, 2020)

[6] City of Chicago, *COVID-19 Morbidity and Mortality by Geography* (April 3, 2020, and April 14, 2020). At https://www.chicago.gov/city/en/sites/covid-19/home/latest-data.html (visited April 3, 2020, and April 14, 2020).

[7] San Francisco Chronicle, *Pritzker hopes Illinois COVID-19 numbers are leveling off* (April 12, 2020). At https://www.sfchronicle.com/news/article/Pritzker-hopes-Illinois-COVID-19-numbers-are-15195755.php (last visited April 14, 2020).

[8] STAT, *Americans are underestimating how long coronavirus disruptions will last, health experts say* (April 3, 2020). At https://www.statnews.com/2020/04/03/americans-are-underestimating-how-long-coronavirus-disruptions-will-last-health-experts-say/ (last visited April 3, 2020).

[9] Politico Illinois Playbook, 'Cautiously Optimistic' On Covid-19 — Daleys Dial In For Easter — Demolition Prompts Call For Probe (Apr. 13). At https://www.politico.com/newsletters/illinois-playbook/2020/04/13/cautiously-optimistic-on-

reports that she is on call at any time, and will in the next several months be expected to work much longer hours – and hours that are irregular – in order to keep hospital IT systems functioning as emergency room and ICU facilities are temporarily expanded to handle the influx of COVID-19 patients.

6. As the Court is aware, Defendant and his wife have three daughters, ages 11, 9 and 6. All are in school, and all have been home since Chicago schools closed on March 13, 2020. It is very uncertain that school will reopen this school year,[10] meaning that the daughters will be home until September at least. The daughters are currently studying online, an activity that requires even more parental supervision and participation than if they were merely at home on vacation. The Nazers have no relatives in the area except for Ms. Nazer's elderly parents. Her father has Alzheimer's disease, and her mother devotes all of her time to caring for him. They are not available to provide any supervision to the daughters.

7. Ms. Nazer has "'always' worked long hours at work and that as a result, the defendant 'has done everything for them' and has been a significant presence in their daughter's lives." *Presentence Report* at ¶ 42. The *Presentence Report* addressed how the Nazers tailored their schedules when he daughters were spending the workday in school. *Id.* at ¶ 43. With schools being closed, Defendant is devoting 8-10 hours daily to direct parenting in order to ensure the daughters are completing their schoolwork.

---

covid-19-daleys-dial-in-for-easter-demolition-prompts-call-for-probe-488882 (last visited Apr. 14, 2020).

[10] WMAQ-TV, *Pritzker Predicts Coronavirus Peak. What Will That Mean for Illinois Schools?* (April 3, 2020). At https://www.nbcchicago.com/news/local/pritzker-predicts-coronavirus-peak-what-will-that-mean-for-illinois-schools/2249756/ (last visited April 3, 2020).

4

8. At sentencing, the Probation Officer recommended that Defendant be sentenced to a term of probation. This recommendation was based on the Officer's observation that Defendant had fully cooperated with authorities, been compliant with the terms of release, and had no criminal history. The Officer concluded that "the need for specific deterrence is likely minimal" and, given that Defendant's brother apparently had not been prosecuted in Jordan, "the need to avoid sentencing disparity is of little consideration at this point in time." *Disclosure of Sentencing Recommendation,* R. --, February 3, 2020, at p. 4. The Probation Officer also noted Defendant's minor role in the offense, his motivation in committing the offense, and his limited financial gain.

9. ***Standards Applicable to Sentence Reduction:*** As amended by § 603(d) of the *First Step Act*, Pub. L. No. 115-391, 132 Stat. 5194 (2018), subsection (c)(1)(A)(i) of Title 18 now provides that

> The court may not modify a term of imprisonment once it has been imposed except that —
>
> (1) in any case —
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction…

10. Congress directed the United States Sentencing Commission to adopt a policy statement to guide a district court's discretion in determining when "extraordinary and compelling reasons" exist to grant a reduction in sentence. *Mohrbacher v. Ponce*, Case No. 18-cr-00513

(C.D.Cal., July 26, 2018) 2018 U.S. Dist. LEXIS 218929, *18. In response, the Commission promulgated U.S.S.G. §1B1.13, which provides in relevant part[11] that "the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that

> (1)     (A) extraordinary and compelling reasons warrant the reduction...[;]
> (2)     the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3)     the reduction is consistent with this policy statement.

The Guideline commentary explains in detail what medical, aging or family factors may constitute extraordinary and compelling circumstances, including that

> (subdivision A) "[t]he defendant is suffering from a serious physical or medical condition… that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover; or (subdivision D) that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivision[] (A)…

.

*Id.* at comment. (p.s.) n.1. The Guideline commentary provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." *Id.* at n.2.

---

[11]     Due to a current lack of quorum, the Sentencing Commission is unable to amend the Guidelines. U.S.S.G. §1B1.13 includes the proscription that the motion for sentence reduction must be brought by the Bureau of Prisons, but because that language is plainly contrary to the statute as amended by §102(b)(1)(A) of the *Act*, that is omitted.

11. The Guideline, written in the days when a *sine qua non* of judicial grant of the motion was that the BOP file it, nevertheless directs that the district court exercise its *de novo* judgment on the motion:

> The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

*Id.* at comment. (p.s.), n.4.

12. The BOP has developed its own criteria for grant of compassionate release, and those largely track the Sentencing Commission's policy statement in § 1B1.13. Section 571.60 of 28 CFR provides that "[u]nder 18 U.S.C. 3582(c)(1)(A), a sentencing court, on motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment of an inmate sentenced under the *Comprehensive Crime Control Act of 1984*... The Bureau uses... 18 U.S.C. 3582(c)(1)(A) in particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing."

13. Nothing in 18 U.S.C. § 3582(c)(1)(A)(i) requires that a defendant be in BOP custody as a condition to reliance on it for reduction of sentence. *See, e.g., United States v. Gonzalez*, Case No. 2:18-CR-0232 (E.D.Wash. Mar. 31, 2020) 2020 U.S. Dist. LEXIS 56422 at *1-3 (movant had been sentenced but not yet designated to BOP facility, but nevertheless was entitled to a sentence reduction under § 3582(c)(1)(A)(i)).

14. **Exhaustion of Remedies:** Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be strictly enforced." *United States v. Monzon*, Case No. 99 Cr. 157 (S.D.N.Y. Feb. 4, 2020), 2020 U.S. Dist. LEXIS 20566 at *4, 2020 WL 550220 at *2 (citing *Theodoropoulos v. I.N.S.,* 358 F.3d 162, 172 (2d Cir. 2004). The Court may waive that

7

requirement only if one of the recognized exceptions to exhaustion applies." Even where exhaustion is seemingly mandated by statute... the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146-47 (1992)).[12] The exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) is not jurisdictional. *United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015) ("§ 3582 is not part of a jurisdictional portion of the criminal code" and is not "phrased in jurisdictional terms").

15. There are several circumstances where failure to exhaust a non-jurisdictional administrative exhaustion remedy may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Id.; see also Kawitt v. United States*, 842 F.2d 951, 953 (7th Cir. 1988) (requirement of exhausting administrative remedies is waived if resort to those remedies would be futile). Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Washington, supra* at 925 F.3d 119. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id. See also Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 606 (5th Cir. 2007).[13]

---

[12] *See Gulf Restoration Network, Inc. v. Salazar*, 683 F.3d 158, 175 (5th Cir. 2012), quoting *Rafeedie v. I.N.S.*, 880 F.2d 506, 526 (D.C. Cir. 1989) (Ginsburg, J., concurring) ("[A] statutory exhaustion requirement, unless Congress explicitly declares otherwise, does not impose an absolute, unwaivable limitation on judicial review; instead, it sets a condition that may be excused when insistence on exhaustion would threaten grave harm to the party seeking review and would not sensibly serve the purposes Congress envisioned in establishing that condition. In other words, a statutory exhaustion requirement ordinarily functions as a tighter restraint than the judge-made rule, but is not an utterly unbreachable barrier."

[13] Traditional circumstances in which courts have excused a claimant's failure to exhaust administrative remedies include situations in which (1) the unexhausted administrative remedy would be plainly inadequate, (2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy, (3) the adequacy of the administrative remedy is essentially coextensive with the merits of the claim (e.g., the claimant

16. However, Defendant need not be excused from exhausting remedies here. Rather, he should be held to have exhausted all of the remedies available to him. Section 3582(c)(1)(A) directs that a defendant may file the motion with the court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier…" But the only administrative rights to appeal a failure of the BOP is set out in 28 CFR Part 542. As described in 28 CFR § 542.10(b), the administrative remedy "applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement." Because Defendant is not among those who are "inmates in institutions operated by the Bureau of Prisons" or CCCs or even a former inmate, there is no administrative remedy whatsoever available to him.

17. Thus, in the most literal sense, Defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons…" for the simple fact that there are *no* such remedies where the complainant is not yet an inmate. *Compare Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858, 195 L.Ed.2d 117, 126 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones"). Evidence of that comes from the fact that when specifically asked about who would entertain an administrative complaint, the BOP twice failed to provide any guidance to counsel.[14]

---

contends that the administrative process itself is unlawful), and (4) exhaustion of administrative remedies would be futile because the administrative agency will clearly reject the claim… In addition, exhaustion may be excused when (5) irreparable injury will result absent immediate judicial review. *Id, citing Taylor v. US Treasury,* 127 F.3d 470, 477 (5th Cir. 1997); *Rhodes v. United States*, 574 F.2d 1179, 1181 (5th Cir. 1978).

18. Courts may excuse the failure to exhaust BOP administrative remedies under § 3582(c)(1)(A)(i) where the defendant has not been designated to a BOP institution, and thus has no warden to whom a request for recommendation may be addressed. *See Gonzalez*, *supra* at 2020 U.S. Dist. LEXIS 56422,*4 (where BOP employee told § 3582(c)(1)(A)(i) movant that because she was not designated, she should contact the court directly, court deemed administrative remedies exhausted). Also, courts may dispense with the administrative exhaustion requirement where, as here, there are "exceptional circumstances of peculiar urgency… " *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993) (quoting *Granberry v. Greer*, 481 U.S. 129, 134 [1987]). In the context of motions brought pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), courts have recognized that the exhaustion of administrative remedies can be waived when seeking relief will be futile. *See, e.g., Miller v. United States*, Case No. 16-20222 9 E.D. Mich. Apr. 9, 2020) 2020 U.S. Dist. LEXIS 62421, at *6-8 (even if government was correct that remedies were unexhausted, exhaustion was excused where BOP stance was clear and movant would be prejudiced by further delay due to rapid spread of COVID-19, citing *Gonzalez, supra*); *Thody v. Swain*, Case No. 19-cv-09641 (C.D. Cal Nov. 26, 2019) 2019 U.S. Dist. LEXIS 226582 at *5 , 2019 WL 7842560 at *2 ("A district court may, in its discretion, excuse the failure to exhaust if exhaustion would be futile," but finding the petitioners "conclusory allegations" to be insufficient to establish futility); *Merth v. Puentes*, Case No.1:19-cv-00251 (C.D. Cal July 10, 2019), 2019 U.S. Dist. LEXIS 114799, at *7, 2019 WL 3003684 at *3 (Where respondent warden lacked "the authority to grant

---

[14] The BOP administrative remedy process requires first that the inmate seek informal resolution with BOP staff (28 CFR § 542.13[a]) followed by submission on a form obtained from "institutional staff (ordinarily, the correctional counselor)." 28 CFR 542.14(c)(1). In this case, Defendant has no contact with BOP staff, no institution to which he is assigned, and no correctional counselor.

any provision of the First Step Act without guidance from the Bureau of Prisons' …. pursuing administrative remedies would have been futile. Accordingly, exhaustion can be waived"); *United States v. Perez*, Case No. 17 Cr. 513-3 (AT) (S.D.N.Y. April 1, 2020) 2020 U.S. Dist. LEXIS 57265 at *4 (Exhaustion of administrative remedies waived "in light of the extraordinary threat posed - in his unique circumstances - by the COVID-19 pandemic").[15]

19. Two of these exceptions are especially apt here. First, Defendant has no warden at the BOP to whom a request may be addressed. Nevertheless, undersigned counsel contacted the Federal Bureau of Prisons by telephone on two occasions during the week beginning Monday, April 6, 2020, asking for guidance as to whom to direct Defendant's request for the BOP to move for sentence reduction. Despite repeated attempts, undersigned counsel never received a response from the Bureau of Prisons. Thus, as was the case with the petitioners in *Merth, Gonzalez* and *Miller* imposing a requirement that Defendant exhaust his remedies – when Defendant is unable to find anyone with whom to exhaust such remedies – would be futile.

---

[15] *See also* 28 U.S.C. § 2254(b) (authorizing application for writ of habeas corpus in the absence of exhaustion of state remedies where "circumstances exist that render such process ineffective to protect the rights of the applicant."); *Garza v. Davis*, 596 F.3d 1198, 1203-04 (10th Cir. 2010) (recognizing a futility exception to the exhaustion requirement in 28 U.S.C § 2241 where the defendant sought his placement in a lower-security facility such as a community corrections center or a halfway house); *Woodall v. BOP*, 432 F.3d 235, 239 n.2 (3d Cir. 2005) ("[E]xhaustion would be futile, given that Woodall is not challenging the application of the BOP regulations, but their validity."); *Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004) (same); *Boucher v. Lamanna*, 90 F. Supp. 2d 883, 887 (N.D. Ohio 2000) (concluding that exhaustion of administrative remedies would be futile where the BOP's policy on categorizing the prisoner's offense as a violent crime was mandatory, the issue was a legal one that the BOP had consistently defended, and the potential for immediate release counseled timely consideration of the petitioner's case); *Fletcher v. Menard Correctional Center*, 623 F.3d 1171, 1174 (7th Cir. 2010) ("If it takes two weeks to exhaust a complaint that the complainant is in danger of being killed tomorrow, there is no 'possibility of some relief' and so nothing for the prisoner to exhaust").

20. Second, a pandemic unseen in our lifetimes (and perhaps in our history, it being qualitatively and perhaps quantitatively different that the 1918 Spanish flu pandemic). Requiring Defendant to await designation and then to petition the warden, waiting up to 30 days for what may be a recommendation for or against sentence reduction, or may perhaps be no recommendation at all, creates uncertainty for Defendant's family during a time of national emergency, and all for no discernable benefit.

21. "[T]he policies favoring exhaustion are most strongly implicated" by challenges to the application of existing regulations to particular individuals. *Pavano v. Shalala*, 95 F.3d 147, 150 (2ᵈ Cir. 1996). Ordinarily, requests for a sentence reduction under § 3582(c) would fall squarely into that category. But "courts should be flexible in determining whether exhaustion should be excused," *id.* at 151, and "[t]he ultimate decision of whether to waive exhaustion... should also be guided by the policies underlying the exhaustion requirement." *Bowen*, *supra* at 476 U.S. 484. Here, the policies favor permitting the agency having custody of the defendant to comment on his post-sentence conduct, and to reflect generally on the extraordinary nature and compelling nature of the circumstances he advances to support his motion for sentence reduction. But here, Defendant has not even been designated by the BOP, Thus, it has no useful information to contribute on Defendant's security and custody levels, his PATTERN[16] score or institutional

---

[16] The PATTERN recidivism and needs assessment system is found at https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf (last visited April 3, 2020). Modified and adopted in final form on January 15, 2020, and found at https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf. (last visited April 3, 2020).

adjustment.[17] Thus, the jurisprudential requirement for administrative exhaustion set out in 18 U.S.C. § 3582(c)(1)(A) should be excused as futile.

22.     ***Basis for Request***:     This request is extraordinary – as it should be – inasmuch as it turns on the commonweal, focusing on the public need for Ms. Nazer's healthcare support services during the pandemic and the needs of their daughters for care and supervision. This Court is familiar with the particulars of Defendant's offense, assisting his brother in shipping commercially-available firearms parts overseas in violation of munitions export laws, and his role in concealing the identity of those parts. The Court also is aware that the offense conduct ended six years ago, and that Defendant has engaged in no other criminal conduct before or since. There were no identifiable victims of the offense.

23.     Defendant has requested that the Court grant him incarceration of time-served, followed by an additional supervised release term of six months tacked on to the current two years of supervised release. That six months would be served on home confinement. Defendant suggests this because some courts have observed that courts lack the authority to modify the method of imprisonment during a term of incarceration. *See e.g. United States v. Perez-Asencio,* Case No. 18-CR-3611-H (S.D. Cal. Feb. 14, 2019) 2019 U.S. Dist. LEXIS 24430, at *7-8, 2019 WL 626175 ("§ 3582(c)(1)(B) only 'permits courts to modify an imposed term of imprisonment, not the method of incarceration'").

---

[17]     The purpose of the 18 U.S.C. § 3582(c)(1)(A) exhaustion requirement "is to allow the BOP time to consider and act upon requests before necessitating court intervention." *United States v. Stone*, Case No. 3:17-cr-0055 (S.D. Iowa, Oct. 22, 2019), 2019 U.S. Dist. LEXIS 182081, at *19-21, *citing United States v. Spears*, Case No. 3:98-cr-208 (D.Ore., Oct. 15, 2019) 2019 U.S. Dist. LEXIS 177991, 2019 WL 5190877, at *3. This purpose underscores the futility of requiring exhaustion in this case, where the BOP is no better informed about Defendant and his request than any man or woman on the street.

24.     ***Extraordinary and Compelling Reasons for Grant:*** The COVID-19 pandemic is clearly an extraordinary event in our lifetime, the severity and omnipresence of which was unforeseen even at the sentencing on March 9, 2020. The need for healthcare workers to be available for long hours and at a moment's call is unquestioned.[18] Ms. Nazer's availability to maintain the IT infrastructure for AMITA Health is completely compromised by the lack of any care for the children, homebound and studying online for the foreseeable future.

25.     There is no reasonable alternative but to permit Defendant to serve his sentence on home confinement, where he can contribute by caring for the children.  Defendant's minimal likelihood of recidivism means that conversion of his sentence to home confinement would neither endanger the community nor minimize the severity of the underlying offense. That he is not a danger to the community is well established by his conduct for the six years since the offense was committed, and in his discharge of the trust placed in him by the court in his conduct on pretrial release.

---

[18]     ABC News, *Call for virus volunteers yields army of health care workers* (April 1, 2020). At https://abcnews.go.com/US/wireStory/call-virus-volunteers-yields-army-health-care-workers-69920370 (last visited April 3, 2020).

WHEREFORE, this *Motion* should be granted, and Defendant should be resentenced to no sentence of incarceration, and a sentence of 2.5 years of supervised release, with the first six months served on home confinement.

Respectfully submitted,

_/s/ Purav Bhatt_____
Purav Bhatt
The Law Office of Purav Bhatt
1655 S Blue Island Ave, #312
Chicago, Il 60608
P: (773) 791-9682
F: (312) 577-0649
pbhatt@bhattlaw.com

## **CERTIFICATE OF SERVICE**

    I, **PURAV BHATT,** depose and state that I have served a copy of the **DEFENDANT'S MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. §3582(c)(1)(A)(i)** to U.S. Attorney, Assistant United States Attorneys, VIA ELECTRONIC FILING on this 16th day of April, 2020.

Respectfully Submitted,

/s/ Purav Bhatt
1655 S. Blue Island Ave, Suite 312
Chicago, Il 60608
773-791-9682
pbhatt@bhattlaw.com