# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **No. 17 CR 509/20 CV 01792** |
| **Plaintiff** | ) | |
| v. | ) | |
| | ) | |
| **PEDRO SAAVEDRA-FITZ** | ) | |
| | ) | **Judge Andrea Wood** |
| **Defendant** | ) | |

### EMERGENCY MOTION FOR BAIL PENDEING SENTENCING

Defendant Pedro Saavedra-Fitz, by his attorney, Michael B. Nash, respectfully requests that this Court grant him bail pending his sentencing. Per the General Order of this Court the sentencing has been continued indefinitely. PSR and the government state his guideline range is 57- 71 months, after his safety valve proffer. The PSR recommends a sentence of 57 months, whereas the government requests a sentence within the guidelines. He has been in custody since June 2018. Counsel would suggest that the government or the United States Probation Office fax the PSR to the Court for its consideration. Counsel cannot fax from his home office.

The facts are undisputed. "For approximately six months in 2015, defendant worked with his co-defendants, Aurelio Abrego and Jose Miguel Perez, to distribute heroin in Chicago." R. 268, G. Sent. Memo, p. 1. He was indicted for brokering the sale of a kilo of heroin between Abrego and a man named "Pollo" for which "Defendant expected to receive approximately $200-$3000 as payment." R. 268, G sent memo, p. 2.

In June 2018 prior counsel filed a motion for bail which was denied. Since then defendant has made a safety valve proffer, entered into a plea agreement and pleaded guilty. At

1

the time of the prior bail motion, defendant was subject to a minimum mandatory sentence of 10 years, which, given the successful safety valve proffer, is no longer the case. Previously there was a presumption in favor of detention and now there is not. This is a changed circumstance. The COVID-19 Pandemic created a second changed circumstance. These changes merit release under 18 U.S.C. § 3142(c).

As of April 15, 2020, COVID-19 has infected over 1.9 million people and caused at least 127,518 deaths worldwide.[1] On March 11, 2020, the World Health Organization officially classified COVID-19 a pandemic.[2] President Trump declared a national emergency on March 13, 2020.[3] Governor Pritzker issued a disaster proclamation for the state of Illinois on March 9, 2020[4], and issued a stay-at-home order on March 20, 2020, lasting until at least April 30, 2020,[5].and has now extended it thru May. As of April 15, 2020, there are 23,247 positive cases and 868 deaths in Illinois.[6]

---

1 *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (April 7, 2020), *at* https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html?action=click&module=Top%20Stories&pgtype=Homepage
2 *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
3 Live updates: President Trump declares a national emergency in response to coronavirus, Washington Post (March 13, 2020) https://www.washingtonpost.com/world/2020/03/13/coronavirus-latest-news/
4 *Pritzker declares state of emergency for COVID-19*, The State Journal-Register (March 9, 2020) *at* https://www.sj-r.com/news/20200309/pritzker-declares-state-of-emergency-for-covid-19
5 Executive Order 2020-10, March 20, 2020, at: https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-10.aspx
6 *Coronavirus Disease 2019 (COVID-19)*, Illinois Department of Public Health (April 15, 2020) *at* http://dph.illinois.gov/topics-services/diseases-and-conditions/diseases-a-z-list/coronavirus (updating regularly).

Jails create the ideal environment for the transmission of contagious diseases.[7] Inmates, "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[8] On April 14, 2020, 446 inmates and 248 staff members within the BOP have tested positive for the disease, and 14 inmates have died.[9] By the next day there were 54 more cases among inmates, 50 more cases among staff and 3 more deaths. These are the BOP figures. Over the last three weeks, and in spite of various precautionary measures the BOP has undertaken, the number of positive cases has risen considerably.[10]

Corey Trammel, a union representative for correctional officers at FCI Oakdale commented, "It's been simultaneous, just people getting sick back to back to back to back. We don't know how to protect ourselves. Staff are working 36-hour shifts — there's no way we can keep going on like this."[11] The risk of COVID-19 reaching the Chicago MCC is no longer speculative. On Wednesday morning, Amy Standefer-Malott, notified the court and the Federal Defender's Office that there are six inmates currently at MCC who have been infected and 3 staff.

---

7 Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

8 "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.
9 Bureau of Prisons, COVID-19 Resource Page, available at: https://www.bop.gov/coronavirus/ (updating regularly).
10 Objection to Time-Sensitive Supplemental Brief in Support of Compassionate Release, *United States v. Esparza*, No. 1:07-cr-294-BLW, Dkt. No. 121 (D. Idaho Mar. 24, 2020)(noting 3 BOP inmates and 3 staff members had tested positive for COVID-19)
11 Kimberly Kindy, The Washington Post, An explosion of coronavirus cases cripples a federal prison in Louisiana (March 29, 2020), available at: https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html (last checked March 31, 2020).

One inmate was reported to be in precarious shape, while the others were described as "recovering." If five inmates are recovering from a COVID-19 infection, this means that they have been infected for some time, meaning that for at least a week those inmates likely infected others. This, despite the supposed "strict health and safety protocols" allegedly implemented by the MCC. It is no longer a question of when COVID-19 will infect the inmate population at the MCC, but how bad it will be.

The Courts across the country have found that the COVID-19 pandemic is a "changed circumstance." In *United States v. McClean* the district court released a defendant in a *presumption* case solely based on the risks posed to him by COVID-19. The Court wrote, "COVID-19 … tilts the balance in favor of release." No. 19-cr-380 (D.D.C. Mar. 28, 2020). In *United States v. Kennedy*, the district court released a defendant post-plea & pre-sentence – a defendant whose pretrial release had previously been revoked – after finding that "the COVID-19 pandemic constitutes an independent compelling reason" for temporary release." No. 5:18-cr-20315, Dkt. No. 77 (E.D. Mich. Mar. 27, 2020).

Other courts – both in hotspots and elsewhere in the country – speak with the same urgent voice. *United States v. Davis*, No. 1:20-cr-9-ELH, Dkt. No. 21 (D. Md. Mar. 30, 2020) (releasing defendant due to the "urgent priority" of decarcerating, to protect both the defendant and the community, and to preserve Sixth Amendment rights in this perilous time); *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun & drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement"); *United States v. Michaels*, 8:16-cr-76-JVS, Minute Order, Dkt.

4

1061 (C.D. Cal. Mar. 26, 2020) ("Michaels has demonstrated that the Covid-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i).); *United States v. Harris*, No. 19-cr-356 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinements.")

As a detainee at the MCC, an institution with confirmed cases of COVID-19, Mr. Saavedra-Fitz cannot protect himself from the disease. The COVID-19 threat have occasioned stay at home orders in effect in most states, resulted in closed businesses and over 20 million Americans suddenly applying for unemployment compensation. The spring semester for colleges, high schools, grammar and preschools have adjourned. The college and professional basketball seasons ended abruptly. Baseball, scheduled to begin on March 29, has been postponed indefinitely. The Kentucky Derby, Indianapolis 500, Masters Golf tournament have been postponed. Congress has given the Bureau of Prisons and courts the authority to "modify" sentences long after their due date if "extraordinary and compelling reasons warrant." 18 USC 3582(c). Giving a first time offender, whose guideline sentence is projected to be 57 – 71 months and who has already served 22 months, bail pending his sentencing is reasonable, and in this pandemic, prudent.

Mr. Saavedra-Fitz is a 31 year old citizen who, if released will live with his sister Segura Antonia at 4343 N. Monticello Ave., Chicago. Ms. Segura lives there with her husband and four children. After he self-quarantines for 14 days, he will work in for his mother who has an ongoing business and then relocate to his mother's house. In the meantime he will be supported by his mother.

Respectfully submitted,

                                        ____s/_____
                                        Michael B. Nash


Michael B. Nash
650 N. Dearborn
Suite 700
Chicago, IL  60654
(312) 420 8788


## CERTIFICATE OF SERVICE

I served on opposing counsel this motion in accordance with the court electronic system.

                                        Respectfully submitted,

                                        **_____s/  Michael B. Nash**

**Michael B. Nash**