IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 17 CR 802<br>Hon. Ronald A. Guzman |
| FRANCISCO RODRIGUEZ, | Case No. 20 CV 1792<br>Emergency Judge Rebecca R. Pallmeyer |
| Defendant. | |

## EMERGENCY MOTION FOR PRETRIAL RELEASE PURSUANT TO 18 U.S.C. §3142

Defendant, FRANCISCO RODRIGUEZ, by his attorney, HOLLY N. BLAINE, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. §3142; *United States v. Salerno*, 481 U.S. 739 (1987); and *United States v. Dominguez*, 783 F.2d 702 (7th Cir. 1986). While Mr. Rodriguez' previous bond motion was denied[1], the COVID-19 pandemic constitutes "changed circumstances" that, combined with other factors, warrant Mr. Rodriguez's release on bond with strict conditions. At the very least, because of the explosion of COVID-19 cases within correctional institutions, Mr. Rodriguez should be granted "temporary release" under 18 U.S.C. § 3142(i) until the pandemic has subsided.

I. **The COVID-19 Pandemic is a Changed Circumstance that Warrants Release under 18 U.S.C. § 3142(c), and, independently, is a Compelling Reason for Ordering Temporary Release under 18 U.S.C. § 3142(i)**

   a. *Background on COVID-19 Outbreak*

---

[1] Ruling on the detention hearing can be found at Case No. 17 CR 802, Dkt. 11. Counsel did not represent Mr. Rodriguez during this hearing, and has ordered, but has not yet received, transcripts of these oral rulings. Counsel has filed this motion before receiving these transcripts because of the urgent nature of the relief requested in light of the COVID-19 pandemic.

As of April 20, 2020, the new strain of coronavirus which causes COVID-19, has infected over 2.3 million people and caused at least 160,979 deaths worldwide.[2] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[3] President Trump declared a national emergency on March 13, 2020.[4] Governor Pritzker issued a disaster proclamation for the state of Illinois on March 9, 2020[5], and issued an stay-at-home order on March 20, 2020, lasting until at least April 30, 2020[6], and it now appears likely that the stay-at-home order will be extended. As of April 19, 2020, there are 30,357 positive cases and 1,290 deaths in Illinois.[7]

### b. *Conditions of Confinement and Spread of Coronavirus*

Conditions of pretrial confinement create the ideal environment for the transmission of contagious diseases.[8] Inmates cycle in and out of BOP pretrial facilities from all over the world and the country, and people who work in the

---

[2] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (April 7, 2020), *at* https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html?action=click&module=Top%20Stories&pgtype=Homepage
[3] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
[4] Live updates: President Trump declares a national emergency in response to coronavirus, Washington Post (March 13, 2020) https://www.washingtonpost.com/world/2020/03/13/coronavirus-latest-news/
[5] *Pritzker declares state of emergency for COVID-19*, The State Journal-Register (March 9, 2020) *at* https://www.sj-r.com/news/20200309/pritzker-declares-state-of-emergency-for-covid-19
[6] Executive Order 2020-10, March 20, 2020, at: https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-10.aspx
[7] *Coronavirus Disease 2019 (COVID-19)*, Illinois Department of Public Health (April 15, 2020) *at* http://dph.illinois.gov/topics-services/diseases-and-conditions/diseases-a-z-list/coronavirus (updating regularly).
[8] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

facilities leave and return daily.  According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[9] Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[10]  Recent outbreaks of mumps in facilities in Texas and New Jersey have demonstrated how quickly institutions can be overrun with disease, especially when the viruses have long incubation times, because inmates and guards cannot maintain sufficient space to practice social distancing, and may have contact with high numbers of other people in the facilities.[11]

More recently, prisons and jails across the U.S. are reporting exploding outbreaks of COVID-19.  Ohio presents an enlightening demonstration in transmission of contagious diseases in correctional settings.  Ohio's governor issued a stay-at-home order on March 22, 2020.  As of April 19, 2020, the state recorded 11,602 cases state-wide, with almost 2,500 cases of COVID-19 in the inmate

---

[9] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

[10] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY; *Health Care Behind Bars Is Already Abysmal. Are Prison Officials Prepared for the Coronavirus?*, Mother Jones (March 4, 2020) https://www.motherjones.com/crime-justice/2020/03/health-care-behind-bars-is-already-abysmal-are-prison-officials-prepared-for-the-coronavirus/

[11] *300 inmates in Texas' Harris County jail are quarantined over a mumps outbreak*, CNN Health (June 13, 2019) https://www.cnn.com/2019/06/13/health/mumps-texas-harris-county-jail/index.html; *6 inmates at a New Jersey jail came down with the mumps. The entire facility is now quarantined*, CNN Health, (June 13, 2019) https://www.cnn.com/2019/06/12/us/mumps-jersey-bergen-county-jail-trnd/index.html

populations housed in its correctional institutions. This number represents 21% of all the cases reported in the state. Marion Correctional Institution alone has 1,828 infected inmates – **73% of the prison's population**.[12] Similarly, Rikers Island in New York City is in the midst of a massive outbreak of COVID-19. On March 30, 2020, the jail's top doctor called the unfolding outbreak a "public health disaster" – a statement which turned out to be prophetic, as the jail went from one COVID-19 case to 180 in just twelve days.[13] Closer to home, the Cook County Jail faced an epidemic of COVID-19 cases, with over 600 positive results and four deaths, despite having a record low number of detainees in its custody.[14] "Despite warnings from health officials and attempts to release some inmates to avoid outbreaks, jails, prisons, and detention centers across the country have emerged as major coronavirus spreaders. As of Monday, four of the 10 largest-known sources of infection in the United States were correctional facilities, according to [New York] Times tracking data."[15]

### c. Bureau of Prisons and MCC

COVID-19 cases have exploded within the Bureau of Prisons. As of April 19,

---

[12] Patrick Cooley, The Columbus Dispatch, Coronavirus in Ohio: More than 1,800 Inmates at Marion Correctional Test Positive (April 19, 2020), available at: https://www.dispatch.com/news/20200419/coronavirus-in-ohio-more-than-1800-inmates-at-marion-correctional-test-positive

[13] Miranda Bryant, Coronavirus spread at Rikers is a 'public health disaster', says jail's top doctor (April 1, 2020) available at: https://www.theguardian.com/us-news/2020/apr/01/rikers-island-jail-coronavirus-public-health-disaster

[14] Cheryl Corley, The COVID-19 Struggle in Chicago's Cook County Jail (April 13, 2020) available at: https://www.npr.org/2020/04/13/833440047/the-covid-19-struggle-in-chicagos-cook-county-jail

[15] Coronavirus Live Updates: Ohio Prison Is a Major Infection Hot Spot (April 20, 2020) available at: https://www.nytimes.com/2020/04/20/us/coronavirus-live-news.html?searchResultPosition=2

2020, 800 inmates and 520 staff members within the BOP have tested positive for the disease, and 22 inmates have died.[16] Over the last three and a half weeks, and in spite of various precautionary measures the BOP has undertaken, the number of positive cases has risen by a jaw dropping 13,233%.[17]

Corey Trammel, a union representative for correctional officers at FCI Oakdale commented, "It's been simultaneous, just people getting sick back to back to back to back. We don't know how to protect ourselves. Staff are working 36-hour shifts — there's no way we can keep going on like this."[18] Indeed, a class-action lawsuit was recently filed seeking hazard pay for certain BOP employees based on their "work with, or in close proximity to objects, surfaces and/or individuals infected with COVID-19 without sufficient protective devices.[19]

Moreover, the risk of COVID-19 reaching the Chicago MCC is no longer speculative. As of April 20, 2020, the BOP has confirmed that 16 staff members (a 333% increase since April 15, 2020) and **12 inmates** are infected with the disease – a number which has doubled in five days.  This, despite the "strict health and safety protocols" allegedly implemented by the MCC.  It is no longer a question of when

---

[16] Bureau of Prisons, COVID-19 Resource Page, available at: https://www.bop.gov/coronavirus/ (updating regularly).

[17] Objection to Time-Sensitive Supplemental Brief in Support of Compassionate Release, *United States v. Esparza*, No. 1:07-cr-294-BLW, Dkt. No. 121 (D. Idaho Mar. 24, 2020)(noting 3 BOP inmates and 3 staff members had tested positive for COVID-19)

[18] Kimberly Kindy, The Washington Post, An explosion of coronavirus cases cripples a federal prison in Louisiana (March 29, 2020), available at: https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html (last checked March 31, 2020).

[19] *Braswell v. United States of America*, Complaint filed in the U.S Court of Federal Claims, available at:  https://www.documentcloud.org/documents/6820623-Class-action-COVID-19-lawsuit-by-US-government.html (last checked March 31, 2020).

COVID-19 will infect the inmate population at the MCC, but how bad the outbreak will be.

Mr. Rodriguez is being held at the Livingston County jail in Pontiac, Illinois. While there have not yet been any confirmed cases at the Livingston County jail, it is likely that it is only a matter of time before COVID-19 makes its way into the facility. In order to best protect Mr. Rodriguez's health, the best time to remove him from the facility is prior to an outbreak occurring.

### d. The COVID-19 Pandemic is a Changed Circumstance that Warrants Pretrial Release.

Courts across the country have found that the COVID-19 pandemic is a basis for relief under 18 U.S.C. § 3142—both under a "changed circumstance" analysis, and under §3142(i), which permits temporary release in compelling circumstances.

In *United States v. McClean*, for example, the district court released a defendant in a presumption case solely based on the risks posed to him by COVID-19. "As counsel for the for the Defendant candidly concedes," the Court wrote, "the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed – with one exception. That one exception – COVID-19 – however, not only rebuts the statutory presumption of dangerousness, see 18 U.S.C. § 3142(e), but tilts the balance in favor of release." No. 19-cr-380 (D.D.C. Mar. 28, 2020). In *United States v. Kennedy*, the district court released a defendant post-plea & pre-sentence – a defendant whose pretrial release had previously been revoked – after finding that "the COVID-19 pandemic constitutes an independent compelling reason" for temporary release and is

6

"necessary form Defendant to prepare his pre-sentence defense." No. 5:18-cr-20315, Dkt. No. 77 (E.D. Mich. Mar. 27, 2020). The court took the same step in *United States v. Meekins*, No.1:18-cr-222-APM, Dkt. No. 75 (D.D.C. Mar. 31, 2020), releasing, post-plea, a defendant with three pending assault charges he had incurred on pretrial release due to the extraordinary danger COVID-19 poses to detainees.

Other courts – both in hotspots and elsewhere in the country – speak with this same urgent voice. See also *United States v. Davis*, No. 1:20-cr-9-ELH, Dkt. No. 21 (D. Md. Mar. 30, 2020) (releasing defendant due to the "urgent priority" of decarcerating, to protect both the defendant and the community, and to preserve Sixth Amendment rights in this perilous time); *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun & drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement"); *United States v. Michaels*, 8:16-cr-76-JVS, Minute Order, Dkt. 1061 (C.D. Cal. Mar. 26, 2020) ("Michaels has demonstrated that the Covid-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i).); *United States v. Harris*, No. 19-cr-356 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk

7

posed by Defendant's release to home confinement on . . . strict conditions.")

As a detainee at the Livingston County jail, Mr. Rodriguez could not be in a worse position to protect himself from the disease, which is 5-35 times more deadly than the flu. Because of the COVID-19 pandemic, and viewed in conjunction with the information below, pretrial release is warranted.

## II. Mr. Rodriguez Should be Released on Home Incarceration with Conditions Pursuant to 18 U.S.C. § 3142(c)

This Court should release Mr. Rodriguez on home incarceration with strict conditions. In this case release is warranted because Mr. Rodriguez has pre-existing health conditions that make him particularly susceptible to infection and raise his risk of serious complications or death, should he contract the virus.[20] In September 2019, he began experiencing extremely high blood pressure and was diagnosed with kidney disease. Doctors in New York are reporting a surge in COVID-19 patients who need dialysis as a result of kidney failure. Kidney specialists estimate that 20 to 40% of I.C.U. patients with COVID-19 suffered kidney failure requiring dialysis.[21] If Mr. Rodriguez were exposed to COVID-19 he is far more likely to become seriously ill, and the effects on his kidneys could be devastating if he experienced the "cytokine storm" immune system response, which appears to happen more frequently in younger patients with COVID-19,[22] and has a very rapid

---

[20] National Kidney Foundation, Kidney Disease and COVID-19 (April 20, 2020) available at: https://www.kidney.org/coronavirus/kidney-disease-covid-19
[21] Reed Abelson, et. al., An Overlooked, Possibly Fatal Coronavirus Crisis: A Dire Need for Kidney Dialysis (April 18, 2020) available at: https://www.nytimes.com/2020/04/18/health/kidney-dialysis-coronavirus.html
[22] Apoorva Mandavilli, The Coronavirus Patients Betrayed by Their Own Immune Systems

8

onset.[23]

Additionally, the facts under 18 U.S.C. § 3142(g) demonstrate that there are conditions of release that will reasonably assure both Mr. Rodriguez's appearance in court and the safety of the community.

As the Supreme Court held in *United States v. Salerno*, 481 U.S. 739 (1987), "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *Id.* at 755. This presumption of release is encapsulated in the BRA, 18 U.S.C. § 3142. The statute states that the Court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. Even if the Court determines under § 3142(c) that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further conditions" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. § 3142(c)(1) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention.").

---

(April 1, 2020) available at: https://www.nytimes.com/2020/04/01/health/coronavirus-cytokine-storm-immune-system.html

[23] Geoff Brumfiel, Why Some COVID-19 Patients Crash: The Body's Immune System Might Be to Blame (April 7, 2020) available at: https://www.npr.org/sections/health-shots/2020/04/07/828091467/why-some-covid-19-patients-crash-the-bodys-immune-system-might-be-to-blame

Mr. Rodriguez is in a stable relationship with Ena Arroyo, his fiancée, who will act as his third-party custodian. Ms. Arroyo is a registered nurse, and will be able to care for and assess Mr. Rodriguez's condition if he were to contract COVID-19. Home incarceration with electronic monitoring provides safety to the community because Mr. Rodriguez will not be leaving the house unless a pretrial services officer deems it necessary for medical treatment or to meet with that officer. Mr. Rodriguez does not possess a passport and has not traveled outside of the U.S. in many years. Moreover, he is unwilling to risk his precarious health by leaving the house.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Rodriguez appearance in court and the safety of the community.

- Place Mr. Rodriguez in the custody of a third-party custodian, Ena Arroyo, "who agrees to report any violation of a release condition to the court." §3142(c)(1)(B)(i).

- Follow restrictions on "personal associations, place of abode, or travel." §3142(c)(1)(B)(iv). Mr. Rodriguez will agree to home incarceration with electronic or GPS monitoring.

- Avoid "all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense." §3142(c)(1)(B)(v). Mr. Rodriguez agrees not to have any contact with any potential witness in this case.

- Report on a "regular basis" to pretrial services. §3142(c)(1)(B)(vi). Mr. Rodriguez agrees to report to pretrial services as often as directed.

- Refrain from possessing "a firearm, destructive device, or other dangerous weapon." §3142(c)(1)(B)(viii).

- Refrain from "excessive use of alcohol." §3142(c)(1)(B)(ix).

10

- Refrain from "any use of a narcotic drug or other controlled substance…without a prescription." §3142(c)(1)(B)(ix)."

- Undergo "medical, psychological, or psychiatric treatment, including a treatment for drug and alcohol dependency." §3142(c)(1)(B)(x). Mr. Rodriguez is willing to undergo any mental health or drug treatment deemed necessary by pretrial services.

In addition, statistics demonstrate that nearly everyone on pretrial release in the federal system appears in court and does not reoffend. In 2019, fully 99% of released federal defendants nationwide appeared for court, and over 98% did not commit new offenses while on bond.[24]

Table H-15.
U.S. District Courts ---- Pretrial Services Violations Summary Report
For the 12-Month Period Ending September 30, 2019

| Circuit and District | Total Cases Open | Cases In Release Status | Pct. | Cases with Violations | Pct. | Rearrest Violations | | | FTA Violations | Technical Violations | Reports to Court |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | Felony | Misdemeanor | Other | | | |
| TOTAL | 193,632 | 53,476 | 27.6 | 8,761 | 16.4 | 406 | 505 | 65 | 618 | 8,086 | 13,544 |

Moreover, this near-perfect compliance rate is seen equally in federal districts with very high release rates (~70%) and those with very low release rates (~24%).[25] The below chart reflects this data:

---

[24] See AO Table H-15, http://jnet.ao.dcn/sites/default/files/pdf/H15_Ending12312019.pdf (showing a nationwide failure to appear rate of 1.1% and a rearrest rate of 1.8% in 2019).
[25] The six federal districts with the lowest release rates (average 24.37%) have an average failure to appear rate of 1.78%, while the six districts with the highest release rates (average 69.08%) have an even lower failure to appear rate of 0.42%. See AO Table H-15; Table H-14A, https://www.uscourts.gov/sites/default/files/data_tables/jb_h14a_0930.2019.pdf. The six districts with the lowest release rates have an average re-arrest rate of 1.10%, while the six districts with the highest release rates have an average re-arrest rate of 0.91%. See Table H-15. (The districts with the lowest release rates are D. Utah, E.D. Oklahoma, W.D. Arkansas, S.D. Texas, E.D. Tennessee, and S.D. California; the districts with the highest release rates are D. Guam, D. Northern Mariana Islands, W.D. Washington, D. Connecticut, D. Maine, and D. Hawaii. See Table H-14A.)



## Conclusion

For all of the above reasons, Mr. Rodriguez should be granted release on bond pursuant to 18 U.S.C. § 3142.

Respectfully submitted,

/s/ Holly N. Blaine
Attorney for Francisco Rodriguez

Holly N. Blaine
BLAINE & VANZANT, LLP
922 Davis St.
Evanston, Illinois 60201
Tel.: (312) 788-7584
E-mail: hnb@blainevanzant.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the foregoing document was filed and served on all counsel of record via the Court's CM/ECF system.

/s/ Holly N. Blaine