# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 06 CR 451-10/20 CV 01792 |
| v. | ) | |
| | ) | Hon. Matthew F. Kennelly, |
| KEVIN WILLIAMS, | ) | Judge Presiding |
| | ) | Emergency Judge |
| | ) | Hon. Rebecca R. Pallmeyer |
| Defendant. | ) | |

## DEFENDANT WILLIAMS' EMERGENCY MOTION FOR COMPASSIONATE RELEASE OR RECOMMENDATION FOR IMMEDIATE RELEASE ON HOME CONFINEMENT

Now comes the defendant, Kevin Williams, by his attorney, John T. Kennedy, panel attorney, and respectfully moves this Court to grant his motion for compassionate release under 18 U.S.C. sec. 3582(c)(1)(A)(i), or in the alternative, a recommendation to the BOP that he be transferred to home confinement immediately pursuant to sec. 12003(b)(2) of the CARES Act and 18 U.S.C. sec. 3621(b)(4). In this case, there are extraordinary and compelling reasons to grant relief because Mr. Williams health condition (asthma) places him a significant risk group of death or serious injury from COVID-19. Mr. Williams' request is especially urgent because he is incarcerated at FCI Elkton, a facility experiencing a severe COVID-19 outbreak. Mr. Williams has served 97% of his 204 month sentence and has a release date of December 14, 2020. Continued custody places him at great risk.

Acknowledgment is made of a previously filed emergency motion

in another case in the Northern District of Illinois, U.S. v. Thompson, 15 CR 448 seeking compassionate release and identified as Doc. No. 72, which has been relied upon heavily in preparation of this motion.

**RELIEF REQUESTED**

Because Mr. Williams' sentence for conspiracy to possess with intent to deliver a controlled substance has almost been completely served, and to avoid the great health risk posed by the COVID-19 pandemic, Mr. Williams respectfully requests that this Court enter an order reducing his sentence to time served.  In the alternative, he asks that this Court recommend to the BOP that he be transferred to home confinement immediately pursuant to sec. 12003(b)(2) of the CARES Act and 18 U.S.C. sec. 3621(b)(4).  Mr. Williams has a release plan, namely that his niece, Jennifer Smith, who has a two bedroom apartment in Chicago, is prepared to pick him up from prison within 72 hours of notice, is willing to share her apartment with him, and will provide economic support to him as he re-enters society or alternatively is on home confinement.

The Assistant United States Attorney has been contacted and is awaiting a response from the BOP.  Presently, it is unknown whether the AUSA opposes this motion.

On April 17, 2020, counsel emailed the Warden and BOP Regional Counsel a request for compassionate release, and included the previous request of Mr. Williams' niece that he be placed in home

confinement. That preious request was made by Ms. Jennifer Smith on April 14, 2020 and was emailed to FCI Elkton.

Request is alternatively made that the Court make a recommendation that the BOP place Mr. Williams on home confinement. However, there is no way to know if the BOP will be able to consider such a recommendation in time. Accordingly, compassionate release would be the better and more certain relief for Mr. Williams.

## BACKGROUND

**I. Factual and Procedural History**

On July 15, 2009 this Court sentenced Mr. Williams to 204 months imprisonment after he pled guilty to conspiracy to possess with intent to deliver a controlled substance. Mr. Williams has been in custody since June 21, 2006. With a BOP out date of December 12, 2020 he has served 158 months, which is 97% of his sentence. See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmate loc/(last visited April 17, 2020)(result using number 18786-424). Given the COVID-19 crisis in the BOP, Attorney general Barr relaxed requirements for home confinement eligibility and, as a result, Mr. Williams is eligible for immediate release to home confinement.

Immediate release is appropriate because the offense arose over a decade ago, when Mr. Williams was 25 years old. He has matured and largely paid his debt to society with 13 years of

imprisonment.  He has two sons with whom he stays in contact by telephone on a weekly basis.  He has a caring relationship with his niece Jennifer Smith.  When her mother was sick and on dialysis he was supportive.  He helped pay the bills for his niece when she was in high school and early in college.  He has conducted himself well in prison and hopes to obtain employment as a truck driver.

Mr. Williams has served almost his entire sentence, and the risk of serious illness or death from COVID-19 is very real.  As of April 17, 2020 the FCI Elkton reported six inmate deaths from COVID-19.  Thirty nine inmates and thirty four staff have been reported as positive.  https://www.bop.gov/coronavirus/covid-19 update.

**II. Mr. Williams' Health Problems and Incarceration in the Highest-Risk Facility in the BOP System Place Him at High Risk for Serious Illness or Death from COVID-19.**

Mr. Williams is 39 years old, has served 97% of his sentence, and has just eight months left to serve.  He is a black man with asthma, placing him at an enhanced risk from COVID-19. Moreover, Mr. Williams is at far greater risk for infection and death from COVID-19 than the average 39 year old prisoner because the facility where he is incarcerated, FCI Elkton - low security, is one of the most dangerous BOP facilities in the country right now.  FCI Elkton is one of the facilities with the most confirmed inmate and staff cased of the BOP facilities. COVID-19 Coronavirous page, Federal Bureau of prisons, (April 17, 2020),

https://www.bop.gov/coronavirus/covid-19.

### A. Mr. Williams' health history increases his risk of dying from COVID-19.

Mr. Williams has asthma. He was diagnosed with asthma as a child. At the time of sentencing, he used an albuterol inhaler (6.5 grams) every six hours and a second albuterol inhaler (17 grams) as needed. Presentence Investigation Report, Docket No. 06 CR 451-10, p. 12, lines 507-309.

### B. Mr. Williams' incarceration at FCI Elkton puts him at even greater risk of contracting and dying from COVID-19.

The situation at FCI Elkton has rapidly turned deadly and, if current trends continue, is likely to become worse in the coming days and weeks. The BOP reports six COVID-19 inmate deaths as of April 19, 2020. The BOP states that 50 inmates and 38 staff employees have now tested positive for COVID-19. COVID-19 Coronavirus page, Federal Bureau of Prisons (April 19, 2020, https://www.bop.gov/coronavirus/covid-19. It is the highest incidence of COVID-19 at a BOP facility in the country. It exceeds the cases reported even for FCI Butner-Medium and FCI Oakdale. Only FCI Oakdale exceeds FCI Elkton for deaths, at seven. Id.

Mr. Williams cannot wait until federal officials act. This Court has the discretion to reduce Mr. Williams' sentence to time served before he suffers the same fate as those who have already died of COVID-19 at FCI Elkton.

**ARGUMENT**

I. **The Law Authorizes This Court to Modify Mr. Williams' Sentence to Time Served and Release Him Immediately.**

In 2018, the First Step Act modified the compassionate release statute to end the BOP's gatekeeping function and to allow inmates to directly file compassionate release motions in certain circumstances. See 18 U.S.C. sec. 3582(c)(1)(A)(i). Under the First Step Act, the Court may grant an inmate's motion for sentencing reduction if three requirements have been satisfied.

First, the Court must determine that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. Second, the Court must determine either that (a) the defendant exhausted available administrative remedies "to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or that (b) 30 days have elapsed since the receipt of such a request by the warden of the facility. Id. But, as discussed further below, courts have recognized that these requirements may be waived in light of the COVID-19 emergency. See United States v. Zuckerman, 16 CR 194 (S.D.N.Y. April 3, 2020)("the Court holds that [defendant]'s advanced age and compromised health, combined with the high risk of contracting COVID-19 at Otisville, justify waiver of the exhaustion requirement.") Third, the Court may reduce a defendant's sentence

after determining that the reduction is consistent with the sentencing factors outlined in 18 U.S.C. se. 3553(a). Id.

Mr. Williams satisfies all three of those requirements. As a person with personal risk factors, continued incarceration in FCI Elkton would place Mr. Williams at a great risk of death or serious injury disproportionate to the relatively small amount of time that remains to be served. Given the speed with which COVID-19 has spread through FCI-Elkton, Mr. Williams cannot mitigate his risk of exposure by relying on the ordinary and time-consuming administrative review process. In light of the danger posed by this pandemic, an order reducing Mr. Williams' sentence to time served would best achieve sec. 3553(a)'s directive to impose as sentence that is "sufficient but not greater than necessary." Mr. Williams has demonstrated his ability to conform to the requirements of society. The time already served is sufficient; in a time of pandemic, an additional eight months is greater than necessary.

### A. Mr. Williams is eligible for compassionate release because his heightened vulnerability to COVID-19 is an extraordinary and compelling circumstance that weighs in favor of immediate release.

The First Step Act empowered this Court to make an independent determination as to whether there are "extraordinary and compelling reasons" for compassionate release. It directed courts to consider whether the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. sec.

3582(c)(1)(A)(i).  The existing guidelines make no mention of motions filed by the defendant.  However, courts have applied the old policy statements as helpful in determining whether a defendant is eligible for compassionate release.  See <u>United States v. Ebbers</u>, No. S402CR11443VEC, 2020 WL 91399, at *4(S.D.N.Y. Jan. 8, 2020).

The old policy statements include the "catch-all" provision that covers "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  USSG sec. 1B1.13 cmt. N. 1(D).

The COVID-19 pandemic, coupled with Mr. Williams increased risk factor of asthma and the high number of infections and deaths at FCI Elkton create "an extraordinary and compelling reason" for compassionate release of Mr. Williams.  The pandemic is very real.  On April 14, 2020 it was reported that over 606,800 people in the United States were diagnosed with the disease and 25,922 people had died of it.  Coronavirus in the U.S.: Latest Map and Case Count, N.Y. Times, April 14, 2020, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.  At FCI Elkton, there have been six inmate deaths and 88 inmate and staff positive tests.

With a risk factor of asthma, Mr. Williams is at greater risk of a bad outcome should he become infected with COVID-19.  According to the CDC, people with moderate to severe asthma may be at risk of getting very sick from COVID-19.  COVID-19 can affect

the respiratory tract, cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease. [Http://www.cdc.gov/coronavirus/2019-ncov/need-extra-.](Http://www.cdc.gov/coronavirus/2019-ncov/need-extra-.)

Courts have found that the pandemic is "an extraordinary and compelling reason" to afford compassionate release. The spread of the virus into detention centers is recognized by the courts. For instance, in United States v. Muniz, Case No. 4:09 CR 199, R. 578 (S.D. Tex. Mar. 30, 2020) the Court noted that "the virus's spread in detention centers . . . demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection."

**B. The First Step Act's exhaustion requirement should be waived.**

It has been held that even where exhaustion is seemingly mandated by statute, the requirement is not absolute. Washington v. Barr, 925 F.3d 109, 118 (2nd Cir. 2019) citing McCarthy v. Madigan, 503 U.S. 140, 146-7 (1992).

When defendants were given the right to move for compassionate release if the BOP took no action, the legislature could not have considered the outbreak of a pandemic. With the BOP already overwhelmed with the problem of health care for inmates, it is unrealistic to expect the BOP to address compassionate release requests.

Also, thirty days is an eternity when confined in close proximity to persons infected with COVID-19. A provision that made

sense when the law was passed is now a provision that largely denies defendants any meaningful use of the right to seek compassionate relief on their own motion. Under the present circumstances, to give full effect to the Fair Sentencing Act, for the time being the thirty day notice requirement should be waived.

In the instant case, Mr. Williams has complied with the requirement of giving notice; it is the thirty day wait that is the obstacle. Given the circumstances, it is urged that the notice given be considered substantial compliance, and that the thirty day requirement be considered satisfied.

### III. The 3553(a) factors weigh in favor of Mr. Williams' immediate release.

The 3553(a) factors weigh in favor of releasing Mr. Williams. The 196 months that he has already served are sufficient to reflect the seriousness of the offense and to provide just punishment. As in Zukerman, at the time of sentencing, the sentence could not be seen as including a great and unforeseen risk of severe illness or death brought on by a global pandemic. United States v. Zukerman, 2020 WL 1659880, at *6 (S.D.N.Y. April 3, 2020. In Zukerman, the sentence was modified to home incarceration.

Counsel has been told, but is unable to verify, that Mr. Williams has not received tickets while incarcerated, and that he has participated in offered classes, including information on becoming a trucker. That Mr. Williams is in a low security prison suggests this information is accurate.

Mr. Williams has a release plan that is workable. He will live with his niece (age 35) in her two bedroom apartment in Chicago. She has offered to pick him up at FCI Elkton. She will provide housing and financial support while Mr. Williams adjusts to live outside prison. If there is a term of home confinement she will see to compliance with it.

**III. In the Alternative, Request is made for a Recommendation to the BOP that Mr. Williams be Transferred to Home Confinement Under the CARES Act and 18 U.S.C. sec. 3621(b)(4).**

If the Court declines to grant Mr. Williams compassionate release, request is made for a recommendation to the BOP that Mr. Williams be transferred to home confinement immediately pursuant to sec. 12003(b)(2) of the CARES Act and 18 U.S.C. sec. 3621(b)(4).

It is the stated view of the Attorney General that, "We have to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions." William Barr, Memorandum for Director of Bureau of Prisons (April 3, 2020).

It is believed but not verified that Mr. Williams meets the nine criteria for home confinement: (1) primary offense is non-violent; (2) primary offense is not a sex offense; (3) primary offense is not terrorism; (4) no detainer; (5) mental health care level is less the IV; (6) PATTERN risk assessment score is MIN; (7) BRAVO score is LOW or MIN; (8) completed at least 50% of their sentence; and (9) no incident reports in the past 12 months. <u>Livas v. Myers</u>, No. 20 CV 422, ECF. No. 8, at 5 (W.D.La.April 10,

2020)(BOP's COVID-19 Inmate Review Update).

Accordingly, alternative request is made that this Court recommend that the BOP release Mr. Williams to home confinement, and that he be permitted to self-quarantine at home.

## Conclusion

For these reasons, Mr. Williams respectfully requests that this Honorable Court modify his sentence under 18 U.S.C. sec. 3582(c)(1)(A)(i)to time served.  In the alternative, Mr. Williams respectfully requests recommendation to the BOP that he be transferred to home confinement immediately under the CARES Act. Should the Court wish to hold a hearing, counsel waives Mr. Williams appearance.

Dated: April 21, 2020

>                                    Respectfully submitted,
>
>                                    s/John T. Kennedy
>                                    John T. Kennedy
>                                    Attorney for Kevin Williams

John T. Kennedy
Panel Attorney
820 Davis Street,
Suite 434
Evanston, IL 60201
(847) 425-1115
(847) 254-6459 (cell)
kennedy3317@aol.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that in accordance with the applicable statutes and rules the following document:

**DEFENDANT WILLIAMS' EMERGENCY MOTION FOR COMPASSIONATE RELEASE OR RECOMMENDATION FOR IMMEDIATE RELEASE ON HOME CONFINEMENT**

was served pursuant to the District Court's ECF system on April 21, 2020.

s/John T. Kennedy
John T. Kennedy
Attorney for Kevin Williams

John T. Kennedy
Panel Attorney
820 Davis Street,
Suite 434
Evanston, IL 60201
(847) 425-1115
(847) 254-6459 (cell)
kennedy3317@aol.com