**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Anthony Mays, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 20-cv-2134 |
| | Judge Gettleman |
| Thomas Dart, Sheriff of Cook County, | |
| Defendant, | Judge Kennelly, |
| | Emergency Judge |
| and | |
| International Brotherhood of Teamsters Local 700, | |
| Proposed Intervenor. | |

**MOTION TO INTERVENE OF**
**INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 700**

Proposed Intervenor International Brotherhood of Teamsters Local 700 hereby moves under Fed. R. Civ. P. 24(a)(2) to intervene as a matter of right in this case based upon its substantial interest in the subject of this litigation, the resolution of which may impair its collective-bargaining rights and its interest in representing the staff at the Cook County Jail.

*Background*

1. International Brotherhood of Teamsters Local 700 (the "Union") is a labor organization within the meaning of 3(i) of the Illinois Public Labor Relations Act ("IPLRA"), 5 ILCS 315/3(i), and is the exclusive representative within the meaning of Section 3(f) of the IPLRA, 5 ILCS 315/3(f), of a unit of employees, including but not limited to Correctional Officers and Investigators ("Bargaining Unit"), employed at the Cook County Department of Corrections and working at the Cook County Jail (the "Jail"). (Ex. 1 - Declaration of Anthony McGee ¶ 2.) The Union is party to a collective-bargaining agreement ("CBA") with Cook

County, Illinois and the Cook County Sheriff as joint employers. The agreement governs the wages, hours, and terms and conditions of employment of the Bargaining Unit. (Ex. 1 - McGee Decl. ¶ 3; Ex. 1-A - CBA.)

2.    Intervention as of right is governed by Fed. R. Civ. P. 24(a)(2), which assures the intervention of anyone who, on a timely motion, "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24. In interpreting the rule, the courts have identified four criteria the proposed intervenor must satisfy:

> (1) timely apply; (2) claim an interest relating to the property or transaction which is the subject of the action; (3) be so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest; and (4) not be adequately represented by existing parties.

*American Nurses Ass'n v. State of Ill.*, No. 84 C 4451, 1986 WL 10382, *1 (N.D. Ill. Sept. 12, 1986) (citing *United States v. City of Chicago,* 796 F.2d 205, 208-09 (7th Cir. 1986)).

3.    Courts should construe these requirements liberally, resolving doubts in favor of granting intervention. *Miami Tribe of Okla. v. Walden*, 206 F.R.D. 238, 241 (S.D. Ill. 2001) (citing *Loyd v. Alabama Dep't of Corrs.*, 176 F.3d 1336, 1341 n.9 (11th Cir. 1999), *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999)). A motion to intervene as of right should not be denied "unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint." *Reich v. ABC/York-Estes Corp.,* 64 F.3d 316, 321 (7th Cir. 1995) (quoting *Lake Investors Dev. Group v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir. 1983)).

4.    In the present case, the Union meets each of these liberally-interpreted criteria for intervention.

### A. The Union has timely applied.

5.    "The timeliness factor is essentially a reasonableness inquiry, requiring potential intervenors to be reasonably diligent in learning of a suit that might affect their rights, and upon learning of such a suit, to act to intervene reasonably promptly." *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 175 (7th Cir. 1995). The Court examines four factors in determining a movant's timeliness: (1) how long the intervenor has known of its interest in the case, (2) whether the parties are prejudiced by the timing of the intervenor's motion, (3) the prejudice to the intervenor if the motion is denied, and (4) any unusual circumstances. *Lopez-Aguilar v. Marion County Sheriff's Dep't,* 924 F.3d 375 (7th Cir. 2019). "When intervention of right is sought, because 'the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.'" *Lopez-Aguilar,* 924 F.3d at 388-89, quoting 7C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE: CIVIL § 1916 (3d ed. 2018).

6.    In the present case, the Union's motion is plainly timely. Plaintiffs filed their complaint less than a month ago. While the Court has already entertained and ruled upon Plaintiff's motions for a temporary restraining order and preliminary injunction, Defendant has yet to answer the complaint. The Union does not seek reconsideration of any preliminary rulings entered thus far, but seeks to protect the interests of the Bargaining Unit as complications arise with the implementation of those rulings, and seeks to protect the Bargaining Unit members' health and safety and the Union's bargaining rights and the integrity of the CBA as the Court considers permanent relief. Because this case has only just gotten underway, there is no prejudice to any of the existing parties. *Nissei Sangyo Am., Ltd. v. United States*, 31 F.3d 435, 439

(7th Cir. 1994) (absent prejudice or evidence that plaintiff was "stalling," motion filed three months after intervenor learned of action is timely); *United States Equal Emp't Opportunity Comm'n v. Taylor Elec. Co.*, 155 F.R.D. 180, 182 (N.D. Ill. 1994) (finding intervention timely four months after commencement of action, prior to any motions being filed or discovery conducted). At the same time, as explained below, the Union's statutorily protected interests as exclusive bargaining representative may be impaired as a result of these proceedings, and the Union would therefore be prejudiced by a denial of its motion.

7.    For all these reasons, the Union's motion is timely.

**B.  The Union has an interest relating to the subject of this litigation, and there is a risk that the Union's interest will be impaired.**

8.    The Union has a direct and substantial interest in the subject matter of this case as required for intervention, as the Union could maintain a separate action to protect its interests. *National Union Fire Ins. Co. of Pittsburgh v. Continental Ill. Corp.*, 113 F.R.D. 532, 534 (N.D. Ill. 1986). "The requisite interest 'is something more than a mere 'betting' interest ... but less than a property right.'" *Zurich Capital Mkts. Inc. v. Coglianese*, 236 F.R.D. 379, 385 (N.D. Ill. 2006) (quoting *Security Ins. Co. of Hartford v. Schipporeit, Inc.,* 69 F.3d 1377, 1380-81 (7th Cir. 1995)). An intervenor's motion may be granted even though its interest in the litigation is contingent on the outcome. *Id.* at 535. In evaluating whether that interest is likely to be affected or impaired by the litigation, the Court considers the "practical consequences of the litigation" and "may consider any significant legal effect on the applicant's interest." *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992) (quoting *National Res. Def. Council, Inc. v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)).

9.    In the present case, the County and the Sheriff recognize the Union as the exclusive collective-bargaining representative of the Bargaining Unit at the Jail. (Ex. 1 – McGee Decl.

4

¶ 2.) Under Section 10(a)(4) of the IPLRA, the County and Sheriff have a duty to bargain with the Union over the wages, hours, and other terms and conditions of employment of the Bargaining Unit, 5 ILCS 315/10(a)(4), and pursuant to that duty the County, Sheriff, and Union are party to a series of collective-bargaining agreements governing those wages, hours, and terms and conditions of employment. (Ex. 1 – McGee Decl. ¶ 3, Ex. 1A – CBA.)

10.   The Complaint makes a number of allegations that, if proven, implicate wages, hours, and employee working conditions, including the availability of cleaning supplies (C. ¶ 21), the health conditions of detainees with whom correctional employees must interact (C. ¶ 22-23), the sufficiency of emergency medical equipment (C. ¶ 24), the Employer's capacity to screen staff for new, asymptomatic infection (C. ¶ 25), the nature of the communal areas where detainees are held (C. ¶ 31-35), the adequacy of the Jail's quarantine protocols (C. ¶ 37, 40), the adequacy of the personal protective equipment issued to staff (C. ¶ 46), the adequacy of staff training in mitigating the spread of COVID-19 (C.¶ 49-50), the conducting of health checks on employees entering the jail (C. ¶ 52), and the number of infections suffered by staff (C. ¶ 54).

11.   Not only do the issues raised by the complaint implicate the health and safety of the employees the Union represents, but any steps taken by this Court to remedy Plaintiffs' claims will necessarily implicate those employees' terms and conditions of employment. Indeed, the elements of relief already ordered by the Court in the preliminary injunction entered on April 27, 2020, implicate bargaining-unit employees' working conditions: the enforcement of social distancing during the intake process and the elimination of bullpens and other multiple-occupancy cells during intake, as well as the requirement of regular sanitization of surfaces and the monitoring and supervision of that process, and the changes to housing arrangements,

among others, are all certain to affect employee workloads, scheduling, overtime, health, safety, and discipline, among others. (Ex. 1 – McGee Decl. ¶ 4.)

12. Additionally, steps that the Sheriff takes to implement the preliminary injunction, and the terms of any subsequent relief ordered by the Court, have the potential to violate existing contractual terms and practices. If the Union's interests are not represented in this litigation, the Court may unwittingly order, or the parties may agree to, changes that sacrifice employees' health, safety, or bargaining rights.

13. The procedures that will be put in place to maintain control of detainees as physical distancing measures are implemented also have the potential to significantly impact officer safety and welfare. If those procedures are carried out improperly, not only will officers be less able to effectively maintain control and therefore face increased risks of physical harm, but they will also face increased risks of coming into close contact with detainees carrying the virus. (Ex. 1 – McGee Decl. ¶ 5.)

14. Even the release of detainees, which Plaintiffs have requested, would impact the terms and conditions of the Bargaining Unit. Bargaining Unit investigators must enter the homes of individuals subject to electronic monitoring to set up equipment and perform checks on the participants, potentially exposing the investigator to the virus, not just through the detainee, but also anyone sharing a living space with a detainee. (Ex. 1 – McGee Decl. ¶ 6.) It is not only detainees who are at risk of contracting the virus, and it is not only the detainee population that contains individuals with elevated risk factors for contracting and dying from the virus.

15.  Finally, the impacts on the Bargaining Unit are changing and unpredictable. The Union just learned yesterday that there is a possibility that, in order to accommodate distancing requirements, the Jail will open the Division 3 Annex for overflow detainees. This building houses the Union's office, potentially increasing exposure to Bargaining Unit members from the act of going to the Union's office to seek assistance, including assistance on issues relating to the pandemic and the changes mandated by this Court. (Ex. 1 – McGee Decl. ¶ 7.)

16.  In short, the Union has a strong interest in ensuring that both the implementation of the Court's orders to date and the issuance of any additional relief intended to protect Plaintiffs' health and safety does not come at the expense of the health and safety of the Bargaining Unit.

17.  The Union has a right to seek enforcement of its collective-bargaining rights through the grievance arbitration process, and the Sheriff's duty to bargain over changes to terms and conditions of employment is subject to enforcement by the Illinois Labor Relations Board. 5 ILCS 315/10(a)(4), 11. But absent intervention in this litigation, the Union will lack standing to raise objections before this Court to relief that will acquire the force of law and arguably bar relief in the grievance arbitration process or before the ILRB despite impairing the rights and interests of the Union and its members. The Union therefore has a legally cognizable interest that is at sufficient risk of impairment to justify the Union's intervention. *CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n,* 944 F. Supp. 1573, 1577-78 (N.D. Ga. 1996) (possible adverse effects on union's members by changes in services and facilities constituted sufficient interest for intervention in railroad's suit against public service commission); *CBS, Inc. v. Snyder,* 798 F. Supp. 1019, 1023 (S.D.N.Y. 1992) (union's interest in administering and enforcing contract permitted intervention in individual member's suit to compel arbitration);

7

*U.S. v. Simmonds Precision Prods., Inc.*, 319 F. Supp. 620, 621 (S.D.N.Y. 1970) (union's interest in protecting members' job security sufficient to permit intervention in antitrust action against employer). *See also Central States, Se. & Sw. Areas Health & Welfare Fund v. Old Second Life Ins. Co.*, 600 F.2d 671, 681 (7th Cir. 1979) (availability of other remedies in other forums does not preclude intervention).

**D. The Union's interests are not adequately represented by any party.**

18.   The requirement that the intervenor's interests not be adequately represented by any party is a lenient one; the movant satisfies it by making only the minimal showing that the parties "may" inadequately represent their interests. *Pacific Mut. Life Ins. Co. v. American Nat'l Bank & Trust Co. of Chicago*, 110 F.R.D. 272, 274 (N.D. Ill. 1986) (citing *Lake Inv'rs Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1261 (1983)).

19.   In the present case, while the complaint makes reference to various issues facing the Bargaining Unit employed at the Jail, the Plaintiffs are not employees, but detainees at the Jail. The relief they seek is likely to implicate employees' working conditions, but the detainees have no interest in protecting Jail employees' working conditions or the Union's collective-bargaining agreement with the Defendant. And the Defendant in this case, the Sheriff, is one of the two joint employers whose employees the Union represents and is, by definition, not qualified to represent those employees' interests in the collective-bargaining context.

20.   In sum, the Union has an interest in protecting the interests of the employees it represents and in preserving the integrity of its collective-bargaining agreement, an interest that is imperiled by the present litigation and which the current litigants have an insufficient interest in protecting. Because all of the factors examined by the Court have been satisfied, the Union's motion should be granted.

21.   Upon the granting of its motion, the Union will promptly file an answer to the complaint or as directed by the Court.

WHEREFORE, for all the forgoing reasons, International Brotherhood of Teamsters Local 700 respectfully requests leave to intervene as a defendant in this matter.

Respectfully submitted,

/s/  Sherrie E. Voyles
One of Intervenor's attorneys

Sherrie E. Voyles
David Huffman-Gottschling
Jacobs, Burns, Orlove & Hernandez
150 N. Michigan Ave., Ste. 1000
Chicago, IL 60601
(312) 327-3444

## CERTIFICATE OF SERVICE

I, Sherrie E. Voyles, certify that I caused a copy of the foregoing document to be served upon all parties electronically by filing it using ECF on April 30, 2020:

/s/  Sherrie E. Voyles
Sherrie E. Voyles