UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 19 CR 428-1 |
| | ) | Judge Charles R. Norgle |
| v. | ) | |
| | ) | No. 20 CV 1792 |
| SINCERE BRANNON | ) | Emergency Judge |

EMERGENCY MOTION FOR PRETRIAL RELEASE FROM MCC-CHICAGO

Defendant Sincere Brannon, through his counsel, Francis C. Lipuma, herein moves this Honorable Court to enter an order directing the immediate release of Mr. Brannon from the custody of MCC-Chicago. It is respectfully submitted that – because of the coronavirus pandemic and its ongoing impact at MCC-Chicago, coupled with Mr. Brannon's respiratory health concerns as a pretrial detainee at MCC-Chicago, along with the recently attained willingness of a stable and suitable third-party custodian to supervise and house him – Mr. Brannon should be released to home confinement with electronic monitoring and other stringent conditions, pursuant to 18 U.S.C. § 3142(c). In support of this motion, Mr. Brannon states as follows:

A. Procedural History

1. On May 14, 2019, a federal grand jury in this district returned an indictment against Mr. Brannon's mother, Harriette McPherson, and his brother, Rakim Asad, in the case styled, *United States v. Asad*, No. 19 CR 419. Mr. Brannon's mother was charged with narcotics trafficking, while his brother was charged with narcotics trafficking and possession of a firearm in furtherance of narcotics trafficking. Warrants were issued for their arrests. (Docket 1 at p. 2).

2. On May 16, 2019, early in the morning, federal agents proceeded to an apartment located at 1605 East 50th Street in Chicago in order to arrest Mr. Brannon's mother and brother. Agents arrested Ms. McPherson after she had left her apartment to go to work, and agents then proceeded

to the apartment to arrest Mr. Asad. However, Mr. Asad was not in the apartment. Instead, Mr. Brannon was there having flown in from college to visit and stay with his mother for a couple days. At the time, Mr. Brannon was living in Houston, Texas, where he was attending the Art Institute of Houston. (Docket 1 at pp. 2-3; 9 at p. 1).

3. Agents entered the apartment to look for Mr. Asad. Instead of finding Mr. Asad, agents found his younger brother, Sincere Brannon, and seized in a guest bedroom, purportedly in "plain view," "five to six plastic bags containing suspect marijuana" (each bag contained "approximately one pound of marijuana"), a scale and sandwich bags, U.S. currency, and a "firearm with an extended magazine." (Docket 1 at pp. 3-4). Other similar contraband was found in other areas of Ms. McPherson's apartment.

4. On May 16, 2019, a criminal complaint was filed against Mr. Brannon, charging him with possession with intent to distribute marijuana and possession of a gun in furtherance of drug trafficking, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A), respectively. (Docket 1).

5. On May 17, 2019, an initial appearance was held, and the government sought Mr. Brannon's pretrial detention. (Docket 2).

6. A Pretrial Bail Report was prepared and the Pretrial Services Office recommended that Mr. Brannon be released on an unsecured bond subject to conditions. (Docket 9) (sealed).

7. On May 22, 2019, Magistrate Judge Sidney I. Schenkier held a detention hearing in which evidence was proffered by the parties. Following the proffers and arguments of counsel, the Court ruled that Mr. Brannon be detained pretrial. (Docket 14). In its detention order, the Court noted that Mr. Brannon had indeed rebutted the presumption that he should be detained given the nature of the

offenses charged. However, the Court still detained Mr. Brannon as a danger to the community and as a risk of flight. (Docket 15 at pp. 2).

8. On May 30, 2019, a grand jury returned a two-count indictment against Mr. Brannon. In count one, Mr. Brannon was charged with possession with intent to distribute "a detectable amount of marijuana," in violation of 21 U.S.C. § 841(a)(1). In count two, Mr. Brannon was charged with possession of a loaded .40 caliber pistol in furtherance of a drug trafficking crime. (Docket 19). As a consequence of the filing of the indictment, Mr. Brannon's right to a preliminary examination was stricken. (Docket 18, 23).

9. On June 4, 2019, Mr. Brannon entered a plea of not guilty to the charges at his arraignment hearing. Additionally, undersigned counsel was granted leave to represent Mr. Brannon in this case. (Docket 26, 28).

10. Status hearings were conducted before Judge Charles R. Norgle on July 10, 2019, September 4, 2019, November 14, 2019, and January 15, 2020. (Docket 36, 37, 38, 39).

11. On March 17, 2020, March 30, 2020, and April 24, 2020, the Court entered general orders continuing all criminal and civil cases, including Mr. Brannon's, because of the public emergency concerning COVID-19. (Docket 40, 41, 42).

B. Salient Facts

12. While there is probable cause to support the two charges against Mr. Brannon, it should be noted that his detention hearing proceeded by way of proffer and without the benefit of testimony and the introduction of evidence through the crucible of cross-examination. Further, Mr. Brannon did not receive the benefit of a preliminary hearing because the indictment was returned before such

hearing. As set forth below, the weight of the evidence against Mr. Brannon hardly is overwhelming and his case is quite triable.

13. Mr. Brannon was just 19 years of age at the time the arrest. He had been living in the Houston area as a full-time college student at the Art Institute of Houston. Mr. Brannon attended the school on a full scholarship. He was expected to graduate in March of 2020. (Docket 9 at pp. 1-2).[1]

14. Federal agents obtained warrants to arrest Mr. Brannon's mother and older brother for narcotics trafficking offenses and, in the case of the brother, for firearm possession in furtherance of narcotics trafficking. Agents had a target location in mind where they thought they could find and arrest Ms. McPherson and Mr. Asad. However, upon entry into the apartment, they found Mr. Brannon and the alleged contraband. Mr. Brannon was in the apartment as a guest visiting his mother, as described above.

15. During his initial incarceration at MCC-Chicago, Mr. Brannon was examined by a physician, at which time he informed staff that he had respiratory issues. Mr. Brannon suffers from bronchitis, a respiratory illness. A physician at MCC-Chicago, Dr. Brij Mohan, prescribed an inhaler containing Albuterol Sulfate for Mr. Brannon for his breathing difficulties.[2] Albuterol Sulfate inhalation aerosol is a prescription medicine to treat or prevent bronchospasm and to improve pulmonary function.

---

[1] Mr. Brannon is a gifted artist. His work has been displayed at the Union League Club, and he and other local student artists have been featured on the local news, including CBS and ABC. Mr. Brannon's scholarship at the institute was fully funded by the Jordan Brand Wings Scholars Program.

[2] No health issues were stated in the Pretrial Services Report.

4

16. The term "COVID-19" certainly needs no introduction.[3] The coronavirus pandemic has hit the world hard. Everyone has been impacted by it in one way or another, and it continues to spread rapidly. As of May 11, 2020, there were over 1.3 million cases and over 80,000 deaths in the United States alone.

17. Prisoners have it especially hard given the traditional conditions of confinement. Over 3,000 inmates have tested positive and over 45 prisoners have died nationwide, according to the Marshall Project, the data reflects a 39% increase from the week before. Locally, records show that the coronavirus outbreak at MCC-Chicago has grown into one of the largest among the Federal Bureau of Prisons' facilities. This, despite optimism in late-March that a detainee at MCC-Chicago was safe because: "Defendant has failed to cite to any evidence that COVID-19 is in the area within the facility within which he is currently housed." *United States v. Price*, 18 CR 597, Docket 70 (Mar. 23, 2020). Now, as of May 8, 2020, some 20% of inmates at MCC-Chicago tested positive for the virus. According to the government, 133 inmates and 29 staff members at MCC-Chicago have tested positive for the virus as of May 6, 2020. Chicago Sun Times, *COVID-19 Outbreak Among Inmates at the MCC in Chicago Among Largest Across the System*, Jon Seidel (May 10, 2020).

18. Senators Dick Durbin (D-IL) and Chuck Grassley (R-IA) have publicly questioned whether the Federal Bureau of Prisons' records concerning the virus are even accurate and whether it is downplaying the threat of COVID-19 behind bars. Letter from Senators Durbin and Grassley to Inspector General Michael Horowitz (April 21, 2020).

---

[3] The World Health Organization has officially designated the COVID-19 outbreak a global pandemic. The President of the United States has declared the pandemic a national emergency.

19. Public health experts have warned that prisoners are at a special risk of infection and are less able to participate in proactive measures to keep themselves safe, and that infection control is extremely challenging in jail settings. Consequently, the Department of Justice has acknowledged that the pandemic is a valid consideration under § 3142(g), directing all prosecutors to "consider the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic." Memorandum for All Heads of Department Components and All United States Attorneys, *Litigating Pretrial Detention Issues During the COVID-19 Pandemic* (April 6, 2020).

20. On May 6, 2020, undersigned counsel contacted government counsel and provided the prosecution with information concerning the prospective third-party custodian. The following was disclosed to the prosecution and is relevant to the Court's consideration of this motion:

Kimberly Nicole Williams, 44 years of age, is a certified phlebotomist who works for Northwestern Medicine at an off-site medical facility in Evergreen Park, Illinois, named P & D Medical. Ms. Williams lives with her adult son and daughter in Chicago Heights, Illinois.[4] Ms. Williams is friends with Mr. Brannon's family, and she has known Sincere since he was in grammar school as he went to school with her son. Ms. Williams understands that Mr. Brannon, his mother and now two of his brothers are under federal indictments in this district. Ms. Williams has a telephone land line and has no objection to the installation of electronic monitoring. Ms. Williams has affirmatively represented that she would report Sincere to the Court through Pretrial Services if he left her home or violated even one condition of his pretrial release at any time.

---

[4] Ms. Williams' date of birth, address, and names of children were provided to the government and Pretrial Services, but, for privacy reasons, are omitted here in this public filing.

21. Mr. Brannon has no adult criminal history. As a minor, Mr. Brannon was arrested for aggravated robbery with a firearm and possession of a stolen firearm. No dispositions were noted in the Pretrial Services Report. (Docket 9 at p. 3). It is expected that the government will respond to this motion with additional negative information and documentation about Mr. Brannon while he was a juvenile, and perhaps even as an adult. Any such arguments by the government should be viewed through the prism of Rule 404(b) because none of the information that the government will present about his background reflects a charged crime in the pending indictment. It is, at best, Rule 404(b) evidence that may not even see the light of day in court at trial.

22. While in custody at MCC-Chicago for the past year, Mr. Brannon has not had a single incident report or disciplinary matter brought against him. He has been, indeed, a model prisoner.

23. Despite his known health condition, MCC-Chicago has assigned Mr. Brannon to be a unit orderly. That is, he is assigned to clean showers and floors, and to spray and disinfect the virus from areas within MCC-Chicago.

24. On May 8, 2020, undersigned counsel provided the Pretrial Services Office with the name and identifying information concerning Ms. Williams. Counsel was advised that the Pretrial Services Office could not interview Ms. Williams as a prospective third-party custodian until after this motion was filed.

### C. Argument

25. In our society, freedom and liberty is the norm, even for those charged with crimes, and detention before trial is a carefully limited exception. *United States v. Salerno*, 481 U.S. 739 (1987). This presumption of release pending trial is encapsulated in the Bail Reform Act, 18 U.S.C. § 3142. Courts are required to release defendants subject to the least restrictive conditions that will

reasonably assure the defendant's appearance in court and the safety of the community. 18 U.S.C. § 3142(c)(1). Courts may detain a defendant as a danger to the community if it finds, by clear and convincing evidence, that no combination of conditions will reasonably assure the safety of the community, or as a risk of flight if it finds, by a preponderance of the evidence, that no set of conditions can reasonably establish the likelihood of the defendant's appearance at trial. 18 U.S.C. § 3142(e), (f).

26. Here, the government's burden cannot be met any longer because (1) the global pandemic is within the walls of MCC-Chicago, with many inmates testing positive, and it cannot be controlled by authorities in the near term; (2) Mr. Brannon suffers from a respiratory illness that puts him at greater risk than others, and, indeed, could lead to failing health and even death; (3) a stable and suitable third-party custodian is now available to place Mr. Brannon in the safety and security of her home; (4) home detention with electronic monitoring will satisfy the statute's requirements; and (5) any and all additional conditions of release the Court deems fit to assure the safety of the community and ameliorate any risk of flight should be imposed.

27. Mr. Brannon's continued incarceration at MCC-Chicago during the COVID-19 crisis puts his health at great risk. The virus has proven that it can kill anyone, but public health experts agree that underlying medical conditions, especially respiratory illnesses, place individuals at any age at an exponentially greater risk of serious complications.

28. Despite rosy prognostications from the government, the virus is, and continues to be highly contagious. To stem its spread, the Center for Disease Control has advised everyone to take preventative actions, such as staying six feet away from others, keeping areas disinfected, and frequent hand washing. Social distancing measures – the hallmarks of COVID-19 prevention efforts

8

– are extremely difficult if not impossible to implement in a prison setting. Facilities like MCC-Chicago provide a uniquely hospitable environment for the virus to spread.

29. Mr. Brannon's release from MCC-Chicago will help lessen the burden on staff at MCC-Chicago as it will increase the ability of MCC-Chicago to manage and reduce the spread of the virus through the release of appropriate at-risk inmates.

30. There has been a change in circumstances since the detention hearing conducted one year ago, namely, the global pandemic and its particular impact on certain facilities, such as prisons and jails. Mr. Brannon is unable to effectively participate in his defense under restrictions imposed at MCC-Chicago as a result of the pandemic. MCC-Chicago's conditions also interfere with Mr. Brannon's ability to effectively engage with his legal counsel in violation of the Sixth Amendment. His continued confinement has become punitive rather than regulatory in violation of his due process rights under the Fifth Amendment.

31. There has been another change in circumstances since the detention hearing conducted one year ago, namely, Mr. Brannon has obtained a stable and suitable third-party custodian in Ms. Williams. Ms. Williams provides positive contributions to the community, and she desires to contribute to Mr. Brannon's safety and well-being. If Mr. Brannon violates bond in any manner, Ms. Williams understands and agrees that she will contact the Court through Pretrial Services and report him for such violation.

32. It makes little sense to continue to confine Mr. Brannon, who is at great risk, has a confirmed release plan, and poses no realistic risk of endangering the community or fleeing. The entire State of Illinois remains on lock down. Mr. Brannon's entire world is here in this district. He will report to Court when required. He will stand trial and accept a jury's decision.

33. Mr. Brannon will be much safer self-quarantining in a family friend's home than remaining in a crowded and unsanitary jail setting. "The nature of prisons – crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products – put those incarcerated in a facility with an outbreak at heightened risk." *United States v. Park*, 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020). Another court emphasized that, "despite the best efforts of BOP officials, the likelihood of contracting the virus is greater in prison than if a defendant were able to fully self-isolate at home," and explained that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines[.]" *United States v. Esparza*, 2020 WL 1696084 (D. Idaho Apr. 7, 2020). There can be no doubt home confinement at a family friend's home is safer for Mr. Brannon than remaining at MCC-Chicago.

Wherefore, defendant Sincere Brannon respectfully requests this Honorable Court to enter an order granting this motion and directing the MCC-Chicago to release him from custody, and further directing his confinement in the home of Ms. Williams with electronic monitoring and any additional conditions the Court deems appropriate.

        Respectfully submitted,

        Sincere Brannon

        s/ Francis C. Lipuma
        Francis C. Lipuma
        On Behalf of
        Defendant Sincere Brannon

Francis C. Lipuma
105 West Adams Street
35th Floor
Chicago, Illinois 60603
(312) 675-0089
franklipuma@gmail.com

CERTIFICATE OF SERVICE

I, Francis C. Lipuma, an attorney, do hereby certify that I caused a copy of "Emergency Motion for Pretrial Release from MCC-Chicago" to be served upon counsel for the parties, pursuant to Fed.R.Crim.P. 49, L.R. 5.5, and the General Order on Electronic Case Filing of the United States District Court for the Northern District of Illinois, Eastern Division.

                                                s/ Francis C. Lipuma
                                                Francis C. Lipuma
                                                105 West Adams Street
                                                35th Floor
                                                Chicago, IL 60603
                                                (312) 675-0089
                                                franklipuma@gmail.com