```
                        IN THE
             UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 CR 10-2/20 CV 01792 |
| v. | ) | |
| | ) | Hon. Andrea R. Wood, |
| BRIAN HUGHES, | ) | Judge Presiding |
| | ) | Emergency Judge |
| | ) | Hon. Rebecca R. Pallmeyer, |
| Defendant. | ) | Chief Judge |

## DEFENDANT HUGHES' EMERGENCY MOTION FOR COMPASSIONATE RELEASE OR RECOMMENDATION FOR IMMEDIATE RELEASE ON HOME CONFINEMENT

Now comes the defendant, Brian Hughes, by his attorney, John T. Kennedy, panel attorney, and respectfully moves this Court to grant his motion for compassionate release under 18 U.S.C. sec. 3582(c)(1)(A)(i), or in the alternative, a recommendation to the BOP that he be transferred to home confinement immediately pursuant to sec. 12003(b)(2) of the CARES Act and 18 U.S.C. sec. 3621(b)(4).

### URGENCY OF REQUEST

In this case, there are extraordinary and compelling reasons to grant relief because at age 48 years, Mr. Hughes' health condition (diabetes, high blood pressure, and sleep apnea) places him at significant risk of death or serious injury from COVID-19. Mr. Hughes' request is especially urgent because he is incarcerated at FCI Milan, a facility experiencing a severe COVID-19 outbreak. FCI Milan, on June 1, 2020 had 5 COVID-19 positive inmates, 4 positive

staff and 3 inmate deaths.  It listed 67 inmates as recovered and 55 staff as recovered.  http:/www.bop.gov/coronavirus/.  FCI Milan has a prisoner population of 1,359 inmates.  http:/www.bop.gov/.  Mr. Hughes has served 84% of his 110 month sentence and has a release date of November 3, 2021.  Continued custody places him at great risk.  Prisons, like nursing homes, are crowded facilities ripe for an outbreak of COVID-19.

## RELIEF REQUESTED

Mr. Hughes requests compassionate release, and alternatively a recommendation for home confinement.  The request for this relief was made to the Warden of FCI Milan and to Regional Counsel on May 13, 2020.

## BACKGROUND FOR REQUEST

Mr. Hughes is serving a 110 month sentence.  He has served about 84% of his sentence.  The BOP inmate locator lists him as having an out date of November 3, 2021.  See Federal Bureau of Prisons Inmate Locator, http://www.bop.gov/inmate (Last visited May 28, 2020)(result using number 19048-424).  The offense of conviction was multiple counts of bank fraud.  In addition to the 110 month sentence, a period of three years supervised release was imposed, and restitution ordered in the amount of $147,690.18.

The risk factors for a serious or deadly outcome from COVID-19 for Mr. Hughes is diabetes, high blood pressure, and sleep apnea.

**ARGUMENT**

**STATUTORY AUTHORIZATION FOR COMPASSIONATE RELEASE**

In 2018, the First Step Act modified the compassionate release statute to end the BOP's gatekeeping function and to allow inmates to directly file compassionate release motions in certain circumstances. See 18 U.S.C. sec. 3582(c)(1)(A)(i). Under the First Step Act, the Court may grant an inmate's motion for sentencing reduction if three requirements have been satisfied.

First, the Court must determine that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. Second, the Court must determine either that (a) the defendant exhausted available administrative remedies "to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or that (b) 30 days have elapsed since the receipt of such a request by the warden of the facility. Id. But, as discussed further below, courts have recognized that these requirements may be waived in light of the COVID-19 emergency. See United States v. Zuckerman, 16 CR 194 (S.D.N.Y. April 3, 2020)("the Court holds that [defendant]'s advanced age and compromised health, combined with the high risk of contracting COVID-19 at Otisville, justify waiver of the exhaustion requirement.") Third, the Court may reduce a defendant's sentence

after determining that the reduction is consistent with the sentencing factors outlined in 18 U.S.C. sec. 3553(a). Id.

Mr. Hughes satisfies all three of those requirements. As a person with personal risk factors, continued incarceration in FCI Milan would place Mr. Hughes at a great risk of death or serious injury disproportionate to the relatively small amount of time that remains to be served. Given the speed with which COVID-19 has spread through FCI-Milan, Mr. Hughes cannot mitigate his risk of exposure by relying on the ordinary and time-consuming administrative review process. In light of the danger posed by this pandemic, an order reducing Mr. Hughes' sentence to time served would best achieve sec. 3553(a)'s directive to impose a sentence that is "sufficient but not greater than necessary."

Mr. Hughes has demonstrated his ability to conform to the requirements of society. The time already served of 93 months is sufficient; in a time of pandemic, an additional 17 months is greater than necessary.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

On May 13, 2020, Mr. Hughes made his request for administrative relief under the First Step Act, 18 U.S.C. sec. 3582(c). He has sought both compassionate release and home detention. This is sufficient to satisfy the exhaustion requirement of the compassionate release statute. No response has

yet been received.  Thirty days has not yet run.  He should not have to wait longer.

### **WAIVER OF THE 30 DAY ADMINISTRATIVE PROVISION**

The Court has the discretion to waive the 30 day administrative provision.

Congress's intent to expedite compassionate release is well served by permitting district courts, confronted with unbending BOP policy that fails to meet the current crisis, to decide whether requiring further exhaustion frustrates Congress's goal.

Federal Courts have long recognized that exhaustion-type requirements should sometimes be excused when delay might cause the defendant undue prejudice or irreparable harm. Washington v. Barr, 925 F.3d 109 (2nd Cir. 2019). "[M]ere preference for a speedy resolution is not enough." Id. But exhaustion can be excused in cases involving "inadequacy of the prescribed procedure" and a showing of "impending harm." Aircraft & Diesel Equip. Corp. v. Hirsh, 331 U.S. 752, 773-74 (1947).

Inadequacy of the prescribed procedure

The BOP procedure is inadequate. For instance, BOP's Program Statement has criteria for compassionate release based on debilitating medical condition.  Under the policy, a medically based request for compassionate release should be considered only if the illness is one that confines the individual to a bed or wheelchair more than 50% of waking hours and limits the

individual's ability to provide for self-care. Program Statement 5050.50 sec. 3(b). With these requirements, Mr. Hughes' request for compassionate release would inevitably be denied by the BOP. The whole application is futile. It is a waste of time on both sides for the BOP to consider a request that cannot be granted under the agency's policies.

Showing impending harm

Mr. Hughes asserts that his diabetes, high blood pressure, and sleep apnea, coupled with the pandemic, create a situation of impending harm.

Power to create an exception to the exhaustion requirement

Ever where exhaustion is seemingly mandated by statute, the requirement is not absolute. Washington v. Barr, 925 F.3d 109, 118, citing McCarthy v. Madigan, 503 U.S. 140, 146-7 (1992).

The Supreme Court has held that the power of the court to create exceptions to a statutory exhaustion requirement depends on the language of the statute. Ross v. Blake, 136 S.Ct. 1850, 1857 (2016). If the language of the statue is mandatory, then the exhaustion requirement cannot be waived. In that litigation under the Prison Litigation Reform Act of 1995, the statutory language was "No action shall be brought *** until such administrative remedies as available are exhausted." In Ross, the Supreme Court held that the language was mandatory. Ross v. Blake, 136 S.Ct. at 1856. But the Supreme Court also remanded the case for the

district court to consider whether the statutory exception to exhaustion provided in the PLRA applied. Id. at 1855. Notably, the statute carried a provision excusing compliance where exhaustion would be futile, and that language prevents an unjust result. See Id. at 1859.

In the First Step Act, the language of the statute does not express a mandatory statutory condition. Consequently the court has the power to waive it. Such power prevents unjust results from circumstances, such as the COVID-19 pandemic, that could not have been anticipated at the time of passage of the statute by Congress.

When defendants were given the right to move for compassionate release if the BOP took no action, the legislature could not have considered the outbreak of a pandemic. With the BOP already overwhelmed with the problem of health care for inmates, it is unrealistic to expect the BOP to address compassionate release requests.

Also, thirty days is an eternity when confined in close proximity to other persons and when in an environment that by its nature is ripe for an outbreak of COVID-19. A provision that made sense when the law was passed is now a provision that largely denies defendants any meaningful use of the right to seek compassionate relief on their own motion. Under the present circumstances, to give full effect to the Fair Sentencing Act, for the time being the thirty day notice requirement should be waived.

In <u>United States v. Cardena</u>, NDIL, No. 09 CR 332-11, May 15, 2020, the Court acknowledged that district courts had divided over whether the statutory exhaustion requirement may be waived. Id. at 5. <u>Cardena</u> cited <u>United States v. Witter</u>, 2020 WL 1974200, at *5(W.D. Wis. Apr.24, 2020), collecting cases and discussing the split. <u>Cardena</u> went on to adopt the reasoning of cases holding that the statutory exhaustion requirement of sec. 3582(c)(1)(A), and the 30-day waiting period, may be waived in certain circumstances. <u>United States v. Cardena</u>, NDIL, No. 09 CR 332-11 at 5.

For a contrary case, see <u>United States v. Castaldi</u>, NDIL, No. 09 CR 59-1, April 17, 2020, which should be limited to its facts. In <u>Castaldi</u>, the defendant was convicted of a Ponzi scheme fraud that cost his investors - many of them elderly - about $31 million. He had served only about half of his 276 month sentence. He claimed no health problem. <u>United States v. Castaldi</u>, NDIL, No. 09 CR 59-1.

In contrast, Mr. Hughes has a very real health issue - diabetes and high blood pressure - that presents a great health risk in the face of a COVID-19 pandemic. While he has a basis to claim compassionate release based upon a medical condition, the BOP Policy does not recognize it, and cannot really be expected to, since the COVID-19 pandemic post-dates the BOP Policy.

In addressing waiver of exhaustion, <u>Castaldi</u> cited the case

Idder v. I.N.S., 301 F.3d 492, 498 (7th Cir. 2002), which set out four factors for waiver of exhaustion: ((1) exhaustion of remedies causes prejudice, due to unreasonable delay or an indefinite time frame; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.  Id.  Mr. Castaldi did not satisfy any of these factors.  Mr. Hughes does.

In the matter of Mr. Hughes, the BOP lacks the ability to resolve the issue because of the stress put on it by the pandemic, a stress acknowledge by Attorney General Barr on April 3, 2020 in his statement that COVID-19 has materially affected operations; and because appealing through the administrative process is futile, since the BOP has no policy for medical issues based upon vulnerability to COVID-19 and consequently cannot grant relief on that basis.  As a result, even if the 30 day period has not tolled it is not mandatory and may be waived.

**EXTRAORDINARY AND COMPELLING REASONS**

The First Step Act empowered this Court to make an independent determination as to whether there are "extraordinary and compelling reasons" for compassionate release.  It directed courts to consider whether the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. sec.

3582(c)(1)(A)(i). The existing guidelines make no mention of motions filed by the defendant. However, courts have applied the old policy statements as helpful in determining whether a defendant is eligible for compassionate release. See <u>United States v. Ebbers</u>, No. S402CR11443VEC, 2020 WL 91399, at *4(S.D.N.Y. Jan. 8, 2020).

The old policy statements include the "catch-all" provision that covers "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." USSG sec. 1B1.13 cmt. N. 1(D).

<u>Diabetes and High Blood Pressure</u>

There are "extraordinary and compelling reasons" to grant relief to Mr. Hughes. According to the CDC, risk factors of diabetes and high blood pressure places him at significant risk group of death or serious injury from COVID-19. Http://www.cdc.gov/coronavirus/2019-ncov/need-extra-. Mr. Hughes has both. According to the University of Turku, Finland, sleep apnea may also be a risk factor. www.news-medical.net/news/20200519/Sleep-apnea-may-increase-the-risk-of-severe-COVID-19-say-researchers.aspx

<u>Pandemic</u>

Courts have found that the pandemic is "an extraordinary and compelling reason" to afford compassionate release. The spread of the virus into detention centers is recognized by the courts. For

instance, in United States v. Muniz, Case No. 4:09 CR 199, R. 578 (S.D. Tex. Mar. 30, 2020) the Court noted that "the virus's spread in detention centers . . . demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection."

Mr. Hughes is incarcerated at FCI Milan. It is a prison with an outbreak of COVID-19 and three inmate deaths. Prisons are crowded places, and the social distancing necessary for avoiding infection is unlikely to be obtained.

For Mr. Hughes, it is the combination of his medical condition and the pandemic that causes his circumstance to be exigent.

Some courts have weighed COVID-19 vulnerability in the compassionate release calculus, including United States v. Cardena, NDIL, No. 09 CR 332-11, May 15, 2020; United States v. Williams, NDIL, No. 06 CR 451-10, May 14, 2020, and Miller v. United States. 2020 WL 1814084, at *1,4 (E.D.Mich. Apr.9, 2020).

**THE 3553(a) FACTORS**

The 3553(a) factors weigh in favor of releasing Mr. Hughes. The 93 months that he has already served are sufficient to reflect the seriousness of the offense and to provide just punishment. As in Zukerman, at the time of sentencing, the sentence could not be seen as including a great and unforeseen risk of severe illness or death brought on by a global pandemic. United States v. Zukerman, 2020 WL 1659880, at *6 (S.D.N.Y. April 3, 2020). In Zukerman, the

sentence was modified to home incarceration.

Counsel is told that over a year ago Mr. Hughes received one ticket, and it is believed that he has participated in offered classes.  Counsel is told that FCI Milan is on lockdown.  That Mr. Hughes is in a low security prison suggests that he has adjusted properly to his situation.

Mr. Hughes has a release plan that is workable.  He will live in his mother's single family house in the southwest suburbs.  It is a four bedroom house with an available bedroom with attached bathroom.  He can quarantine within that bedroom.  Mr. Hughes' two adult daughters live in the same house.  One is employed, the other is in college, though the pandemic has suspended activities.

Mr. Hughes' mother has offered to pick him up at FCI Milan.  She will provide housing and financial support while Mr. Hughes adjusts to life outside prison.  If there is a term of home confinement she will see to compliance with it.

### ALTERNATIVE REQUEST FOR RECOMMENDATION
### FOR HOME CONFINEMENT

If the Court declines to grant Mr. Hughes compassionate release, request is made for a recommendation to the BOP that Mr. Hughes be transferred to home confinement immediately pursuant to sec. 12003(b)(2) of the CARES Act and 18 U.S.C. sec. 3621(b)(4).

It is the stated view of the Attorney General that, "We have to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions."  William

Barr, Memorandum for Director of Bureau of Prisons (April 3, 2020).

It is believed but not verified that Mr. Hughes meets the nine criteria for home confinement: (1) primary offense is non-violent; (2) primary offense is not a sex offense; (3) primary offense is not terrorism; (4) no detainer; (5) mental health care level is less the IV; (6) PATTERN risk assessment score is MIN; (7) BRAVO score is LOW or MIN; (8) completed at least 50% of their sentence; and (9) no incident reports in the past 12 months. Livas v. Myers, No. 20 CV 422, ECF. No. 8, at 5 (W.D.La.April 10, 2020)(BOP's COVID-19 Inmate Review Update).  However, the DOJ has apparently within the last year readjusted the PATTERN risk assessment score necessary to qualify, and it is unknown whether Mr. Hughes would qualify.  See https://www.propublica.org/article/bill-barr-promised-to-release-prisoners-threatened-by-coronavirus-even-as-the-feds-secretly-made-it-harder-for-thm-to-get-out?utm_source=pardot&utm_medium=email&utm_campaign=majorinvestigations&utm_content=river

Accordingly, alternative request is made that this Court recommend that the BOP release Mr. Hughes to home confinement, and that he be permitted to self-quarantine at home.

**Conclusion**

For these reasons, Mr. Hughes respectfully requests that this Honorable Court modify his sentence under 18 U.S.C. sec. 3582(c)(1)(A)(i)to time served.  In the alternative, Mr. Hughes

respectfully requests recommendation to the BOP that he be transferred to home confinement immediately under the CARES Act. Should the Court wish to hold a hearing, counsel waives Mr. Hughes' appearance.

Dated: June 1, 2020

                                    Respectfully submitted,

                                    s/John T. Kennedy
                                    John T. Kennedy
                                    Attorney for Brian Hughes

John T. Kennedy
Panel Attorney
820 Davis Street,
Suite 434
Evanston, IL 60201
(847) 425-1115
(847) 254-6459 (cell)
kennedy3317@aol.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that in accordance with the applicable statutes and rules the following document:

**DEFENDANT HUGHES' EMERGENCY MOTION FOR COMPASSIONATE RELEASE OR RECOMMENDATION FOR IMMEDIATE RELEASE ON HOME CONFINEMENT**

was served pursuant to the District Court's ECF system on June 1, 2020.

                                          s/John T. Kennedy
                                          John T. Kennedy
                                          Attorney for Brian Hughes

John T. Kennedy
Panel Attorney
820 Davis Street,
Suite 434
Evanston, IL 60201
(847) 425-1115
(847) 254-6459 (cell)
kennedy3317@aol.com