# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 17-CR-597-2 |
| | ) | Chief Judge Rebecca R. Pallmeyer |
| RONALD BROOKS, *et al.*, | ) | |
| Defendants. | ) | |

## DEFENDANT BROOKS' MOTION FOR COMPASSIONATE RELEASE

NOW COMES the defendant, RONALD BROOKS, by and through his attorney, THOMAS HALLOCK, and moves this Honorable Court to modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act.

**I. INTRODUCTION**

The COVID-19 pandemic has profoundly altered Mr. Brooks' life. In a matter of months, Mr. Brooks' lost two childhood friends, an uncle, and nearly his father to the virus. And now the virus has come for Mr. Brooks.[1] Because of the COVID-19 pandemic, Mr. Brooks respectfully requests that this court consider his health condition, the short period of time remaining on his sentence, and the current factors and conditions articulated below to hold that a reduction in sentence to time served is

---

[1] Mr. Brooks tested positive for COVID-19 on or about June 1, 2020, and has been held in a sequestered unit at FCI Milan since.

appropriate in this case. In the alternative, he seeks the Court's recommendation to the BOP to allow home confinement[2] or release via furlough.[3]

On December 4, 2019, Mr. Brooks was sentenced to 44 months in prison. With pretrial custody credit, his release date is October 28, 2020. Notably, Mr. Brooks is serving his sentence at FCI Milan—a prolific petri dish for COVID-19 infection.[4] Indeed, the architectural design of FCI Milan renders it nearly impossible to adhere to CDC guidelines to limit the spread of COVID-19. *See* Ex. 1 at 2 ("The unit that I am housed in consists of 70 beds in an open setting. Each bed is only separated by 12-36 inches in one direction or the other, making it impossible to social distance."); *see also United States v. White*, No. 13-CR-20653-1, 2020 WL 2557077, at *5 (E.D. Mich. May 20, 2020) (quoting *United States v. Colvin*, No. 19-179, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020)) ("Moreover, [Defendant] 'is unable to provide self-care within the environment of' FCI

---

[2] Home confinement is authorized pursuant to the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (2020).
[3] By its terms, 18 U.S.C. § 3622 permits furlough for a maximum of thirty days. However, several courts have noted the possibility for extensions of that time period. *See, e.g., United States v. Johwar Soultanali*, No. 14-CR-229 (N.D. Ill. May 22, 2020) (citing cases).
[4] "As of May 26, 2020, seventy-two inmates at FCI Milan have tested positive for COVID-19, three have died, and there are five active cases. Among the staff at FCI Milan, fifty-five have tested positive for COVID-19 and three are pending recovery." *United States v. Alzand*, No. 18-20703, 2020 WL 2781824, at *1 (E.D. Mich. May 29, 2020). And more recently, a district court stated that there were currently 20 inmates and staff infected with COVID-19. *Snell v. United States*, No. 16-20222-6, 2020 WL 2850038, at *3 (E.D. Mich. June 2, 2020). An accurate infection rate at FCI Milan may be hard to determine because of inadequate testing procedures. *See Wilson v. Williams*, No. 4:20-CV-00794, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020). Despite the shifting numbers, FCI Milan contains "a relatively large number [of infections] for a BOP facility." *United States v. Atwi*, No. 18-20607, 2020 WL 1910152, at *4 (E.D. Mich. Apr. 20, 2020).

Milan because he 'is unable to practice effective social distancing and hygiene to minimize his risk of exposure.'").

With this in mind, Mr. Brooks requested compassionate release from the warden of FCI Milan on April 10, 2020, which was denied on April 21, 2020, and again on April 22, 2020, which was denied on May 6, 2020. Ex. 2 at 1, 3. Citing his release date of October 28, 2020, his inability to begin transitioning to a halfway house, and his underlying health conditions, particularly hypertension, Mr. Brooks explained why he was an ideal candidate for compassionate release. *See id.* Mr. Brooks' fear of imminent infection, as expressed in his letter, *see* Ex. 1, was realized on June 1, 2020.

## II. ARGUMENT

Mr. Brooks is an ideal candidate for compassionate release: He has a relatively short time remaining on his sentence; he has extensive family support, his father has agreed to support Mr. Brooks financially and provide him a home to safely quarantine; his crime, while serious, was noticeably committed without violence, threats of violence, or attempted violence; and his underlying health conditions—hypertension and obesity—render Mr. Brooks at heightened risk for both COVID-19 infection and death from infection. Further, while it is true that Mr. Brooks has recently been infected with COVID-19, that does not decrease the danger Mr. Brooks faces: The COVID-19 pandemic has decreased the overall medical capacity of FCI Milan and a real possibility

of COVID-19 resurgence and re-infection remains. *See Snell v. United States*, No. 16-20222-6, 2020 WL 2850038, at *2-3 (E.D. Mich. June 2, 2020).

After a sentence is imposed, a court may not modify the sentence except, as relevant here, when extraordinary and compelling reasons warrant such a reduction: 18 U.S.C. § 3582(c)(1)(A)(i). Prior to determining whether such reasons exist:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable[.]

*Id.* § 3582(c)(1)(A). As recently explained by Judge Gottschall:

> Before the passage of the First Step Act and the outbreak of the COVID-19 global pandemic, the United States Sentencing Commission promulgated a policy statement providing a non-exhaustive list of extraordinary and compelling circumstances and specific criteria for each. *See* U.S.S.G. § 1B1.13. The specific circumstances broadly cover compassionate released based on the defendant's medical condition, age, and family circumstances. *See* U.S.S.G. § 1B1.13 cmt. n.1 (A)-(C). The list also includes a catch-all provision: "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C). *Id.* cmt. n.1(d). "[N]early all district courts hold that—since the [Fair Sentencing Act]'s passage — section 1B1.13 is not binding but is, rather, helpful guidance." *United States v. Almontes*, 2020 U.S. Dist. LEXIS 62524, 2020 WL at *3 (D. Conn. Apr. 9, 2020) (collecting cases). This court now joins "the vast majority" of district courts to conclude that while the criteria in § 1B1.13 provides useful guideposts, the court may look beyond the defendant's medical condition, age, and family circumstances, as delineated in the Sentencing

4

Commission's guidance, to construe what constitutes extraordinary and compelling circumstances. *Id.*

*United States v. Cardena*, No. 09-CR-332-11, 2020 WL 2719643, at *3 (N.D. Ill. May 15, 2020).

**A. Mr. Brooks has Satisfied the 30-Day Exhaustion Requirement.**

Mr. Brooks twice submitted a request for compassionate release to the warden of FCI Milan. Ex. 2, at 1, 3. Because more than thirty days has now run Mr. Brooks has satisfied one of the two alternative statutory prerequisites for seeking relief before this Court. *United States v. Ginsberg*, No. 14 CR 462, 2020 WL 2494643 at *2 (N.D. Ill. May 14, 2020).

**B. Mr. Brooks' Medical Issues are Not Well Managed at FCI Milan and He is Not Receiving Appropriate Medical Care**

Courts in this district have held that release is likely unwarranted where a defendant's medical condition is well-managed by a facility that has not experienced an outbreak. *See, e.g., United States v. Vazquez*, 20-CV-1792, Dkt. 947 (defendant's motion for release pending sentencing on the basis of COVID-19 was denied where "[w]hatever the circumstances may be at BOP facilities across the nation, the medical records submitted by the government satisfy the court that [the defendant] himself is in no current distress or danger and is receiving what appears to be effective care at MCC."); *United States v. Brannon*, 20-CV- 1792, Dkt. 948 (the defendant's request for release was denied where a "[r]eview of his medical records satisfies the court that [the defendant's]

asthma condition is well-controlled and that he is in no need of medical treatment that is not being provided within the MCC.").

Unlike inmates at the MCC, Mr. Brooks' serious underlying medical conditions are not well-managed at FCI Milan. The facility remains besieged and understaffed. *Alzand*, 2020 WL 2781824, at *1. Mr. Brooks suffers from obesity and Stage 2 hypertension, placing him in a much higher risk category of complications as a result of contracting COVID-19.[5] Indeed, many courts have recognized that hypertension increases the likelihood of severe complications from COVID-19. *See United States v. Rahim*, No. 16-20433, 2020 WL 2604857, at *2 (E.D. Mich. May 21, 2020) ("In this case, Defendant's age, together with his COPD, hypertension, diabetes, among other ailments, and the threat of COVID-19, satisfy [the extraordinary and compelling reasons requirement]."); *White*, 2020 WL 2557077, at *3 ("Given [the defendant's] combination of underlying illnesses—hypertension and obesity—he is at risk of suffering dire medical consequences if he contracts COVID-19"); *Cardena*, 2020 WL 2719643, at *4 (holding that

---

[5] Counsel provided AUSA Matthew Hernandez unredacted BOP records regarding Mr. Brooks' risk factors and will provide them to the Court if necessary. Regarding his hypertension, Mr. Brooks' medical file notes his diastolic blood pressure level is 90. According to the American Heart Association, this places Mr. Brooks in "Hypertension Stage 2." See American Heart Association, Understanding Your Blood Pressure Readings, https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings (last visited June 12, 2020). Regarding his weight, Mr. Brooks' medical file lists him as 69 inches (5 feet, 9 inches) tall and 205 lbs. Ex. 3, at 1. According to the U.S. Department of Health and Human Services, this places Mr. Brooks in the "obese" category. *See* U.S. Department of Health and Human Services, *Calculate Your Body Mass Index*, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited June 11, 2020).

6

the defendant's underlying conditions of hypertension and Type II diabetes, combined with the fact that he was close to release at the time of his motion, satisfy the requirements of extraordinary and compelling circumstances); *United States v. Saad*, No. 16-20197, 2020 WL 2251808, at *4 (E.D. Mich. May 5, 2020) (holding that the defendant's underlying conditions, including obesity and hypertension, satisfy the compelling reasons requirement); *United States v. Coles*, No. 00-CR-20051, at 18-19 (S.D. Ill. Apr. 24, 2020) (holding that the defendant's underlying conditions, including hypertension, place him at extreme risk in the event he contracts COVID-19); *United States v. Rodriguez*, No. 16 Cr. 78-01, 2020 WL 1627331, at *7-8 (E.D. Pa. Apr. 1, 2020) (holding that the defendant's underlying conditions, including obesity and hypertension, satisfy the compelling reasons requirement).

Despite relaying these concerns to prison officials on multiple occasions, *see* Ex. 2, Mr. Brooks was infected by COVID-19 on June 1, 2020, and has been sequestered since. If Mr. Brooks recovers, he nonetheless risks reinfection.[6] Mr. Brooks' concerns

---

[6] *See* Brook Wolford, *Inmate who 'Recovered' From Coronavirus Dies in California Prison, Officials say*, Sacramento Bee (May 28, 2020), https://www.sacbee.com/news/coronavirus/article243076476.html ("An inmate tested positive for COVID-19 at a federal prison on Terminal Island in San Pedro, California, on April 16, the Los Angeles Times reported. Adrian Solarzano was deemed 'recovered' on May 10, according to the Federal Bureau of Prisons (BOP). He died two weeks later, a news release from BOP said."); Walter Pavlo, *Bureau of Prisons had a Response Plan for a Pandemic but Delayed Action*, Forbes (Apr. 23, 2020), https://www.forbes.com/sites/walterpavlo/2020/04/23/bureau-of-prisons-had-a-response-plan-for-a-pandemic-but-delayed-action/#54f27eef3d97 (highlighting the shortcomings to the BOP's response to COVID-19).

regarding FCI Milan's inability to manage this pandemic is not speculative but, rather, based on firsthand knowledge of its spread at the institution.

### C. Precautions Taken at FCI Milan are Insufficient to Mitigate Mr. Brooks' Risk of Reinfection

With regard to the risks of reinfection, recent reports indicate that individuals who appeared to have recovered from COVID-19 subsequently tested negative for the virus at least twice but have now re-tested positive.[7] Health officials believe "the virus may be capable of becoming dormant and later reactivating in some people's immune systems."[8] Recent research also indicates that those who re-test positive for COVID-19 may continue to be symptomatic.[9]

Moreover, persons within the BOP have died after "recovering" from COVID-19. On May 24, 2020, 54-year-old Adrian Solarzano, an inmate at FCI Terminal Island, was

---

[7] *See, e.g.*, Sarah McCammon, *13 USS Roosevelt Sailors Test Positive for COVID-19, Again*, NPR (May 16, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/05/16/857379338/5-uss-roosevelt-sailors-test-positive-for-covid-19-again ("The U.S. Navy says 13 sailors from the USS Theodore Roosevelt who had apparently recovered from the coronavirus and had received negative test results have now tested positive for a second time."); Se Eun Gong, *In South Korea, A Growing Number of COVID-19 Patients Test Positive After Recovery*, NPR (Apr. 17, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/04/17/836747242/in-south-korea-a-growing-number-of-covid-19-patients-test-positive-after-recover ("A growing number of recovered COVID-19 patients are relapsing in South Korea, raising new questions and concerns among scientists and health authorities after the country successfully flattened the curve.").
[8] *See id.*
[9] *Findings From Investigation and Analysis of Re-Positive Cases*, KCDC (May 19, 2020), https://www.cdc.go.kr/board/board.es?mid=a30402000000&bid=0030&act=view&list_no=367267&nPage=1.

8

the ninth inmate to die of complications after testing positive for COVID-19.[10] Mr. Solarzano tested positive for COVID-19 on April 16, 2020. On May 10, 2020, Mr. Solarzano was converted to a status of "recovered" following the completion of isolation and presenting with no symptoms. On Friday, May 15, 2020, Mr. Solarzano was admitted to a local hospital, due to complaints of chest pains and anxiety. On both May 15 and 16, 2020, he was tested for COVID-19; both tests indicated a negative result. By May 24, 2020, Mr. Solarzano was dead.[11] Similar to other BOP hotspots, FCI Milan is ill-equipped to manage the ongoing ebb-and-flow of this pandemic. The dangerous conditions that resulted in Mr. Brooks infection remain, and multiple examples are emerging that confirm the reinfection of persons deemed "recovered" from COVID-19.[12]

Judge Arthur J. Tarnow of the Eastern District of Michigan recently considered a request for compassionate release from an inmate similarly situated to Mr. Brooks. *See Snell*, 2020 WL 2850038. There, a prisoner at FCI Milan requested compassionate release roughly two years before his scheduled release date. *Id.* at *1. The defendant in *Snell* had contracted and "recovered" from COVID-19. *Id.* The district court noted the severity of the pandemic within FCI Milan and the defendant's medical conditions. *Id.*

---

[10] Federal Bureau of Prisons, *Inmate Death at the FCI Terminal Island*, (May 27, 2020), https://www.bop.gov/resources/news/pdfs/20200527_press_release_trm.pdf).
[11] *Id.*
[12] *See supra* note 4 and accompanying text.

at *2-3. The district court noted that the pandemic's strain on medical treatment at FCI Milan made it extremely difficult for the defendant's medical needs to be properly cared for and discussed the possibility of reinfection. *Id.* Specifically, the district court noted that "[a]lthough [the defendant] has already contracted COVID-19, seeing that [it] is a novel virus, researchers cannot definitively conclude whether [the defendant] could contract it again." *Id.* at *3. After determining that the defendant was not a risk to the community and that release would be consistent with the § 3553 factors, the district court granted the motion. *Id.* at *3-4. Mr. Brooks urges this Court to adopt the well-reasoned rational of Judge Tarnow and hold that, while reinfection cannot be determined to a certainty, Mr. Brooks "will not be a guinea pig to test this possibility." *Id.* at *3.

### D. Mr. Brooks is not a Threat to the Community and Release Would be Consistent with the § 3553 Factors

When a reviewing court determines that extraordinary and compelling circumstances justify compassionate release, the court must determine whether the movant is a threat to the community and whether release would be consistent with the § 3553 factors. *Cardena*, 2020 WL 2719643, at *4. Here, Mr. Brooks satisfies both considerations. First, Mr. Brooks is not a threat to the community. Mr. Brooks was convicted of a narcotics offense, but his offense did not include violence, attempted violence, or threats of violence. Multiple persons close to Mr. Brooks have agreed to support his transition to the community, including opportunities for employment. *See*

Ex. 1. Upon release, Mr. Brooks' father has confirmed that he will support his son financially and provide him a hygienic location to quarantine. *Id*.

Mr. Brooks' remains vulnerable to COVID-19 complications due to his hypertension and incarceration at FCI Milan. He has served the vast majority of his sentence—his release date is October 28, 2020. Notably, although Mr. Brooks has a pending state case in Milwaukee, Wisconsin, counsel believes he does not have a detainer. In any event, if the Court deems it necessary, it could impose additional restrictions on his liberty through the condition of home confinement. Releasing Mr. Brooks several months early due to the legitimate, ongoing risk that COVID-19 poses is commensurate under the circumstances. The Court "did not and could not have foreseen [the COVID-19 pandemic] at sentencing." *See Cardena*, 2020 WL 2719643, at *1. Accordingly, Mr. Brooks is an appropriate candidate for compassionate release.

### E. Recent Northern District of Illinois Precedent Supports Granting Mr. Brooks' Motion for Compassionate Release.

Courts in this district continue to grant motions for compassionate release upon exhaustion of administrative remedies. *See United States v. Rana*, No. 09-CR-830-8 (N.D. Ill. June 9, 2020) (COVID-19-diagnosed defendant's 14-year sentence for providing material support to terrorism reduced to time considered served, where defendant suffered from several chronic health conditions); *United States v. Guzman*, No. 13-CR-576-1, 2020 WL 2781713 at *1 (N.D. Ill. May 28, 2020) (granting motion for compassionate release for a defendant who had four years left to serve of his sentence

11

upon the condition that the defendant's supervised release be modified to include home incarceration for the remainder of his original term of incarceration); *United States v. Body*, No. 18 CR 503-1, 2020 WL 2745972 at *2 (N.D. Ill. May 27, 2020) (granting motion for compassionate release for a defendant who suffers from diabetes, thyroid issues, gout, arthritis, and high cholesterol, noting "[i]t was not and is not the Court's intention, in imprisoning [the defendant], to send him to his death or put him at a daily risk of serious bodily harm. That, however, is the reality that [the defendant] is facing today. Requiring him to be subjected to this severe risk for an extended period does not amount to just punishment, nor does it, in the Court's view, promote respect for the law."); *United States v. Lewellen*, No. 09-CR-332-2, 2020 WL 2615762 (N.D. Ill. May 22, 2020) (a defendant with severe obesity, hypertension, and a heart condition granted compassionate release despite having completed only 57.6% of his 18-year sentence for drug trafficking). Accordingly, recent and applicable decisions in this district continue to support Mr. Brooks' motion for compassionate release.

### III. CONCLUSION

For the foregoing reasons, the defendant, RONALD BROOKS, respectfully requests that this Court issue an order granting him compassionate release pursuant to the provisions of 18 U.S.C. § 3582(c)(1)(A), and modify his sentence to time-served. In the alternative, he seeks the Court's recommendation that the BOP transfer him to home confinement or release via furlough.

Respectfully submitted,

*s/ Thomas C. Hallock*
HALLOCK LAW
53 W. Jackson Blvd., Suite 1424
Chicago, IL 60604
(312) 487-2441
tom@chicagobestdefense.com