**IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 CR 162/20 CV 01792 |
| v. | ) | |
| | ) | Hon. Charles R. Norgle, Jr., |
| MIGUEL GATES, | ) | Judge Presiding |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT GATES' EMERGENCY MOTION FOR COMPASSIONATE
RELEASE OR RECOMMENDATION FOR IMMEDIATE RELEASE ON HOME
CONFINEMENT**

Now comes the defendant, Miguel Gates, by his attorney, John T. Kennedy, panel attorney, and respectfully moves this Court to grant his motion for compassionate release under 18 U.S.C. sec. 3582(c)(1)(A)(i), or in the alternative, a recommendation to the BOP that he be transferred to home confinement immediately pursuant to sec. 12003(b)(2) of the CARES Act and 18 U.S.C. sec. 3621(b)(4).

**URGENCY OF REQUEST**

In this case, there are extraordinary and compelling reasons to grant relief because although young, Mr. Gates' health condition (kidney injury from gunshot) places him at significant risk of death or serious injury from COVID-19. Mr. Gates is incarcerated at FCI Oxford, a facility that is not presently experiencing any cases of COVID-19, but which is a BOP facility vulnerable to an outbreak. As a whole, all the BOP facilities have experienced an

incidence of 6,141 inmates testing positive for COVID-19, with outcomes of 4,817 recovered and 84 deaths. Staff have experience an incidence of 657 staff testing positive for COVID-19, with outcomes of 497 recovered and one death. http:/www.bop.gov/coronavirus/.

FCI Oxford has a prisoner population of 855 inmates in the institution and 82 in an adjacent camp. http:/www.bop.gov/. Mr. Gates has served almost 50% of his 36 month sentence. Continued custody places him at great risk. Prisons, like nursing homes, are crowded facilities ripe for an outbreak of COVID-19.

## RELIEF REQUESTED

Mr. Gates requests compassionate release, and alternatively home confinement. Mr. Gates himself made a request sometime before April 27, 2020. He has no copy of his request. His request was denied on April 27, 2020. The denial does not recognize the danger of COVID-19 as a reason for compassionate release or home confinement.

Counsel for Mr. Gates made a request to the Warden of FCI Oxford and to Regional Counsel for compassionate release, or alternatively home confinement, on May 19, 2020.

## BACKGROUND FOR REQUEST

Mr. Gates is serving a 36 month sentence. He has served about 50% of his sentence. The BOP inmate locator lists him as having an out date of November 22, 2021. See Federal Bureau of Prisons

Inmate Locator, http://www.bop.gov/inmate (Last visited June 15, 2020)(result using number 53922-424). The offense of conviction was possession of a firearm by a felon. In addition to the 36 month sentence, a period of three years supervised release was imposed.

The risk factor for a serious or deadly outcome from COVID-19 for Mr. Gates is a damaged kidney, being a Grade IV renal injury following a gunshot wound in August 2018. (BOP medical record of 5/18/2020). Mount Sinai Hospital describes the injury as a "laceration of the left kidney" and as a "Grade IV, left renal injury". (pp. 3, 6 of 64 of Mount Sinai Hospital medical records).

ARGUMENT

STATUTORY AUTHORIZATION FOR COMPASSIONATE RELEASE

In 2018, the First Step Act modified the compassionate release statute to end the BOP's gatekeeping function and to allow inmates to directly file compassionate release motions in certain circumstances. See 18 U.S.C. sec. 3582(c)(1)(A)(i). Under the First Step Act, the Court may grant an inmate's motion for sentencing reduction if three requirements have been satisfied.

First, the Court must determine that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. Second, the Court must determine either that (a) the defendant exhausted available administrative

remedies "to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or that (b) 30 days have elapsed since the receipt of such a request by the warden of the facility. Id. But, as discussed further below, courts have recognized that these requirements may be waived in light of the COVID-19 emergency. See United States v. Zuckerman, 16 CR 194 (S.D.N.Y. April 3, 2020)("the Court holds that [defendant]'s advanced age and compromised health, combined with the high risk of contracting COVID-19 at Otisville, justify waiver of the exhaustion requirement.") Third, the Court may reduce a defendant's sentence after determining that the reduction is consistent with the sentencing factors outlined in 18 U.S.C. sec. 3553(a). Id.

Mr. Gates satisfies all three of those requirements. As a person with personal risk factors, continued incarceration in FCI Oxford would place Mr. Gates at a great risk of death or serious injury disproportionate to the relatively small amount of time (1 ½ years on a 3 year sentence) that remains to be served. Given the speed with which COVID-19 spreads once introduced to a facility, Mr. Gates is at real risk from COVID-19. In light of the danger posed by this pandemic, an order reducing Mr. Gates' sentence to time served would best achieve sec. 3553(a)'s directive to impose a sentence that is "sufficient but not greater than necessary."

Mr. Gates has demonstrated his ability to conform to the requirements of society. The time already served of 17 1/2 months

is sufficient; in a time of pandemic, an additional 18 1/2 months is greater than necessary.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

This case does not present an exhaustion of remedies issue. Prior to April 27, 2020, Mr. Gates made his request for administrative relief under the First Step Act, 18 U.S.C. sec. 3582©. Counsel for Mr. Gates sought compassionate release or home detention in a May 19, 2019 request. Even at the longest date, the 30 day period will have run on June 18, 2020.

## EXTRAORDINARY AND COMPELLING REASONS

The First Step Act empowered this Court to make an independent determination as to whether there are "extraordinary and compelling reasons" for compassionate release. It directed courts to consider whether the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. sec. 3582(c)(1)(A)(i). The existing guidelines make no mention of motions filed by the defendant. However, courts have applied the old policy statements as helpful in determining whether a defendant is eligible for compassionate release. See United States v. Ebbers, No. S402CR11443VEC, 2020 WL 91399, at *4(S.D.N.Y. Jan. 8, 2020).

The old policy statements include the "catch-all" provision that covers "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A)

- 5 -

through (C)."  USSG sec. 1B1.13 cmt. N. 1(D).

<u>Grade IV renal injury</u>

There are "extraordinary and compelling reasons" to grant relief to Mr. Gates. Mr. Gates has a Grade IV renal injury, which is a laceration involving the collecting system with urinary extravulsation.  Https://radiopaedia.org/articles/aast-kidney-injury-scale.

If contracted, COVID-19 can cause further kidney damage. The most common injury is acute tubular necrosis, which happens when the kidneys do not get enough blood flow because a COVID-19 patient goes into shock and has very low blood pressure.  Another injury is formation of tiny blood clots which can clog the kidneys and prevent urine formation. https://www.forbes.com/sites/lipiroy/2020/05/30/kidneys-and-covid-19-renal-manifestations-of-the-novel-coronavirus/#ea8ec7385127.

> Outside the respiratory system, the kidneys are among the most common organs targeted by SARS-CoV-2.  To illustrate the magnitude of the problem, among hospital ICUs in New York City - the epicenter of Covid-19 - approximately 20-40% of intubated patients had acute kidney injury (AKI) requiring dialysis (described later).  Another study conducted by Northwell Health, New York state's largest healthcare provider, found that among 5449 patients admitted with Covid-19, 36.6% developed AKI.  Id.

Also, recent studies have reported that the human kidney is a specific target for SARS-CoV-2 infection. Https://journals.phsiology.org/doi/full/10.1152/ajpreaal.0016.2020.  One study found evidence suggesting

- 6 -

that SARS-CoV-2 infects the human kidney directly, which leads to kidney dysfunction and contributes to viral spreading in the body. Id.

This is a serious risk factor for severe illness or death should Mr. Gates contract COVID-19.

<u>Pandemic</u>

Courts have found that the pandemic is "an extraordinary and compelling reason" to afford compassionate release. The spread of the virus into detention centers is recognized by the courts. For instance, in <u>United States v. Muniz</u>, Case No. 4:09 CR 199, R. 578 (S.D. Tex. Mar. 30, 2020) the Court noted that "the virus's spread in detention centers . . . demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection."

Mr. Gates is incarcerated at FCI Oxford. While it is a prison that has, to date, not experienced an outbreak of COVID-19, the danger of such an outbreak is illustrated by the nationwide statistics on the federal prison system. As a whole, the BOP has experienced 1,324 inmate positive tests, 160 staff positive tests, 4,817 inmates recovered, 497 staff recovered, and 84 inmate deaths. http:/www.bop.gov/coronavirus/. Prisons are crowded places, and the social distancing necessary for avoiding infection is unlikely to be obtained.

For Mr. Gates, it is the combination of his medical condition

and the pandemic that causes his circumstance to be exigent.

Some courts have weighed COVID-19 vulnerability in the compassionate release calculus, including United States v. Cardena, NDIL, No. 09 CR 332-11, May 15, 2020; United States v. Williams, NDIL, No. 06 CR 451-10, May 14, 2020, and Miller v. United States. 2020 WL 1814084, at *1,4 (E.D.Mich. Apr.9, 2020).

## THE 3553(a) FACTORS

The 3553(a) factors weigh in favor of releasing Mr. Gates. The nearly 50% of his 36 month sentence that he has already served is sufficient to reflect the seriousness of the offense and to provide just punishment. As in Zukerman, at the time of sentencing, the sentence could not be seen as including a great and unforeseen risk of severe illness or death brought on by a global pandemic. United States v. Zukerman, 2020 WL 1659880, at *6 (S.D.N.Y. April 3, 2020). In Zukerman, the sentence was modified to home incarceration.

Counsel is told that Mr. Gates has received no tickets, and it is believed that he has participated in offered classes. Counsel is told that FCI Oxford is on lockdown. That Mr. Gates remains in a medium security prison suggests that he has adjusted properly to his situation.

Mr. Gates has a release plan that is workable. He will live with his baby's mother in her mother's apartment in Chicago. They will have a room to themselves and the baby. Her mother and

younger sister will share the other bedroom. It is a two bedroom apartment. Her mother would be willing to serve as Mr. Gates' custodian. She is aware that there could be a period of home confinement. Mr. Gates would seek employment.

Mr. Gates' mother has offered to pick him up at FCI Oxford.

## ALTERNATIVE REQUEST FOR RECOMMENDATION
## FOR HOME CONFINEMENT

If the Court declines to grant Mr. Gates compassionate release, request is made for a recommendation to the BOP that Mr. Gates be transferred to home confinement immediately pursuant to sec. 12003(b)(2) of the CARES Act and 18 U.S.C. sec. 3621(b)(4).

It is the stated view of the Attorney General that, "We have to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions." William Barr, Memorandum for Director of Bureau of Prisons (April 3, 2020).

It is believed but not verified that Mr. Hughes meets the nine criteria for home confinement: (1) primary offense is non-violent; (2) primary offense is not a sex offense; (3) primary offense is not terrorism; (4) no detainer; (5) mental health care level is less the IV; (6) PATTERN risk assessment score is MIN; (7) BRAVO score is LOW or MIN; (8) completed at least 50% of their sentence; and (9) no incident reports in the past 12 months. Livas v. Myers, No. 20 CV 422, ECF. No. 8, at 5 (W.D.La.April 10, 2020)(BOP's COVID-19 Inmate Review Update). However, the DOJ has apparently within the last year readjusted the PATTERN risk assessment score

necessary to qualify, and it is unknown whether Mr. Gates would qualify. See https://www.propublica.org/article/bill-barr-promised-to-release-prisoners-threatened-by-coronavirus-even-as-the-feds-secretly-made-it-harder-for-them-to-get-out?utm_source=pardot&utm_medium=email&utm_campaign=majorinvestigations&utm_content=river. Also, the BRAVO score is unknown. In another month, Mr. Gates will have completed 50% of his sentence.

Accordingly, alternative request is made that this Court recommend that the BOP release Mr. Gates to home confinement, and that he be permitted to self-quarantine at home.

### Conclusion

For these reasons, Mr. Gates respectfully requests that this Honorable Court modify his sentence under 18 U.S.C. sec. 3582(c)(1)(A)(i) to time served. In the alternative, Mr. Gates respectfully requests recommendation to the BOP that he be transferred to home confinement immediately under the CARES Act. Should the Court wish to hold a hearing, counsel waives Mr. Gates' appearance.

Dated: June 16, 2020          Respectfully submitted,

                              s/John T. Kennedy
                              John T. Kennedy
                              Attorney for Miguel Gates

John T. Kennedy
Panel Attorney
820 Davis Street, Suite 434
Evanston, IL 60201
(847) 425-1115
(847) 254-6459 (cell)
kennedy3317@aol.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that in accordance with the applicable statutes and rules the following document:

**DEFENDANT GATES' EMERGENCY MOTION FOR COMPASSIONATE RELEASE OR RECOMMENDATION FOR IMMEDIATE RELEASE ON HOME CONFINEMENT**

was served pursuant to the District Court's ECF system on June 16, 2020.

                              s/John T. Kennedy
                              John T. Kennedy
                              Attorney for Miguel Gates

John T. Kennedy
Panel Attorney
820 Davis Street, Suite 434
Evanston, IL 60201
(847) 425-1115
(847) 254-6459 (cell)
kennedy3317@aol.com